FILED
DEC 21 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
2006 DEC 21 PM 11: 25
NANCY M. MAYER-WHITTINGTON
CLERK

LAVERNA SIMMS, *
10100 Idaho Place
Upper Marlboro, Maryland 20774 *

Plaintiff, *

v. *

DISTRICT OF COLUMBIA *
A Municipality
Serve: Mayor Anthony Williams and *
Attorney General
441 Fourth Street, N.W.
Suite 1100
Washington, D.C. 20001

And

DIRECTOR, DISTRICT OF COLUMBIA *
Department of Corrections
In his official Capacity *
1923 Vermont Ave., N.W.
Washington, D.C. 2001

*

And

*

CENTER FOR CORRECTIONAL
HEALTH AND POLICY STUDIES
Serve Resident Agent *
1901 D. Street S.E.
Washington, D.C. *

Defendants. *

*

JURY ACTION

CASE NUMBER 1:06CV02178

JUDGE: Royce C. Lamberth

DECK TYPE: Employment Discrimination

DATE STAMP: 12/21/2006

**COMPLAINT**

(Civil Rights-Fifth & Eight Amendment-42 U.S.C. § 1983, Retaliation, Hostile Work Environment, Sexual Harassment, Negligent Supervision, Negligent Retention and Intentional Infliction of Emotional Distress)

## INTRODUCTION

1. This is a civil action brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fifth and Eight Amendments to the United States Constitution seeking damages against the defendants for committing acts under color of law which deprived the plaintiff of right secured under the Constitution and the laws of the United States. Plaintiff seeks redress of injuries she suffered due to a pattern and practice of employment discrimination consisting of sexual advances, harassment, and intimidation by defendants' male employees. The plaintiff also seeks recovery for the common law claims of negligent supervision, negligent retention and intentional infliction of emotion distress.

## JURISDICTION

2. Jurisdiction exists in this case pursuant to the Fifth and Eight Amendments to the Constitution and under 42 U.S.C. § 1983, and 28 U.S.C. §1343, and the pendent jurisdiction of the Court. This action properly lies in this Court pursuant to 28 U.S.C. §1391 (b) and 42 U.S.C. § 2000e-5 (f) as the claims presented arose, and the unlawful employment practices complained of occurred, within this judicial district.

## PARTIES

3. Plaintiff La Verna Simms was at all times relevant herein, was an employee and part owner for the Center for Correctional Health and Policy Studies ("CCHPS") and agent/contractor for the defendants that provided medical and mental health services to the District of Columbia Department of Corrections (DCDC). Simms was in the position of Outpatient Mental Health Director at the DCDC

.4. Defendant, the District of Columbia, is a municipal corporation. It is subject to suit under D.C. Code § 1-1201, et seq. The Department of Corrections ("Department") is an agency of the District of Columbia, created by D.C. Code § 24-441, and operated pursuant to D.C. Code § 24-442. Harcourt Masi and other male employees are, and at all times relevant to this Complaint were employed by the District of Columbia as Correctional Officers and/or

employees in that Department, as such, their actions bind the District of Columbia.

5. The Department of Corrections is a District of Columbia agency of which is comprised, including of the D.C. Jail.

**ADMINISTRATIVE PROCEEDINGS**

6. On or about January 6, 2004, LaVerna Simms timely filed a sexual discrimination and harassment complaint with the Office of the Special Inspector (OSI) which was investigated in 2005. The Office of Special Inspector conducted a thorough investigation and issued a report and recommendations. The OSI issued a final report in or about December 2004 finding probable cause that DCDC's Harcourt Masi had sexually harassed Simms and other women at the DCDC.

7. On or about August 22, 2005 Simms filed a timely written Equal Employment Opportunity Commission (EEOC ) Complaint with the EEOC alleging employment discrimination, sexual harassment, a hostile work environment and retaliation. The EEOC due to an extreme back log and delays did not call Simms in their office until one year later in May of 2006. Simms was allowed to file a formal charge of discrimination, harassment and retaliation against the defendants. Simms' EEOC Complaint is currently being investigated and a final report and recommendation is still pending.

8. Ms Simms is now awaiting her Right To Sue Letter from the EEOC.

FACTS

9. As is more fully set forth in the paragraphs which follow, Simms and other female contractors and employees are routinely subjected to a pattern and practice of sexual harassment and hostile work environment at the DCDC. Together these practices reflect that discrimination is the standard operating procedure—the regular rather than the unusual practice at the District of Columbia Department of Corrections.

10. Supervisors and co-workers throughout the DCDC engage in offensive conduct of a sexual nature, including the expression of sexual remarks about women,

unwelcome physical contact such as kissing, pinching and grabbing, hugging, physical touching and repeated pressure to engage in sexual relations with the male employees. This conduct is severe, pervasive and unwelcome, altering the terms and conditions of employment for women at the department.

11. Specifically, as early as 1999 or sooner, LaVerna Simms who was then a contractor working under the District of Columbia Receiver complained of sexual harassment committed by male employees of the Department of Corrections.

12. As early as 1979 this court found that sexual harassment was the "standard operating procedure" at the District of Columbia Department of Corrections (DCDC). On Appeal the D.C. Circuit ruled that being subjected to unwelcome sexual advances caused harm remedial under Title VII Bundy v. Jackson, 641 F.2d 934 (D.C. Cir. 1981). The Court of Appeals directed that, on remand, this court enter an injunction enjoining the Director of DCDC and all employees and agents of the department from: causing, encouraging, condoning, or permitting the practice of sexual harassment of female employees by male supervisors and employees within the Department ...."

13. In or about 2002, The District of Columbia and DCDC were ordered based on a consent Decree they signed in the Bessye Neal Class Action to post notices informing employees and contractors that sexual harassment violates Title VII, to develop an effective complaint procedure, to develop appropriate sanctions for employees found to have sexually harassed female employees, and to instruct all employees about sexual harassment.

14. Despite this mandate, sexual harassment has continued to flourish at the Department and to pollute the working environment of the DCDC.

15. The record shows that on or about 1997, Plaintiff La Verna Simms, a

licensed professional counselor, began working for the District of Columbia Receiver at the DCDC. At that time Ms. Simms served as the Intake Coordinator on the evening sift for DCDC.

16. Soon after starting at DCDC Ms. Simms met DCDC Correctional Officer Harcourt Masi who after seeing her for the first time approached her and introduced himself to her. Immediately after introducing himself to Ms. Simms, Masi asked Ms. Simms out on a date, to which Ms. Simms replied no.

17. Thereafter for over a period to two years, on a daily basis and/or on each occasion that Officer Masi saw Ms. Simms at DCDC, he would stand outside of her office door, stare at her while she would be interviewing inmates and evaluating them for medical services and/or for the need of mental health care medical services. While Simms was interviewing and assessing the inmates, Officer Masi would steadfast continue to wait outside of Ms. Simms office door from 15 to 45 minutes or more and stare at her until she had completed her inmate interviews.

18. After Simms had seen her last patient, Masi still standing and staring at Ms. Simms outside her door would then enter Simms' office and approach Simms and repeatedly ask her out on dates, he would repeatedly make comments about her body, he would repeatedly make comments about her shape, he would repeatedly make comments about her appearance, he would repeatedly stare at her and undress her with his eyes and he would repeatedly make comments to her by telling her what he could do for her. Also during this same time period and on a daily basis and/or on each occasion that Masi saw Simms at the DCDC he engaged in this conduct with Ms. Simms.

19. When Masi engaged in this Conduct Simms would repeatedly and explicitly tell Ms. Masi that she had no interest in going out with and for him to stop

harassing her. However, Masi never stopped the harassment and stalking of Ms. Simms which was continuous and ongoing up until the time Ms. Simms left DCDC on September 30, 2006. Simms was so threatened by Masi's behavior that she began to wear sunglasses inside the jail and to wear a coat over her body to disguise her looks and to prevent Masi from staring at her and undressing her with his stares.

20. Specifically, over the years Officer Masi's conduct became so aggressive that in late December 2003 he accosted Ms. Simms as she was attempting to enter the ladies room and fondled her chest and arm and then grabbed her arm bringing her body close towards him. Simms became so upset that she reported each incident to the DCDC officials and nothing was done after the first incident. It was not until the second incident was reported that DCDC advised Ms. Simms that the incidents had to be reported to the Special Investigator.

21. In or about 2001, Simms became one of the owners of Center For Correctional Health And Policy Studies Inc. (CCHPS) and under CCHPS she began working the day shift in her last position at the DCDC as Outpatient Mental Health Director. Simms was an employee of CCHPS, a corporation that had a contract with the District of Columbia to provide services for the DCDC by managing and providing mental health services within the DCDC. Simms was one of 12 self-described "owner-operators" of CCHPS. Although a contractor, Simms worked directly for the District of Columbia government, she had an office inside the DCDC and she performed her work for the Defendant District of Columbia at the DCDC. Thus because of the nature of her work and the contract that CCHPS had with the District of Columbia Government Ms. Simms was both a contractor and employee.

22. Plaintiff was further subjected to relentless and blatant sexual harassment which

she endured on a daily basis. Plaintiff was propositioned, solicited and sought after by male and female guards and male and female inmates, at the direction and/or with the knowledge of the D. C. Jail guards. Specifically, Plaintiff was denied library privileges and recreation time on numerous occasions because she refused to consent to the sexual advances of the D.C. Jail personnel.

23. Sexual harassment of Plaintiff reached its height on the night of July 20, 1995, when three inmates were sent to her cell, by a D.C. Jail guard, with instructions to bring Plaintiff to a location in the D.C.

24. After Ms. Simms was allowed to leave the table and return to when she refused to suffer that humiliation, she was looked down and denied all privileges enjoyed by other inmates. Plaintiff was also relieved of her personal belongings, including her writings and documents detailing her treatment at the DCDC.

25. In addition, while plaintiff worked at the DCDC, there existed a culture in the D.C. Jail where women were preyed upon by Correctional Officers, jail personnel and male inmates where sex, drugs, alcohol and other contraband were exchanged for perks and favors.

26. This hedonistic culture thrived at the D.C. Jail because Correctional Officers themselves were either engaging in sexual relationships with other employees and/or contractors. The few who were not so involved were too fearful of being labeled a snitch and/or violating the code of silence which existed in the Correctional Officer "fraternity."

27. When plaintiff tried to avoid the illicit, her entire existence was threatened. She discovered that the Correctional System itself condoned and encouraged the conditions at the DCDC and intimidated female workers and made them fear for their life or jobs if they complained. And plaintiff, because she would not acquiesce to the sexual demands of male

workers and because DCDC refused to correct the sexual hostile environment Ms. Simms was subjected to harsher treatment and more extreme mental pressure and emotional distress.

28. These activities were covered-up at all levels. They were ignored by CCHPS, first line supervisors, concealed by Correctional Officials and swept under the rug by those with ultimate authority up to and including the Director of DCDC.

29. At the time of plaintiff's disgusting treatment and the exploitation of female workers, employees and contractors in the D.C. Jail, the Department of Corrections was still under a Federal Court Order to eliminate the sexual misconduct that is the very subject of this lawsuit. Notwithstanding that mandate, it is a fact that a number of Correctional Officers were negligent in the performance of their duties; that Correctional officers engaged in sexual misconduct with male employees, all without fear of disclosure or if disclosure occurred, fear of adverse consequences.

30. Plaintiff was subjected to sexual harassment and racial discrimination that was both blatant and outrageous. As a result of the above described conduct of the guards and civilians employed at the D.C. Jail, Plaintiff has suffered extreme humiliation, mental anguish and embarrassment. Moreover, the injuries she suffered at the jail were condoned by CCHPS and DCDC's administrators, officers and managers who knew of what was taking place and refused to prevent or stop the indecent and degrading and treatment she was being subject to.

31. The fact that there was no fear of any consequences is supported by the indifference of the Director and other Officials of the Department of Corrections who took no action to discover or eradicate the problem at the D.C. Jail even though the District and these other officials had a direct duty to assure that the women workers, employees and contractors in the D.C. Jail were not subjected to the hostile

environment in which they were forced to exist.

32. At all times relevant to this action the District of Columbia and Margaret Moore had in effect and were responsible for the policies and procedures followed by the Department of Corrections in the actions taken relating to the plaintiff, and were further responsible for the hiring, training, supervision, monitoring ad disciplining of the various officers involved.

33. CPL Kenneth Washington since the time I began to work at the Central Detention Facility.

34. Since Simms employment at the Central Detention Facility, she have been sexually harassed on approximately on a daily basis by some male DCDC employees making inappropriate sexual remarks, comments, innuendos and/or sensual touching. Simms also reported sexual harassment early on and my superiors did nothing. The numerous incidents of sexual harassment were also reported to CCHPS' Health Services Administrator, Estelle Hunter in 2001 and from thereon for a period of two (2) years until 2003 and nothing was done. In December 2003, I reported the continuous sexual harassment again to the DC Department of Corrections' Special Investigator Carolyn Warner. My claim was investigated and the nine (9) months comprehensive analysis found there to be probable cause that sexual harassment by CPL Harcourt MASI.

35. However, following the investigator's findings against MASI for sexual harassment, MASI continued to work at the DCDC's Detention Facility and Simms was subjected to retaliation by him and his fellow correctional officers. Specifically, MASI was also allowed to continue to work and enter the correction facility up until approximately February 2005. The Department of Corrections continued to allow MASI to work and to be assigned to the mental health post where Simms worked-well after

filing her complaint. MASI would also refused to call the inmates that required comprehensive mental and medical assessments to Simms' work area thus jeopardizing her job and the safety of the employees and inmates. Under the contract with the DC Government CCHPS was required within 24 hours to assess all inmates for mental health services. When MASI refused to bring inmates for mental health assessment his refusal jeopardized not only my safety but also the inmate population's safety, the medical and mental health staff, as well as jeopardizing the well being of the patients' requiring these services. Not only did his refusal to bring inmates for mental health assessments delay inmates receiving treatment, he also placed the DCDC population and employees at risk and jeopardized the CCHPS' contract with the DC Government.

36. In retaliation, when Ms. Simms entered the jail housing units where the inmates lived, Officer Masi from 2004-2005 delayed opening the doors for Ms. Simms in order that she might exit the housing units or he would substantially delay opening the doors to the housing units, thus subjecting Ms. Simms to being in the presence of inmates longer than necessary thus purposely jeopardizing Simms safety and placing her in fear of her life. When Ms. Simms complained about these incidents to the respondents her complaints went unanswered, ignored and/or resolved in an inadequate manner.

37. For example, in late 2004, Ms Simms reported to Warden Smith that Correctional Officer MASI was retaliating against her for having filed a sexual harassment complaint against him. I complained to Warden Smith about MASI assigned to my work in my area and his repeated refusal to bring inmates to my work area to be assessed for mental and medical health services. Warden Smith's response to complaint

was non-responsive and negligent at the very least. Warden Smith response to Simms Retaliation Complaint was that "Anyone who works for DCDC can enter the building and be assigned to work anywhere." Warden Smith's inaction and refusal to reassign MASI jeopardized the mental health and physical safety of the inmates, employees including myself and jeopardized Simms' work and employer's contract.

38. Through the course of conduct described above, the defendant constructively discharged Simms in 2006 when it refused to allow CCHPS to bid on their current contract and secretly hired another company without allowing CCHPS to bid on the contract. Simms lost her employment with the defendants as of September 30, 2006.

39. Masi's daily harassment of Simms during Simms tenure at DCDC to include but not limited to his threatening and intimidating starring of her, his constant sexual advances even after he had a stay away order to stay at least 300 feet from Simms continued until she left on September 30, 2006. His conduct and actions caused LaVerna Simms extreme emotional distress, great anxiety, and fear. Masi and other male employees actions were un-welcomed by Simms and was humiliating.

40. At all times relevant to this action, Masi acted within the scope of his employment in his capacity as agent of the Department of Corrections and the District of Columbia.

41. Defendants had notice and knowledge of prior instances and complaints from other females concerning similar conduct by Harcourt Masi and other Department male employees toward female employees of the Department of Corrections, both prior and subsequent to the incidents described in this complaint. Defendant failed to take adequate remedial action to prevent the reoccurrence of such conduct and its resulting harm to Simms.

**COUNT I**

(Violations of Eighth Amendment and 42 U.S.C. §1983)

42. Plaintiff realleges and incorporates by reference Paragraphs 1 through 41 of this Complaint.

43. Supervisors have made and condoned the actions of other employees in making comments to female employees that were unwelcome and based on sex.

44. These comments were sufficiently severe and pervasive and pervasive as to alter the terms, conditions and privileges of employment, and to create an abusive, intimidating, hostile and offensive working environment for female employees.

45. The defendant had actual and constructive knowledge of the sexual harassment perpetrated against Simms and refused to take remedial action of any kind.

46. The Defendant's discriminatory practices described above have caused Simms harm, including severe emotional distress.

47. Accordingly, the defendant violated Simms rights protected by § 703 of Title VII of the Civil Rights Act of 1964 as amended.

48. This conduct constitutes sexual

49. The conduct was unwelcomed, refused and complained about by Plaintiff.

50. Defendant's failure to prevent and remedy the racial discrimination, sexual abuse and sexual harassment that Plaintiff was subjected to constituted cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution and 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**

51. Plaintiff adopts and incorporates the allegations of complaint paragraphs 1- 50 as if fully set forth herein.

52. Defendant's failure to prevent and remedy the racial discrimination, sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff violated the Plaintiffs right to due process of law as guaranteed by the Fifth Amendment to the U. S. Constitution and to freedom from cruel and unusual punishment under the Eight Amendment to the U.S. Constitution, and 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**

53. Plaintiff adopts and incorporates the allegations of complaint paragraph 1-50 as if fully set forth herein.

54. Defendant's failure to prevent and remedy the sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff amounted to a policy or custom that deprived the Plaintiff or her constitutional right to bodily privacy and also deprived her of a liberty interest without due process of law in violation of the Fifth Amendment to the U.S Constitution, and 42 U.S.C. § 1983.

**FOURTH CAUSE OF ACTION**

55. Plaintiff adopts and incorporates the allegation of complaint paragraphs 1-52 as if fully set forth herein.

56. Defendant's failure to prevent and remedy the racial discrimination and sexual harassment of which the Plaintiff was subjected violated her right to equal protection of the law under the Fifth Amendment of the U.S. Constitution, and 42 U.S.C. § 1983.

**<u>FIFTH CAUSE OF ACTION</u>**

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

57. Plaintiff adopts and incorporates the allegations of complaint paragraphs 1

though 56 as if fully set forth herein.

58. Defendants through their agents at the D.C. Jail, intentionally caused severe emotional distress to the plaintiff by way of the their extreme, reckless and outrageous conduct, including but not limited to their discrimination, harassment and forcing the plaintiff to dance in the nude.

59 As a direct and proximate result of defendants' extreme, reckless and outrageous conduct, plaintiff has suffered and will continue to suffer, severe emotional distress, embarrassment, humiliation, and mental anguish.

**SIXTH CAUSE OF ACTION**
**(NEGLIGENT SUPERVISION AND RETENTION )**

60. Plaintiff adopts and incorporates the allegations of complaint paragraphs 1 through 59 as if fully set forth herein.

61. The defendants owed a duty of care to its employees relative to their personal security and application of the District's policies and practices.

62. The defendants breached their duty of care by failing to monitor and supervise their Correctional Officers' activities and preventing conduct by its employees that violated the District's written policies, applicable court orders and the Constitution of the United States.

63. As a direct and proximate result of defendants' negligent supervision of emotional distress, embarrassment, humiliation and loss of self-esteem.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff request that this Court grant her the following relief:

a. An award of compensatory damages for the extreme embarrassment, humiliation and

mental anguish which she was caused to endure in an exact amount to be determined at the trial of this matter but in no event less than $5,000,000;

b. An award of punitive damages in an exact amount to be determined at the trial of this matter but in no event less than $5,000,000;

c. Award Plaintiff the cost of this suit, including reasonable attorney's fees; and

d. Such other and further relied that this Court deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable

Respectfully submitted,

Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774
301-773-9652 (Office)
301-925-4070 (Fax)
Bar. No. 04412

06-2178 RCL H

CIVIL COVER SHEET

JS-44 (Rev.1/05 DC)

**I (a) PLAINTIFFS**

La Verna Simms 88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jo Ann P. Myles, Esquire
1300 Mercantile Lane
Suite 139-S
Largo, Md. 20774 (301) 773-9652

**DEFENDANTS**

District of Columbia Government
District of Columbia Dept. of Corrections 11001
CCHRS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY)

JURY ACTION

CASE NUMBER 1:06CV02178

JUDGE: Royce C. Lamberth

DECK TYPE: Employment Discrimination

DATE STAMP: 12/21/2006

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊗ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⊗ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⊗ 2 | ⊗ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. *Antitrust***

- ☐ 410 Antitrust

**○ B. *Personal Injury/ Malpractice***

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. *General Civil (Other)*** OR **○ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

NO SUMMONS FOR D.C. SRVG. AG

| | | | |
|---|---|---|---|
| ○ **G. *Habeas Corpus/ 2255***<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ⊗ **H. *Employment Discrimination***<br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ○ **I. *FOIA/PRIVACY ACT***<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ○ **J. *Student Loan***<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ **K. *Labor/ERISA (non-employment)***<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ **L. *Other Civil Rights (non-employment)***<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ **M. *Contract***<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ **N. *Three-Judge Court***<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
2006 DEC 21 PM 4: 25
NANCY M. MAYER-WHITTINGTON
CLERK

**V. ORIGIN**

⊗ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. Secs. 1983, 1988

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** 5,000,000 Check YES only if demanded in complaint **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☒ NO ☐ If yes, please complete related case form.

**DATE** 12/21/06 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.