# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

LAVERNA SIMMS )
)
           Plaintiff, )
)
)   Civil Action No. 1:06-CV-2178 02570
     v. )   Judge Royce C. Lamberth
)
DISTRICT OF COLUMBIA )
GOVERNMENT ET.AL. )
)
         Defendants )
)
_____)

## SECOND AMENED COMPLAINT

(Civil Rights-Fifth & Eight Amendment-42 U.S.C. § 1983, Retaliation, Hostile Work Environment, Sexual Harassment, Negligent Supervision, Negligent Retention and Intentional Infliction of Emotional Distress, Title VII)

## INTRODUCTION

1.      This is a civil action brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fifth and Eight Amendments to the United States Constitution, the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983 seeking damages against the defendants for committing acts under color of law which deprived the plaintiff of rights secured under the Constitution and the laws of the United States. Plaintiff seeks redress of injuries she suffered due to a pattern and practice of employment discrimination consisting of sexual advances, harassment, and intimidation by defendants' male employees. The plaintiff also seeks recovery for the common law claims of negligent supervision, negligent retention and intentional infliction of emotional distress.

## JURISDICTION

2.      Jurisdiction exists in this case pursuant to the Fifth and Eight Amendments to the

1

Constitution and under 42 U.S.C. § 1983, and 28 U.S.C. §1343, and the pendent jurisdiction

of the Court. This action properly lies in this Court pursuant to 28 U.S.C. §1391 (b), 28 USC §

1331, 28 USC §§ 1343 (a) (3) and (a) (4) and 42 U.S.C. § 2000e-5 (f) as the claims presented

arose, and the unlawful employment practices complained of occurred, within this judicial district.

This Court has supplemental jurisdiction over District of Columbia law claims pursuant to 28

USC § 1367.

## PARTIES

3.      Plaintiff La Verna Simms was at all times relevant herein, was an employee and part owner

and/or incorporator of the Center for Correctional Health and Policy Studies ("CCHPS") and

employee, agent, and/or contractor for the defendants the District of Columbia Government and the

District of Columbia Department of Corrections who provided medical and mental health services to

the District of Columbia Department of Corrections ("DCDOC").  Simms last position in September

2006 was that of Outpatient Mental Health Director at the DCDOC.

4.      Defendant, the District of Columbia, is a municipal corporation. It is

subject to suit under D.C. Code § 1-1201, et seq. The Department of Corrections ("DOC")

is an agency of the District of Columbia, created by D.C. Code § 24-441, and operated

pursuant to D.C. Code § 24-442. Harcourt Masi and other DCDOC male employees are, and at all

times relevant to this Complaint were employed by the District of Columbia as Correctional Officers

and/or employees of the District of Columbia Department of Corrections and as such, their actions

bind the District of Columbia. The District of Columbia  ("the District" ), by and through its agents, is

responsible for supervision and operation of the District of Columbia Department of Corrections

(DCDOC) and ensuring the health, safety and a work environment free of sexual harassment and

hostility  and discrimination for all its employees and contractors in its DCDOC facilities. The

District, through its agents, is also responsible for monitoring the facilities with which it contracts for

2

the care and custody of prisoners committed to the custody of DCDOC. The District is responsible

for implementing policies and procedures and has a duty to establish policies and procedures for the

DOC and its contracting agents, and for the training, supervision and discipline of Department staff.

   5. The Defendant Center for Correctional Health and Policy Studies ("CCHPS") was

a District of Columbia Corporation doing business in and with the District and the DCDOC. At all

relevant times relevant, CCHPS was an agent of and acting for and on behalf of the District of

Columbia and DCDOC. CCHPS provided medical services to inmates at DCDOC.  CCHPS acted

under color of state law at all times relevant to this complaint through September 30, 2006, when its

contract with the District Government ended.  CCHPS employed Plaintiff Simms and owed a duty of

care to her and all its employees to ensure their health, safety and a work environment free of sexual

harassment and hostility and discrimination.

## STATUTORY NOTICE

   6. The District of Columbia was given proper notice of Ms. Simms claims under

D.C. Code § 12-309, by letters received by it on March 18, 2005, May 28, 2005 and August 10,

2006.

## ADMINISTRATIVE PROCEEDINGS

   7. In or about November of 2003 Simms complained of sexual harassment again to the

defendants and again her complaints were not responded to. On or about January 6, 2004, LaVerna Simms

timely filed a sexual discrimination and harassment complaint with the Office of the Special Inspector (OSI)

which was investigated and resolved during 2004 and 2005.  The Office of Special Inspector conducted a

thorough investigation and issued a report and recommendations. The OSI issued a proposed finding in or about

December 2004 finding probable cause that DCDOC's Harcourt Masi had sexually harassed Simms and other

women at the DCDOC.  In or about February of 2005 the OSI issued its recommendations to the Director of the

DCDC.

8.      On or about August 22, 2005 Simms filed a timely written Equal Employment Opportunity Commission (EEOC) Complaint with the EEOC alleging employment discrimination, sexual harassment, a hostile work environment and retaliation. The EEOC due to an extreme back log and delays did not call Simms in their office until one year later in May of 2006. Simms was allowed to file a formal charge of discrimination, harassment and retaliation against the defendants. Simms' EEOC Complaint is currently being investigated and a final report and recommendation is still pending.

9.      Ms Simms is now awaiting her Right To Sue Letter from the EEOC for her Title VII claims.

## FACTS

10.      At all relevant times, each and every Defendant in this matter knew, had knowledge or should have known that the acts, omissions and conditions alleged herein was going on and violated Plaintiff Simms' civil rights and common law and constitutional rights.

11.      As is more fully set forth in the paragraphs which follow, Simms and other female contractors and employees are routinely subjected to a pattern and practice of sexual harassment and hostile work environment at the DCDOC. Together these practices reflect that discrimination is the standard operating procedure—the regular rather than the unusual practice at the District of Columbia Department of Corrections.

12.      Supervisors and co-workers throughout the DCDOC engage in offensive conduct of a sexual nature, including the expression of sexual remarks about women, unwelcome physical contact such as kissing, pinching and grabbing, hugging, physical touching and repeated pressure to engage in sexual relations with the male employees. This conduct is severe, pervasive and unwelcome, altering the terms and conditions of employment for all women at the District of Columbia Department of Corrections.

4

11.     As early as 1979 this court found that sexual harassment was the "standard operating procedure" at the District of Columbia Department of Corrections (DCDOC). On Appeal the D.C. Circuit ruled that being subjected to unwelcome sexual advances caused harm remedial under Title VII Bundy v. Jackson, 641 F.2d 934 (D.C. Cir. 1981). The Court of Appeals directed that, on remand, this court enter an injunction "enjoining the Director of DCDOC and all employees and agents of the department from: causing, encouraging, condoning, or permitting the practice of sexual harassment of female employees by male supervisors and employees within the Department …."

12.     In or about 2002, The District of Columbia and DCDOC were ordered based on a Consent Decree they signed in the Bessye Neal Class Action to post notices informing employees and contractors that sexual harassment violates Title VII, to develop an effective complaint procedure, to develop appropriate sanctions for employees found to have sexually harassed female employees, and to instruct all employees about sexual harassment.

13.     The record shows that none of the Defendants ever notified, instructed or provided information about their sexual harassment and discrimination complaint procedure or policies to Simms or many of their female employees working at the DCDOC until late 2004, which was in violation of the parties' Consent Decree. Specifically, the Defendants never posted discrimination and sexual harassment complaint procedure signs in the DCDOC workplace during the time that Plaintiff Simms complained and filed her complaints. Any sexual harassment or discrimination postings by Defendants took place well after Simms was harassed and assaulted and battered in the workplace.

14.     Despite this mandate, sexual harassment has continued to flourish at the Department and to pollute the working environment of the DCDOC up and until the time Simms left the DCDOC on September 30, 2006.

15.     The record shows that none of the Defendants ever notified, instructed or provided information about their sexual harassment and discrimination complaint procedure or policies to Simms or many of their female employees working at the DCDOC until late 2004 (and not in all areas at the DCDOC), which was well after Simms had complained of being stalked and battered in the workplace, which was in violation of the parties' Consent Decree.

16.     Specifically, the Defendants never posted discrimination and sexual harassment complaint procedure signs in the DCDOC workplace and/or in the work areas that Plaintiff Simms worked. If there were any sexual harassment or discrimination postings by Defendants they were posted well after Simms was harassed and assaulted and battered in the workplace.

17.     More importantly, the record shows that on or about 1997, Plaintiff Laverna Simms, a licensed professional counselor, began working for the District of Columbia Receiver at the DCDOC. At that time Ms. Simms served as the Intake Coordinator on the evening sift for DCDOC.

18.     Soon after starting work at DCDOC, Ms. Simms met DCDOC Correctional Officer Harcourt Masi who after seeing her for the first time approached her and introduced himself to her. Immediately after introducing himself to Ms. Simms, Masi asked Ms. Simms out on a date, to which Ms. Simms replied no.

19.     Thereafter for over a period of approximately five years, on a daily basis and/or on each occasion that Officer Masi saw Ms. Simms at DCDOC, he would stand outside of her office door, stare at her while she would be interviewing inmates and evaluating them for medical services and/or for the need of mental health care medical services. While Simms was interviewing and assessing the inmates, Officer Masi would steadfast continue to wait outside of Ms. Simms office door from 15 to 45 minutes or more

and stare at her until she had completed her inmate interviews.

20.     After Simms had seen her last patient, Masi still standing and staring at Ms. Simms outside her door would then enter Simms' office and approach Simms and repeatedly ask her out on dates. He would repeatedly make comments about her body. He would repeatedly make comments about her shape. He would repeatedly make comments about her appearance. He would repeatedly stare at her and undress her with his eyes and he would repeatedly make comments to her by telling her what he could do for her. Masi during a period of years from 1997 until 2003 on a daily basis and/or on each occasion that he saw Simms at the DCDOC he engaged in this conduct. Although, MASI was finally issued a "Stay Away" order prohibiting from being near Simms in 2005, he continued intimidating and harassing conduct towards Simms until Simms left the DOC on September 30, 2006.

21.     When Masi engaged in this Conduct Simms would repeatedly and explicitly tell Mr. Masi that she had no interest in going out with him and for him to stop harassing her.  However, Masi never stopped the harassment and stalking of Ms. Simms which was continuous and ongoing up until the time Ms. Simms left DCDOC on September 30, 2006.

22.     Simms was so threatened by Masi's behavior that she began to wear sunglasses inside the jail and to wear a coat over her body to disguise her looks and to prevent Masi from staring at her and undressing her with his stares.

23.     Simms initially complained to co-workers about Masi's behavior and conduct. She was not aware of any complaint procedures and was fearful of her job because at the time from at least from 1999 until 2004, Masi carried on a well known, publicized and advertised sexual relationship with the female warden Patricia Jackson-Britton, who was later promoted to Deputy Director of the DCDOC in or about 2006.

24.     In or about 2001, Simms became one of the incorporators of the Center For Correctional Health And Policy Studies Inc. (CCHPS) and under CCHPS she began working the day shift in her last position at the DCDOC as Outpatient Mental Health Director. Simms was an employee of CCHPS, a corporation that had a contract with the District of Columbia to provide mental health services for the DCDOC by managing and providing mental health services within the DCDOC. Simms was one of 12 self-described "owner-operators" of CCHPS.

25.     Although a contractor, Simms worked directly for the District of Columbia government, she had an office inside the DCDOC and she performed her work for the Defendant District of Columbia at the DCDOC.  Thus because of the nature of her work and the contract that CCHPS had with the District of Columbia Government Ms. Simms was both a contractor and employee for the District Government and DCDOC.

26.     During the period of 2001 until 2006 CCHPS as Plaintiff Simms employer and it had a duty to protect her from the sexual harassment, stalking and assault and batter made upon her by Masi and any other male employee at DCDOC.

27.     Specifically, during the period of 2001 until 2006 Simms complained to authorities at CCHPS of the harassment and assault and battery and it failed to report the incidents and/or complaints. CCHPS failed to investigate her complaints against Masi, Washington and others.

28.      CCHPS showed a deliberate indifference and dismissive attitude concerning Simms' harassment and assault and battery complaints concerning Masi, Washington and others.

29.     The defendants had a duty to provide Simms and other females at DCDOC with a safe working environment free of sexual overtures, overtones, touching, and a hostile

8

work environment. These defendants also had a duty to monitor its employees and to assure a safe working environment but failed to do so.

30.     Specifically, over the years Officer Masi's conduct became so aggressive towards Plaintiff Simms and other female employees that in late December 2003 he accosted Ms. Simms as she was attempting to enter the ladies room and fondled, touched and/or caressed her chest and arm and then grabbed her arm bringing her body close towards him.  Simms became so upset that she reported this first touching incident to the DCDOC officials including the Director of DCDOC and CCHPS and nothing was done after this first incident.

31.     Then approximately several weeks later Masi fondles, touches and/or caresses Simms again over her chest and/or arm and then grabbing her and bringing her close to his body.  Simms again complained to DCDOC and CCHPS. It was not until the second incident was reported that DCDOC advised Ms. Simms that the incidents had to be reported to the Special Investigator. Meanwhile DCDOC and CCHPS took no action to correct the problem in response to Simms complaint.

32.     Plaintiff also during the period from 1997 until September 30, 2006 was subjected to relentless and blatant sexual harassment which she endured on a daily basis by other DCDOC male employees. Plaintiff was propositioned, solicited and sought after by male guards and male inmates, at the direction and/or with the knowledge of the DCDOC guards and management.

33.     In addition, while plaintiff worked at the DCDOC, there existed a culture in the D.C. Jail where women were preyed upon by Correctional Officers, jail personnel and male inmates where sex, drugs, alcohol and other contraband were exchanged for perks and favors.

34.     There exits a sexually charged culture that thrived at the D.C. Jail because the Director, Warden, Managers and Correctional Officers themselves were either engaging in

9

sexual relationships with other employees and/or contractors. The few who were not so involved were too fearful of being labeled a snitch and/or violating the code of silence which existed in the Correctional Officer "fraternity." Specifically, the Warden who was married for a period from 1999 until approximately 2003 had an openly and public sexual relationship with Correctional Officer Masi.

35.     When plaintiff tried to avoid the elicited and illegal behavior of Masi and other male employees, her entire existence was threatened.   She discovered that the Correctional System itself condoned and encouraged the conditions at the DCDOC and intimidated female workers and made them fear for their life or jobs if they complained. And plaintiff, because she would not acquiesce to the sexual demands of male workers and because DCDOC  and CCHPS refused to correct the sexual hostile environment, Ms. Simms was subjected to harsher treatment and more extreme mental pressure and emotional distress.

35a.     Specifically, after Simms filed her discrimination complaints and the OSI rendered a favorable decision for Simms in late 2004 and/or early 2005, she was retaliated against by the District of Columbia and the Department of Corrections. In approximately two to four months after the OSI's decision in favor of Simms, in early 2005 the Defendants, the District of Columbia and DOC told CCHPS and Simms that it was terminating CCHPS' contract and it would not allow CCHPS to bid on the up coming medical and/or mental health contract to provide services to the DC government. Prior to this decision by the DC Government and DOC, CCHPS was according to these same Defendants doing a satisfactory job. This action by defendants the District of Columbia and DOC directly impacted on Simms' livelihood in that she no longer had a job or salary of $100,000.

36.     The above detailed activities were covered-up at all levels.  The sexually explicit and harassing conduct by DCDOC Masi and other males towards Simms and other

10

females at the jail was ignored by the DC government, DCDOC's Director, Warden, managers and CCHPS at all levels and  first line supervisors. These same defendants and individuals who had the ultimate power and authority at DCDOC concealed sexually impermissible conduct in the workplace by Correctional Officials and employees by burying it under the rug.

37.     At the time of  Defendants' the District of Columbia and DCDOC's male employees'  disgusting treatment  and exploitation of  Simms and other female workers, employees in the D.C. Jail, the Department of Corrections was still under a Federal Court Order to eliminate the sexual misconduct that is the very subject of this lawsuit. Notwithstanding that mandate, it is a fact that the Director, warden, and number of Correctional managers and Officers were negligent in the performance of their duties; that Correctional officers engaged in sexual misconduct with female employees and continued to condone males sexually harassing Simms and other females at the DCDOC, all without fear of disclosure or if disclosure occurred, fear of adverse consequences.

38.     The Office of Special Inspector ("OSI") in completing its investigation in 2005 found approximately 15 other females who were also being sexually harassed by Masi and other males at the DCDOC during the same time period identified by Simms.  The OSI found the DCDOC negligent in its duty to protect the females working at the DCDOC from sexual harassment and free from a hostile work environment.

39.     Plaintiff was subjected to sexual harassment and sexual discrimination that was both blatant and outrageous. As a result of the above described conduct of the DC Government, the DOC Director, Warden, mid level managers, guards, CCHPS and civilians employed at the D.C. Jail, Plaintiff has and still suffers with extreme humiliation, mental anguish and embarrassment. Moreover, the injuries she suffered at the jail were condoned by the District of Columbia Government and DCDOC's administrators, officers and managers CCHPS

who knew of what was taking place and refused to prevent or stop the indecent and degrading and treatment she was being subject to.

40.     The fact that there was no fear of any consequences is supported by the indifference of the Director and other Officials of the Department of Corrections who took no action to discover or eradicate the problem at the D.C. Jail even though the District, CCHPS, DCDOC and their other officials had a direct duty to assure that the women workers, employees and contractors in the D.C. Jail were not subjected to the hostile environment in which they were forced to exist.

41.     At all times relevant to this action the District of Columbia and Margaret Moore had in effect and were responsible for the policies and procedures followed by the Department of Corrections in the actions taken relating to the plaintiff, and were further responsible for the hiring, training, supervision, monitoring ad disciplining of the various officers involved.

42.     Although the OSI investigator in late 2004 and early 2005 found probable cause against Officer Masi, following the investigator's findings against Masi for sexual harassment, MASI continued to work at the DCDOC's Detention Facility until approximately February 2005. Simms was subjected to retaliation by Masi and his fellow correctional officers. Even after Masi returned to work in or about august of 2005, after his return to the DOC he continued to intimidate and harass Simms until she was terminated by the Defendants the DC Government and DCDOC on September 30, 2006.

43.     Specifically, MASI was also allowed to continue to work and enter the correction facility up until approximately February 2005. Masi was suspended for approximately six (6) months and returned to DCDC in or about August of 2005. Up and until February 2005, the defendants continued to allow MASI to work and to be assigned to the mental health post where Simms worked-well after filing her complaint.

44.     MASI and/or other Correctional Officers would refuse to call the inmates that required comprehensive mental and medical assessments to Simms' work area thus jeopardizing her job and the safety of the employees and inmates.  Under the contract with the DC Government CCHPS was required within 24 hours to assess all inmates for mental health services. When MASI refused to bring inmates for mental health assessment his refusal jeopardized not only my safety but also the inmate population's safety, the medical and mental health staff, as well as jeopardizing the well being of the patients' requiring these services. Not only did his refusal and or/delay to bring inmates for mental health assessments delay inmates receiving treatment, he also placed the DCDOC population and employees at risk and jeopardized the CCHPS' contract with the DC Government.

45.     In retaliation, when Ms. Simms entered the jail housing units where the inmates lived, Officer Masi from 2004-2005 delayed opening the doors for Ms. Simms in order that she might exit the housing units or he would substantially delay opening the doors to the housing units, thus subjecting Ms. Simms to being in the presence of inmates longer than necessary thus purposely jeopardizing Simms safety and placing her in fear of her life. When Ms. Simms complained to defendants about these incidents to the respondents her complaints went unanswered, ignored and/or resolved in an inadequate manner.

46.     For example, in late 2004, Ms Simms reported to Warden Smith that Correctional Officer MASI was retaliating against her for having filed a sexual harassment complaint against him. She complained to Warden Smith about MASI being assigned to her work in my area and his repeated refusal to bring inmates to her work area to be assessed for mental and medical health services. Warden Smith's response to complaint was non-

responsive and negligent at the very least. Warden Smith response to Simms' Retaliation Complaint was that "Anyone who works for DCDOC can enter the building and be assigned to work anywhere." Warden Smith's inaction and refusal to reassign MASI to another work area jeopardized the mental health and physical safety of the inmates, employees including Simms and jeopardized Simms' work and employer's contract.

47.     Through the course of conduct described above, the defendants the District of Columbia and DCDOC terminated and/or interfered with her and/or CCHPS' ability to make any future contracts with the DC Government in 2006 when it refused to allow CCHPS to bid on the medical and/or mental health contract. The DC Government and DOC conspired and secretly hired another company without allowing CCHPS to bid on the current for medical and/or mental health services. Simms lost her employment with the defendants as of September 30, 2006 in retaliation for having complained and being subjected to discrimination in the workplace.

48.     Masi's daily harassment of Simms during Simms  tenure at DCDOC to include but not limited to his threatening and intimidating starring of her, his constant sexual advances even after he had a stay away order to stay at least 300 feet from Simms continued  until she left on September 30, 2006. His conduct and actions caused LaVerna Simms extreme emotional distress, great anxiety, and fear.  Masi and other male employees actions were un-welcomed by Simms and was humiliating.

49.     At all times relevant to this action, Masi acted within the scope of his employment in his capacity as agent of the Department of Corrections and the District of Columbia.

50.     Defendants had notice and knowledge of prior instances and complaints from other females concerning similar conduct by Harcourt Masi and other Department male employees toward female employees of the Department of Corrections, both prior and

14

subsequent to the incidents described in this complaint. Defendant failed to take adequate remedial action to prevent the reoccurrence of such conduct and its resulting harm to Simms.

51.    Defendants the District of Columbia, DCDOC and CCHPS, individually and through their agents, failed to comply with polices and procedures and Consent Decree that existed and was in place at the time. The Defendants failed to provide the proper standard of care. Defendants had a duty to provide Simms with a safe work environment that was not discriminatory, or pervasively hostile towards women because of their sex.  Defendants were required to promptly address and adequately resolve Simms' complaints of sexual harassment and they all ignored and failed miserably of carrying out these duties and responsibilities.

52.    Ms. Simms has filed and exhausted all administrative remedies and is currently awaiting her "Right To Sue Letter" on her Title VII claims.

## <u>COUNT I</u>

(Violations of  Eighth Amendment and 42 U.S.C. §1983)

53.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 of this Complaint as if fully plead herein.

54        Defendants' supervisors have made and condoned the actions of other employees in making comments to female employees that were unwelcome and based on sex.

55.    These comments were sufficiently severe and pervasive and pervasive as to alter the terms, conditions and privileges of employment, and to create an abusive, intimidating, hostile and offensive working environment for female employees.

56.    The Defendants had actual and constructive knowledge of the sexual harassment perpetrated against Simms and refused to take remedial action of any kind.

57.    The Defendants' discriminatory practices described above have caused Simms harm, including severe emotional distress.

58.	Accordingly, the defendants violated Simms rights protected by § 703 of Title VII of the Civil Rights Act of 1964 as amended.

59.	Defendants' conduct constitutes sexual complained of by Simms constituted sexual discrimination and sexual harassment.

60.	The defendants' employees such as Masi and others conduct was unwelcomed, refused and complained about by Plaintiff.

61.	Defendants' failure to prevent and remedy the racial discrimination, sexual abuse and sexual harassment that Plaintiff was subjected to constituted cruel and unusual punishment  in violation of the Eight Amendment to the United States Constitution and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

62	Plaintiff adopts and incorporates the allegations of complaint paragraphs 1- 61 as if fully set forth herein.

63.	Defendant's failure to prevent and remedy the racial discrimination, sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff violated the Plaintiffs right to due process of law as guaranteed by the Fifth Amendment to the U. S. Constitution and to freedom from cruel and unusual punishment under the Eight Amendment to the U.S. Constitution, and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

64.	Plaintiff adopts and incorporates the allegations of complaint paragraph 1-63 as if fully set forth herein.

65	Defendant's failure to prevent and remedy the sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff amounted to a policy or custom that deprived the Plaintiff or her constitutional right to bodily privacy and also deprived her of a liberty

16

interest without due process of law in violation of the Fifth Amendment to the U.S

Constitution, and 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

66.     Plaintiff adopts and incorporates the allegation of complaint paragraphs 1-67 as if

fully set forth herein.

67.   Defendant's failure to prevent and remedy the racial discrimination and sexual

harassment of which the Plaintiff was subjected violated her right to equal protection of the law

under the Fifth Amendment of the U.S. Constitution, and 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

68.     Plaintiff adopts and incorporates the allegations of complaint paragraphs 1 though

67 as if fully set forth herein.

69.     Defendants through their agents at the D.C. Jail, intentionally caused severe

emotional distress to the plaintiff by way of the their extreme, reckless and outrageous conduct,

including but not limited to their discrimination, harassment and forcing the plaintiff to dance in

the nude.

70.     As a direct and proximate result of defendants' extreme, reckless and outrageous

conduct, plaintiff has suffered and will continue to suffer, severe emotional distress,

embarrassment, humiliation, and mental anguish.

## SIXTH CAUSE OF ACTION
### (NEGLIGENT SUPERVISION RETENTION)

71.     Plaintiff adopts and incorporates the allegations of complaint

paragraphs 1 through 71 as if fully set forth herein.

72.     The defendants owed a duty of care to its employees relative to their

personal security and application of the District's policies and practices.

73.     The defendants breached their duty of care by failing to monitor and supervise their Correctional Officers' activities and preventing conduct by its employees that violated the District's written policies, applicable court orders and the Constitution of the United States.

74.     As a direct and proximate result of defendants' negligent supervision of emotional distress, embarrassment, humiliation and loss of self-esteem.

### SEVENTH CAUSE OF ACTION

TITLE VII Sex Discrimination, Harassment and Hostile Work Environment
(As to the District of Columbia and the Director of the Department of Corrections (DOC)

75.     Plaintiff adopts and incorporates the allegations of complaint Paragraphs 1 through 74 as if fully set forth herein.

76.  Defendants had a policy, pattern and practice to subject Simms and other female workers and/or employees working at the DOC to unwelcome sexual conduct, sexual harassment and a hostile work environment on a daily basis.

77.     Specifically, Simms experienced and was subjected to environmental harassment, discrimination and a sexually hostile work environment at the DOC on a daily basis, which interfered with her job performance and created an intimidating, hostile or offensive work atmosphere.

78.     Simms was subjected to severe and pervasive stalking, batter, harassment, staring, repeated requests to open her clothes so that her body could be seen, she had comments made about her body, she was repeatedly asked out on dates, which were not just isolated incidents or mere flirtations but sexually suggestive, hostile and unwelcome.

79.     Moreover, defendants discriminated against Simms and other females when they failed to respond or inadequately responded to Simms and other females complaints because they were females while not treating the males in the same or similar fashion in the

workplace. Simms' and other female sexual harassment complaints went unanswered by defendants and were completely ignored.

80.     The defendants also publicized that it had a policy of zero tolerance for sexual harassment in the workplace however; the defendants refused to follow this policy and failed and/or refused to terminate Masi, although Masi had been cited for sexual harassing behavior against women as early as 1996 and again during 2003-2006.

81.     The defendants knew of Masi's propensity for sexually harassing the females at the DOC and defendants allowed his inappropriate and harassing conduct to go on for at least a decade. During that decade or more at the DOC defendants did nothing to correct the problems with Masi and others because Simms and others who complained were women.

82.     Defendants openly maintained, condoned and participated in a sexually hostile and charged work environment so much so that,  the Warden who was female and married at the time of the incidents and sexual harassment was also openly dating  Harcourt Masi and she protected Masi from reprisal, being disciplined or terminated.

83.     As a result of Defendants actions and/or a lack thereof, Simms suffered a loss of income, emotional stress, strain, humiliation, embarrassment, degrading and loss of self esteem.


**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that this Court grant her the following relief as

to each defendant both jointly and severally:

a.  An award of compensatory damages for the extreme embarrassment, humiliation and

mental anguish which she was caused to endure in an exact amount to be determined at the trial

of this matter but in no event less than $5,000,000 as to each defendant jointly and severally;

b.  An award of punitive damages in an exact amount to be determined at the trial of this matter but in no event less than $5,000,000, as to each defendant jointly and severally;

c.    Award Plaintiff the cost of this suit, including reasonable attorney's fees as to each defendant both jointly and severally; and

d.  Such other and further relied that this Court deem just and proper as to each defendant both jointly and severally.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable

Respectfully submitted,

_____/s/_____
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774
301-773-9652 (Office)
301-925-4070 (Fax)
Bar. No. 04412

Attorney for Plaintiff Laverna Simms

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 24th day of July 2007, the following Second Amended

Complaint was served upon the following defendants by electronic filing or by mail:

District of Columbia
<u>Serve</u>: Mayor Adrian Fenty
And or his representative
1350 Pennsylvania Avenue N.W.
Suite 419
Washington, D.C. 20004

Center for Correctional Health and
Policies and Studies
<u>Serve</u> Resident Agent: (mailed copy)
CT Corporation Systems
1015 15th Street N.W.
Washington, D.C. 20005

Director of District of Columbia
And/or his representative
Department of Corrections
1923 Vermont Avenue
Washington, D.C. 20001

Linda Singer, Esquire
Attorney General
For The District of Columbia
441 4th Street N.W.
6th Floor, Suite 600
Washington, D.C. 20001

_____/s/_____
Jo Ann P. Myles