**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAVERNA SIMMS,

                Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et. al.,*      Case No. 06-02178 (RCL)

            Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT, OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Defendants District of Columbia ("District") and D.C. Department of Corrections ("DOC"), by and through undersigned counsel, hereby move that this Honorable Court dismiss the plaintiffs' Second Amended Complaint. Such relief is requested pursuant to Fed. R. Civ. P. 12(b)(6) and 56. As grounds for this Motion, the defendants state as follows:

1. Plaintiff's Title VII claim must be dismissed as to the District as the Plaintiff was not a District employee (Count VII);

2. Plaintiff's claim is limited to the time period and allegations in her EEOC charge of discrimination;

3. Plaintiff does not state an Eighth Amendment claim (Counts I & II);

4. Plaintiff does not state a Fifth Amendment claim (Counts II, III & IV);

5. Plaintiff's Second Amended Complaint fails to state a claim for municipal liability under 42 U.S.C. § 1983 and the doctrine of *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978) (Counts I, II, III and IV);

6. Plaintiff has failed to file any notice consistent with D.C. Code, § 12-309;

7. Plaintiff's claims must be dismissed because they are barred by the applicable statute of limitations (Counts I, II, III, IV, V and VI);

8. Plaintiff's common law claims must be dismissed as they fail to state a claim upon which relief can be granted and this Court lacks subject matter jurisdiction over them (Counts V and VI);

9. DOC is *non sui juris* (Counts I, II, III, IV, V and VI); and

A Memorandum of Points and Authorities and two proposed Orders are attached hereto.

Because this is a dispositive motion, the District is not required to seek consent pursuant to LCvR 7.1(m).

Dated: April 18, 2008                          Respectfully Submitted,

                                               PETER J. NICKLES
                                               Interim Attorney General for the
                                               District of Columbia

                                               GEORGE C. VALENTINE
                                               Deputy Attorney General
                                               Civil Litigation Division

                                               _____/s/Nicole Lynch_____
                                               NICOLE L. LYNCH [471953]
                                               Section Chief
                                               General Litigation § II

                                               _____/s/ Alex Karpinski_____
                                               ALEX KARPINSKI [1]
                                               (Michigan Bar No. P58770)
                                               Assistant Attorney General
                                               441 4th Street, N.W., 6th Floor South
                                               Washington, D.C.  20001
                                               alex.karpinski@dc.gov

---

[1] Pursuant to the Local Rules of the United States District Court for the District of Columbia, Mr. Karpinski has registered with the Clerk's office as a Government Attorney and is appearing pursuant to LCvR 83.2.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2008, I caused the foregoing DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

**Jo Ann Myles, Esquire**
**LAW OFFICES OF JO ANN MYLES**
**1300 Mercantile Lane, Suite 139-S**
**Largo, MD 20774**


/s/ Alex Karpinski
ALEX KARPINSKI [2]
(Michigan Bar No. P58770)
Assistant Attorney General
441 4th Street, N.W., 6th Floor South
Washington, D.C.  20001
alex.karpinski@dc.

---

[2] Pursuant to the Local Rules of the United States District Court for the District of Columbia, Mr. Karpinski has registered with the Clerk's office as a Government Attorney and is appearing pursuant to LCvR 83.2.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAVERNA SIMMS,

               Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et. al.,*      Case No. 06-02178 (RCL)

           Defendants.

**DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I.  <u>FACTUAL BACKGROUND</u>**

On December 21, 2006, Plaintiff filed suit, alleging that she was sexually harassed and

subjected to a hostile work environment at the D.C. Jail.  (*See* Complaint, *et. seq.*). Specifically,

the plaintiff alleges that a DOC employee, Harcourt Masi, sexually harassed her and created,

among other things, a hostile work environment. (*Id.*).  On May 4, 2007, plaintiff filed her

Amended Complaint alleging violations of 42 U.S.C. §1983, §1988, and the Fifth and Eighth

Amendments of the U.S. Constitution.  (*See* Amended Complaint, *et. seq.*).[3]  On June 4, 2007,

the defendants moved for summary judgment, and on July 24, 2007, the plaintiff moved for leave

to file a Second Amended Complaint.  On March 31, 2008, this Court entered an Order granting

the plaintiff's motion to amend her complaint and denying the defendant's motion for summary

judgment.  The plaintiff's Second Amended Complaint contains the same causes of action as her

first Amended Complaint and adds a cause of action under Title VII.  (See Second Amended

Complaint, *et. seq.*).

---

[3] Defendants note that plaintiff claims a violation of §1988, but fails to make any allegations to support the claim.  In fact, plaintiff does not include a §1988 count in her Second Amended Complaint.  Therefore, defendants respectfully request that the Court find that plaintiff's failure to properly plead any §1988 count in her Second Amended Complaint is sufficient to grant the defendants' motion to dismiss on that claim.

In the Second Amended Complaint, plaintiff alleges that she "was at all times relevant herein, was an employee and part owner and/or incorporator of the Center for Correctional Health and Policy Studies ("CCHPS")." (*Id.*, at ¶¶ 3, 24, and 26.). Plaintiff began working with CCHPS on or about 2001. (*Id.*, at ¶24.). Plaintiff has named CCHPS as a defendant in this lawsuit. (*Id.*). Plaintiff also states later in her Second Amended Complaint that CCHPS employed her and owed a duty of care to her and all its employees to "ensure their health, safety and a work environment free of sexual harassment and hostility and discrimination." (*Id.*, at ¶ 5.).

As to the District of Columbia and DOC, plaintiff alleges that she was an "employee, agent, and/or contractor, "who provided medical and mental health services to DOC." (*Id*., at ¶ 3.). Plaintiff further alleges that the District of Columbia and DOC are responsible for "ensuring the health, safety and a work environment free of sexual harassment and hostility and discrimination for all its employees and contractors." (*Id.*, at ¶ 4.).

As the Mental Health Director for CCHPS, plaintiff was not a District employee. (See Affidavit of Henry Lesansky, attached hereto as Exh. A) CCHPS employees performed all the medical attention for inmates and were not supervised by DOC supervisors. (Exh. A) The plaintiff was not paid wages or salary by the DOC. (Exh. A) The DOC did not extend annual leave to the plaintiff, provide her with retirement benefits or pay her social security taxes. (Exh. A) CCHPS performed its work at the DOC as an independent contractor and it was neither CCHPS or DOC's intent that CCHPS employees were DOC employees. (Exh. A)

Plaintiff's Second Amended Complaint alleges that Corporal Harcourt Masi began making unwelcome comments to her when she started at DOC in 1997, and continued to make unwelcome comments until September 30, 2006. (See Second Amended Complaint at ¶20). Plaintiff specifically alleges that, during late December 2003, Masi touched her arm on two

occasions. (Id., at ¶¶30-31). Plaintiff alleges that, following this second incident, she complained and was advised that the incidents had to be reported to the Office of the Special Investigator ("OSI"). (Id., at ¶31)

Plaintiff filed her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on May 12, 2006. (*See* EEOC Charge, attached hereto as Exh. B.). Plaintiff alleges sexual harassment, hostile work environment and retaliation starting in October 2001. (*Id.*). In her Charge of Discrimination, plaintiff states that she began working with CCHPS in October 2001. (*Id.*). The EEOC issued plaintiff her Right to Sue Letter on May 17, 2007. (*See* EEOC Letter, attached hereto as Exh. C.).

Plaintiff alleges that she complied with D.C. Code §12-309 by sending letters to the District on March 18, 2005, May 28, 2005 and August 10, 2006. (Second Amended Complaint, at ¶ 6.). However, the Office of Risk Management has no record of any Notice of Claim Letters from plaintiff or her attorney. (*See* Affidavit of Mia Powell Liley, attached hereto as Exh. D.).

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Aronoff v. Lenkin Co.,* 618 A.2d 669, 684 (D.C. 1992); *McBryde v. Amoco Oil Col.,* 404 A.2d 200, 202 (D.C. 1979); SCR - Civil 12(b)(6). Under Rule 12(b)(6), all allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Atkins v. Industrial Telecommunications Assn.,* 660 A.2d 885, 887 (1995).

Alternatively, summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." SCR -

Civil 56(c). "A moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *I.J.G., Inc. v. Penn-America Ins. Co.,* 830 A.2d 430, 437 n.4 (D.C. 2002), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Applying either standard, this Court should grant DOC's motion to dismiss or, in the alternative, its motion for summary judgment.

### III. ARGUMENT

### A. THE PLAINTIFF HAS NO TITLE VII CLAIM AGAINST THE DISTRICT AS SHE WAS NOT EMPLOYED BY THE DISTRICT

To sue under Title VII, a plaintiff must be an employee – "an individual employed by an employer." 42 U.S.C. section 2000e(f). To determine whether an individual is an employee or an independent contractor, a court must look to a variety of factors to assess the "economic realities" of the relationship. *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. *Id.* Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review. *Id.* If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist. *Id.* at 831-832.

The *Spirides* matter involved a claimant who worked as a contractor pursuant to a purchase order vendor contract with the federal government. *Id.* at 827. When Ms. *Spirides'* contract was not renewed, she brought her lawsuit under Title VII. *Id.* at 828. The trial court granted defendant's motion to dismiss which argued that Ms. Spirides could not maintain her

action as she was not the defendant's employee but, rather, was an independent contractor. *Id*. The D.C. Circuit Court of Appeals remanded the issue to the trial court for further analysis of Ms. Spirides' status as an employee with a right to sue under Title VII, laying out factors to be considered in the analysis. *Id*. at 831-832; 834.

Additional matters of fact that a reviewing court must consider include, among others, (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Id.* at 831-832.

Here, the plaintiff worked as an independent contractor with CCHPS, as the CCHPS Mental Health Director, providing health services at the DOC. The DOC did not employ CCHPS personnel. (*See* Affidavit of Henry Lesansky, Exh. A) Further, CCHPS employees are health specialists working under their own supervision, not DOC supervisors. (Exh. A) The CCHPS employees perform all the medical attention for the inmates. (Exh. A) The skills involved in the work of CCHPS employees are separate and distinct from the skills involved in the work of DOC employees, who are involved in the operation and programming of the District's jails. (Exh. A) The DOC did not pay plaintiff, afford her

leave, pay her social security taxes or other retirement benefits. (Exh. A) While Ms. Simms worked as the Mental Health Director for CCHPS, until 2006 when the CCHPS contract was not renewed with the DOC, her employment with CCHPS could not be terminated by the DOC. (Exh. A) Further, Ms. Simms was not supervised by anyone at the DOC. (Exh. A) The work CCHPS performed, providing health services, was not an integral part of the business of the DOC. (Exh. A) Under the contract between the DOC and CCHPS, it was not the DOC's intent that CCHPS personnel be DOC employees. (Exh. A)

The instant plaintiff, Laverna Simms, was not the defendants' employee and, as such, cannot maintain a Title VII claim against them. Plaintiff's Title VII claim against the District and the DOC must be dismissed as she was not their employee.

## B. PLAINTIFF'S TITLE VII CLAIM IS LIMITED TO THE TIME PERIOD AND ALLEGATIONS IN HER CHARGE OF DISCRIMINATION

It is well-settled that a plaintiff cannot bring a lawsuit for discrimination based on events not alleged in the EEOC complaint of discrimination, otherwise known as the EEOC "charge." In *Park v. Howard University*, the plaintiff's civil complaint alleged that she had been subjected to disparate treatment, and that she also had been subjected to a hostile work environment. 71 F.3d 904, 906 (D.C. Cir. 1995). However, her EEOC charge of discrimination only alleged facts sufficient to support a claim for disparate treatment. The D.C. Circuit reversed the trial court's entry of judgment in favor of the plaintiff with regard to her hostile work environment claim, explaining that Title VII "requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park*, 71 F.3d at 907. This requirement, in turn, leads to the rule that:

> A Title VII lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." At a minimum, the Title VII claims must arise from "the

administrative investigation that can reasonably be expected to follow the charge of discrimination." The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and "narrowing the issues for prompt adjudication and decision."

*Park*, 71 F.3d at 907 (internal citations omitted).  Holding that "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process,"  the D.C. Circuit dismissed the plaintiff's hostile workplace claim because her EEOC charge "did not express or even hint at a national origin hostile work environment claim."  *Id.*, citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 50 L. Ed. 2d 753, 97 S. Ct. 741 (1977).

Here, plaintiff's charge of discrimination concerns only the time period during which she was the Mental Health Director for CCHPS, which plaintiff asserts began in October 2001. (Exh. B)  As such, it is only her allegations of harassment during that time period which are properly before this Court.

### C.  PLAINTIFF'S EIGHTH AMENDMENT CLAIMS DO NOT STATE A CONSTITUTIONAL VIOLATION (COUNTS I & II)

Plaintiff's Second Amended Complaint fails to allege a violation of the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes. Plaintiff's Second Amended Complaint fails to state one important fact, that she was an inmate at D.C. Jail.  In fact, her Second Amended Complaint states just the opposite.  Plaintiff alleges that she "was at all times relevant herein, was an employee and part owner and/or incorporator of the Center for Correctional Health and Policy Studies ("CCHPS")." (Second Amended Complaint, at ¶¶ 3, 24, and 26.).  Plaintiff also states that CCHPS employed her and owed a duty of care to her and all its employees to "ensure their health, safety and a work environment free of sexual harassment and hostility and discrimination." (*Id.*, at ¶ 5.).

Based upon the foregoing, the plaintiff fails to allege the most important trigger for Eighth Amendment protection—that she is or was an inmate at a D.C. Jail. As such, the plaintiff's Eighth Amendment claim must be dismissed for failure to state a claim.

### D. PLAINTIFF'S FIFTH AMENDMENT CLAIMS DO NOT STATE A CONSTITUTIONAL VIOLATION

The Fifth Amendment of the U.S. Constitution guarantees each individual equal protection under the laws, including federal, state, and municipal statutes and ordinances. A law can be a facial violation of equal protection, or a facially valid law can be unconstitutionally applied in a manner that violates an individual's equal protection rights.

Here, the plaintiff alleges that the District is liable for her alleged injuries because it failed to ensure "the health, safety and a work environment free of sexual harassment and hostility and discrimination for all its employees and contractors." (*See* Second Amended Complaint, at ¶4). Nowhere in the plaintiff's Second Amended Complaint does she allege either a *per se* violation of equal protection, or that her equal protection rights were violated by a District of Columbia policy.

#### 1. Due Process Clause

The Supreme Court has ruled that "the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimum levels of safety and security in the workplace." *Collins v. City of Harker Heights*, 503 U.S. 115, 130 (1992). Nor was the Court "persuaded that the city's alleged failure to train its employees . . . was an omission that can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense." *Id*. at 128. It explained:

> Our refusal to characterize the city's alleged omission . . . as arbitrary in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes

> account of competing social, political, and economic forces. . . . The Due Process
> Clause "is not a guarantee against incorrect or ill-advised personnel decisions." . .
> . *Nor does it guarantee municipal employees a workplace that is free of
> unreasonable risks of harm.*

*Id.* at 128-29 (emphasis added).  Finally, the Court ruled that plaintiff had "not alleged that the

deprivation of this liberty interest was arbitrary in the constitutional sense." *Id*. at 129.

As applied here, the plaintiff's allegation that the District failed to ensure "the health,

safety and a work environment free of sexual harassment and hostility and discrimination for all

its employees and contractors," does not violate the plaintiff's constitutional rights. "The Due

Process Clause" does not "guarantee municipal employees a workplace that is free of

unreasonable risks of harm." *Collins*, 503 U.S. at 129.

Here, the plaintiff's claims are even more tenuous if she intends to allege that the DOC

policies and procedures on which her constitutional claims depend have the status of District

law.  As the District of Columbia Court of Appeals has ruled, an agency protocol "is not itself a

regulation whose violation by itself may support a finding of negligence, let alone gross

negligence." *District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C. 1998).    As the

*Henderson* court also recognized, a rule that a deviation from an internal protocol constitutes

negligence "would create the perverse incentive for the District to write its internal operating

procedures in such a manner as to impose minimal duties upon itself . . . rather than imposing

safety requirements . . . that may far exceed those followed by comparable institutions." *Clark v.

District of Columbia*, 708 A.2d 632, 636 (D.C. 1998).  These rulings apply with even greater

force when plaintiff seeks to convert a deviation from internal operating procedures into a tort of

constitutional dimensions.

### 2. Equal Protection Clause

The plaintiff also bases her lawsuit on the equal protection clause of the 5th Amendment of the U.S. Constitution.  (*See* Second Amended Complaint, Count IV.)  Specifically, the plaintiff alleges that the District failed "to prevent and remedy the racial discrimination and sexual harassment of" the plaintiff. (Second Amended Complaint, Count IV, ¶ 67.)  This claim must be dismissed, because, as a matter of law, the plaintiff cannot articulate a set of facts that establish discriminatory intent on the part of the District.

The plaintiff's claim arises directly out of the equal protection clause of the 5th Amendment.  Constitutional claims such as these are made actionable by the individual right of action set forth under 42 U.S.C. § 1983.  Because the plaintiff has brought her claim directly under the equal protection clause, her ability to survive a motion to dismiss or summary judgment challenge must be analyzed under equal protection guidelines.  It is well-settled that, in order for the plaintiff to prove that she was discriminated against in violation of the equal protection clause of the Fifth Amendment, she must set forth facts to show that the District's actions were based on discriminatory intent.

The Supreme Court has "made clear that 'proof of racially discriminatory intent or purpose is required' to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977) and citing *Washington v. Davis*, 426 U.S. 229 (1976)); *see also Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)) ("the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's

jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.").

Here, plaintiff has not set forth sufficient facts to survive the District's motion to dismiss on her equal protection claim.  Plaintiff simply cannot show through, the facts set forth in her Amended Complaint, the most critical element of her harassment claim—she cannot raise a factually supported inference of intent to harass.  *Cuyahoga Falls*, 538 U.S. at 194; *Arlington Heights*, 429 U.S. at 265.  The District, therefore, is entitled to judgment as a matter of law.

### E.  ALL CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (COUNTS I, II, III & IV)

The plaintiff alleges that the District violated her Eighth Amendment and Fifth Amendment rights under the U.S. Constitution, and demands relief for these violations pursuant to 42 U.S.C. § 1983. (*See* Second Amended Complaint, Counts I, II, III and IV.  As explained in *Monell v. Dep't of Social Servs. of the City of New York*, the District can be held liable for the plaintiff's constitutional claims only if the plaintiff alleges facts that indicate her injury was caused by a policy or custom of the District.  436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).  According to the Supreme Court decision in *Monell*:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983."

436 U.S. at 694.

The Supreme Court further held in *Oklahoma City* that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City*, 471 U.S. at 824.  The *Oklahoma City* decision interpreted *Monell* as holding that

"municipal liability should not be imposed *when the municipality was not itself at fault*." *Id.* at 818 (emphasis added).

Here, even with all reasonable inferences taken in favor of the plaintiff, the facts alleged in the Second Amended Complaint cannot permit a finding of a District of Columbia policy or custom of failure to ensure "the health, safety and a work environment free of sexual harassment and hostility and discrimination for all its employees and contractors." (*See* Second Amended Complaint, at ¶4). Furthermore, even if such an inference could be made, there are no facts alleged in the Second Amended Complaint to suggest that the plaintiff's allegations of sexual harassment were the result of any such policy.

### F. PLAINTIFF SIMMS DID NOT COMPLY WITH D.C. CODE § 12-309

The District is entitled to either a dismissal of plaintiff Simms' common law claims, or an Order granting it summary judgment on those claims because the plaintiff has failed to satisfy the mandatory notice requirement of D.C. Code § 12-309. Section 12-309 states in pertinent part:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause and circumstances of the injury or damage.

D.C. Code § 12-309 (2001) (emphasis added).

It is well-settled that compliance with the notice requirement of Section 12-309 is "a mandatory prerequisite to filing a lawsuit against the District." *McRae v. Olive*, 368 F. Supp. 2d 91, 95 (D.D.C. 2005); *see also District of Columbia v. Dunsmore,* 662 A.2d 1356, 1359 (D.C. 1995). "The rationale underlying the Section 12-309 notice requirement is to (1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the

District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978).

To protect this purpose, courts have construed strictly the plain language of § 12-309. *See, e.g., District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995).    Courts interpreting the statute have held that the District must <u>receive</u> notice within six months of the events that allegedly have caused a claimant's injury. *DeKine v. District of Columbia*, 422 A.2d 981, 984 (1980). Notice received even one day past due is considered untimely and completely bars recovery against the District. *Id.* at 986; *see also Williams v. District of Columbia*, 676 F. Supp. 329, 333 (D.D.C. 1987) (relying on *DeKine*, 422 A.2d 985, and explaining that the date of receipt is crucial in determining compliance with Section 12-309).

In this case, plaintiff has failed to satisfy the statutory requirements because she failed to notify the Mayor of her intent to file a claim against the District within six months of her last day of employment with CCHPS, September 30, 2006.  In fact, to this day, the District has not received a notice from plaintiff.  (*See* Exh. D.).

Any notice plaintiff may have given to the D.C. Department of Corrections is insufficient to satisfy the requirements of §12-309.  *See McRae*, 368 F. Supp. 2d at 95 ("Notice to officials subordinate to the Mayor is not sufficient."); *McFarlane*, No. 04-CA-8506, at 14 (holding that giving notice to agency's general counsel was insufficient to meet the requirements of Section 12-309).

Because satisfaction of the notice requirement of §12-309 is a prerequisite to filing suit against the District, and because plaintiff cannot now cure this defect, the District is entitled to

either a dismissal of plaintiff's common law claims, or an Order granting it summary judgment on those claims.

### G.  PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

The plaintiff brings claims against the District under the theories of negligence, deprivation of civil rights under 42 U.S.C. 1983, and violations of the Fifth and Eighth Amendments of the U.S. Constitution. (*See* Second Amended Complaint, *et. seq*.).  All of these claims are time-barred under § 12-301(8), and therefore must be dismissed.

#### 1.  Plaintiff's Common Law Claims, prior to October 2004, should be Dismissed Because They are Barred by D.C. Code 12-301(8).

The plaintiff's common law claims of intentional infliction of emotional distress and negligent supervision and training should be dismissed because they are barred by the statute of limitations.  According to D.C. Code 12-301(8), a three year statute of limitations is applied to all actions "for which a limitation is not otherwise specially prescribed," which includes claims for negligence and intentional infliction of emotional distress. *See Prouty v. Nat'l Railroad Passenger Corp.*, 572 F. Supp. 200, 206 (D.D.C. 1983) (holding there is a three year statute of limitations for negligence claims).  The statute of limitations period begins to run at the moment the plaintiff "suffers injury."  *Prouty*, 572 F. Supp. at 206.  Also, a "one-action rule applies . . . : the plaintiff must bring a single suit for all present and future damages flowing from a discrete [tortious] act . . . as soon as he or she becomes aware of some injury on which to base the suit." *Beard v. Edmondson*, 790 A.2d 541, 546 (D.C. 2002) (quoting *Keefe Co. v. Americable Int'l, Inc.,* 755 A.2d 469, 476 (D.C. 2000).

The plaintiff was aware of her alleged injuries starting in 1997 and continuing for approximately two years until sometime in 1999. Therefore, plaintiff's statute of limitations period for the common law claims began to run in 1997.

> **2.  Plaintiff's Claim should be Dismissed Because Her Constitutional Claims Under Section 1983 and the U.S. Constitution Are Barred by the Statute of Limitations.**

The plaintiff's 42 U.S.C. 1983 claim for deprivation of civil rights and claims under the Fifth and Eighth Amendments of the U.S. Constitution are also barred by the applicable statute of limitations. According to the Supreme Court of the United States, a court should borrow the general or residual statute for personal injury actions when addressing a §1983 claim.  *Owens v. Okure*, 488 U.S. 235, 249-250 (1989).  The purpose of adopting the residual statute of limitations is to make it predictable and easy for a plaintiff to determine the appropriate statute of limitations before filing a §1983 claim.  *Id.* at 248.

A plaintiff does not have a "carte blanche to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm." *Hendell v. World Plan Executive Council*, 705 A.2d 656, 661 (D.C. 1997).  Here, plaintiff left employment with the District of Columbia on or around October 2001. The plaintiff clearly had sufficient notice of the District's alleged misconduct in October of 2001. It is irrelevant that the plaintiff has since suffered any further injury since that date, since "a right of action may accrue before the plaintiff becomes aware of all of the relevant facts." *Id.*  The plaintiff failed to file her lawsuit until December 21, 2006, five years after she left the District and joined CCHPS as an owner-operator. Therefore, her constitutional claims are barred by the three year statute of limitations. *See Hall,* 285 F.3d at 82.

18

Simply put, all allegations of wrongdoing against the District of Columbia prior to December 2003 are barred by the applicable statute of limitations.

## H. PLAINTIFF'S COMMON LAW CLAIMS AGAINST THE DISTRICT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AND SUBJECT MATTER JURISDICTION

The plaintiff's Second Amended Complaint alleges common law claims for intentional infliction of emotional distress and negligent supervision and retention against the defendants. (Second Amended Complaint, Counts V and VI). Plaintiff's claims must be dismissed because she fails to state a claim upon which relief can be granted and this court lacks subject matter jurisdiction.

### 1. Plaintiff's Amended Complaint fails to State a Claim—Intentional Infliction of Emotional Distress (Count IV)

Even making all reasonable inferences in the plaintiff's favor, the Second Amended Complaint has not alleged conduct that is severe enough to state a claim for intentional infliction of emotional distress. The D.C. Court of Appeals has held that "[e]stablishing a prima facie case of intentional infliction of emotional distress requires a showing of '(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Futrell v. Department of Labor Federal Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 307 (D.C. 2000)).

While the standard for proving and intentional infliction of emotional distress claim generally is rigid, it is even more stringent in the context of employment disputes. The D.C. Court of Appeals explained, "We have been exacting as to the proof required to sustain such claims 'in an employment context.' The conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Futrell*, 816 A.2d at 808 (quoting *Paul*, 754 A.2d at 307-08); *see also Kerrigan v. Britches of Georgetowne, Inc.*, 705

19

A.2d 624, 628 (D.C. 1997) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) and Restatement (Second) of Torts § 46 cmt. d (1965)). Thus, in the employment context, such a standard has been extremely difficult to meet. In fact, the D.C. Court of Appeals has noted, that "generally, employer-employee conflicts do not rise to the level of outrageous conduct." *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997).

    The D.C. courts have followed this standard by dismissing all but the most egregious intentional infliction of emotional distress claims brought against employers. In *Cowley v. North American Telecommunications Assn.*, 691 A.2d 1169, 1171 (D.C. 1997), the plaintiff employee brought an intentional infliction of emotional distress claim against his employer, alleging that his supervisor had thwarted his attempts to increase his organization's membership, which was directly related to the plaintiff's commissions. He alleged that his supervisor refused to meet with him or include him in meetings, ignored his presence, and treated him in a hostile and unprofessional manner. At the end of 90 days, the plaintiff's supervisor gave him a poor performance evaluation, then terminated the plaintiff's employment for his refusal to sign the unfair evaluation. *Id.*

    The D.C. Court of Appeals affirmed the trial court's dismissal of the case, holding that the aforementioned circumstances "are not the type for which liability may be imposed for this particular tort." *Id.* The court further noted that "[m]ere discharge of an employee is not 'conduct that goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* at 1172 (quoting *Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993). The court wrote:

> Essentially, Crowley alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory. *See Elliott, 629 A.2d at 9; Smith, 620*

> *A.2d at 270.* Therefore, the trial court properly dismissed count IV (intentional infliction of emotional distress) for failure to state a claim.

*Id.*; *see also Kerrigan*, 705 A.2d at 628 (finding conduct not extreme and outrageous when plaintiff's employer allegedly manufactured evidence to establish a claim of sexual harassment against plaintiff and then demoted him and leaked information to other employees); *King*, 640 A.2d at 670-74 (finding conduct not extreme and outrageous when supervisor repeatedly failed to respond to employee's sexual harassment complaints, although noting that other retaliatory conduct was sufficient to send case to jury); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding conduct not outrageous when employer intentionally interfered with employee's ability to do job, stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others, and dismissed employee).

Here, the only timely allegations made by the plaintiff simply are incapable of supporting an intentional infliction of emotional distress claim against the District. Intentional infliction of emotional distress claims fall under the residual statute of limitations, which is three years. D.C. Code § 12-301(8). The District does not recognize a "continuing violation" doctrine. *Beard v. Edmonson*, 790 A.2d 541 (D.C. 2002); *Hendel v. World Plan Executive Council*, 705 A.2d 656, 667 (D.C. 1997).

The plaintiff's intentional infliction of emotional distress claim therefore is limited to those allegations that occurred after December 21, 2003. Plaintiff alleges that Masi touched her arm on three occasions between December 2003 and January 2004. Even if, as the plaintiff alleges, Masi's motivation in such conduct was based on her sex, the alleged actions simply do not rise to the level of outrage required to sustain an intentional infliction of emotional distress claim. If the plaintiffs in *Kerrigan*—whose employer manufactured evidence of sexual harassment against plaintiff, demoted him, and leaked information to other employees—could

not state a claim for intentional infliction of emotional distress, it is clear that the plaintiff's allegations in this case cannot support such an action.

### 2. *This Court does not have Subject Matter Jurisdiction over Plaintiff's Common Law Claims (Counts IV and V)*

In the alternative, even if the plaintiff had properly alleged intentional infliction of emotional distress and negligent supervision and retention, these common law claims should be dismissed for lack of subject matter jurisdiction. Absent any constitutional or federal statutory claims, this Court may decline to exercise supplemental jurisdiction over the common law claims asserted by the plaintiff. *See* 28 U.S.C. § 1368(c)(3). Furthermore, the Supreme Court has held that, once federal claims have been dismissed, a District Court *should* dismiss pendent state law claims.

In *Gaubert v. Gray*, the D.C. District Court dismissed the plaintiff's constitutional claims on the grounds of qualified immunity. 747 F. Supp. 40, 50 (D.C. Cir. 1990). Noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," the court also dismissed the plaintiff's four common law claims. *Id.* Citing the Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the District Court wrote:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Gaubert*, 747 F. Supp. at 50.

Here, the plaintiff's constitutional claims are barred under the *Monell* doctrine. *Monell*, 436 U.S. at 694. Furthermore, her constitutional claims do not rise to the level of a constitutional violation or a violation of Title VII. As such, the plaintiff will not be prejudiced by dismissal of her common law claims.

## I.  THE DEPARTMENT OF CORRECTIONS IS *NON SUI JURIS*

As an agency within the District of Columbia Government, the Department of Corrections is *non sui juris* and cannot be a party to this lawsuit.   The law is clear that "agencies and departments within the District of Columbia government are not suable as separate entities." *Does I through III v. District of Columbia,* 238 F.Supp.2d 212, 222 (D.D.C. 2002) (quoting *Gales v. District of Columbia*, 47 F.Supp.2d 43, 48 (D.D.C. 1999) (in turn citing *Fields v. District of Columbia Dep't of Corr.,* 789 F.Supp.2d 20, 22 (D.D.C. 1992)); *see also Arnold v. Moore,* F. upp.28, 33 (D.D.C. 1997) ("governmental agencies of the District of Columbia are not suable entities") (citing *Robertson v. District of Columbia Bd. of Higher Educ.,* 359 A.2d 28, 31, n.4 (D.C. 1976); *Miller v. Spencer*, 330 A.2d 250, 251, n.1 (D.C. 1974).

The statutory powers and duties of the Department of Corrections, set forth in D.C. Code § 24-211 (2006), *et seq.*, contain no provision for the Department of Corrections to be sued in its own name. Accordingly, the Department of Corrections is not a proper party to this action; therefore, all claims against DOC must be dismissed.

## IV.  <u>CONCLUSION</u>

WHEREFORE, defendants respectfully request that this Court grant their motion to dismiss, or the motion for summary judgment on all claims.

Dated: April 18, 2008

<div style="margin-left:40%">

Respectfully Submitted,

PETER J. NICKLES
Interim Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

</div>

_____/s/Nicole Lynch_____

NICOLE L. LYNCH [471953]
Section Chief
General Litigation § II

_____/s/ Alex Karpinski_____

ALEX KARPINSKI [4]
(Michigan Bar No. P58770)
Assistant Attorney General
441 4th Street, N.W., 6th Floor South
Washington, D.C.  20001
alex.karpinski@dc.gov

---

[4] Pursuant to the Local Rules of the United States District Court for the District of Columbia, Mr. Karpinski has registered with the Clerk's office as a Government Attorney and is appearing pursuant to LCvR 83.2.

24

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAVERNA SIMMS,
                 Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et. al.,*       Case No. 06-02178 (RCL)

          Defendants.

### AFFIDAVIT OF HENRY R. LESANSKY

     I, Henry R. Lesansky, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

1.     I am an adult of over the age of 18 years old, and I am competent to provide the information herein.

2.     I am the Health Services Administrator of the District of Columbia Department of Corrections ("DOC").

3.     Through my employment with the DOC, I am familiar with the DOC contract with the Center for Correctional Health and Policy Studies ("CCHPS") and the work of CCHPS employees at the DOC.

4.     CCHPS employees are not employees of the DOC.

5.     CCHPS employees are health specialists whose work is not supervised by DOC supervisors.

6.     As health specialists, the employees of CCHPS perform all the medical attention for the inmates.

7.      As health specialists, the skills involved in the work of CCHPS employees are separate and distinct from the skills involved in DOC employees, who are involved in the operation and programming of the District of Columbia jails.

8.      I am familiar with CCHPS employee Laverna Simms.

9.      Ms. Simms worked as the Mental Health Director of CCHPS and worked in this capacity until 2006 when the CCHPS contract was not renewed with the DOC.

10.      Ms. Simms was not paid wages or salary by the DOC.

11.      As CCHPS was an independent contractor with the DOC, Ms. Simms' employment with CCHPS could not be terminated by the DOC.

12.      Ms. Simms was not supervised by anyone at the DOC.

13.      The DOC did not provide annual leave to Ms. Simms while she was employed with CCHPS.

14.      CCHPS' work was not an integral part of the business of the DOC as CCHPS provided health specialist services and the DOC administers the District of Columbia jails.

15.      The DOC did not provide retirement benefits to Ms. Simms while she was employed with CCHPS.

16.      The DOC did not pay Ms. Simms' social security taxes while she was employed with CCHPS.

17.    CCHPS performs its work at the DOC as an independent contractor and it

is neither CCHPS or the DOC's intent that CCHPS employees are DOC

employees.

DATED  _4 · 17 · 2008_        _Henry R. Lesansky_ (signature)

Henry R. Lesansky

SWORN AND SUBSCRIBED before me, a Notary Public, this 17th day of April,

2008.

_Debra L. Washington_ (signature)

Notary Public, D.C.

My Commission Expires: _8/31/09_

DEBRA L. WASHINGTON
Notary Public District of Columbia
My Commission Expires 08/31/09

Exhibit B

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 100-2006-00018 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Laverna Simms** | **(202) 528-0164** | **07-02-1957** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 4085** | **Annapolis, MD 21403** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **DC DEPARTMENT OF CORRECTIONS** | **500+** | **(202) 673-8136** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1901 D Street, S.E.** | **Washington, DC 20003** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)* | Earliest **11-01-2001** Latest **03-29-2006**<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.    In approximately 10/01, I commenced working for Respondent as a Mental Health Coordinator pursuant to a contract between Respondent and Correctional Health and Policy Studies, Inc. From 11/01 to 12/05, male Correctional Officers sexually harassed me by subjecting me to unwelcome sexual comments, advances and touching of my bodily parts. This conduct created a hostile work environment for me. In approximately 12/03, I complained to Larry Corbett, the Deputy Warden, about this conduct. Later, in approximately 12/05, I complained to Dennis Harrison, the Warden, about this conduct. To my knowledge, nothing was done to correct this problem. Moreover, from 12/03 to 3/29/06, in retaliation for my opposition to sexual harassment, Respondent unjustifiably hampered me in the performance of my duties (e.g., delaying in opening doors to housing units, failing to contacts inmates for my assessment). Additionally, on 3/29/06, I was further retaliated against by being informed that I will be terminated effective 9/30/06 without justification. Currently, I am working for Respondent as a Mental Health Director.

II.    I believe that I have been discriminated against based upon my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. Furthermore, I believe that I have been retaliated against in violation of Section 704(a) of Title VII.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY ~ When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 5/12/06<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Exhibit C

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Laverna Simms<br>P.O. Box 4085<br>Annapolis, MD 21403 | From: | Baltimore Field Office<br>10 South Howard Street<br>3rd Floor<br>Baltimore, MD 21201 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-2006-00018 | Mattie J. Whitfield,<br>Investigator | (410) 209-2752 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed In federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Judy W Cassell for*

——————————————————————
Gerald S. Kiel,
Director

**MAY 17 2007**

*(Date Mailed)*

Enclosures(s)

cc:   Fred Staten, Jr.
      EEO Officer
      DC DEPT. OF CORRECTIONS
      1923 Vermont Ave., N.W.
      Ste. NB-12A
      Washington, DC 20001

EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **LAVERNA SIMMS** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No: 06-2178** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **District of Columbia** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### AFFIDAVIT OF MIA POWELL LILEY

I, **MIA POWELL LILEY** , being duly sworn, states that the following is true to the best of my knowledge, information and belief:

1.     I am the Manager, Settlements and Judgments for the Tort Liability Division, District of Columbia Office of Risk Management.  The Tort Liability Division receives, processes and investigates potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309 (2001 ed.).  The Office of Risk Management commenced to receive potential claims on January 15, 2004.

2.     Receipt of written notice of claims against the District of Columbia, are forwarded directly to the Tort Liability Division for processing.  When the Tort Liability Division receives notices of claims either from the Mayor's Office or directly, the Tort Liability Division records the receipt of such notice in its claims management system.

3.   Claims previously handled by the Claims Unit for the Office of the Attorney General

still under investigation as of January 15, 2004, were also transferred to the Office of

Risk Management and recorded in its claims management system.

4.     I have conducted a diligent search of the records placed in the Risk

Management system in the DC Office of Risk Management.  The result of this

search has revealed that the Tort Liability Division of the District of Columbia

Office of Risk Management, has received no claim notice from LaVerna Simms

that referred to claims described in the complaint in Civil Action No. 06-2178

Description of complaint on January 6, 2004, August 22, 2005 and September 30,

2006 - Civil Rights-Fifth & Eight Amendment, Retaliation Hostile Work

Environment, Sexual Harassment, Negligent Supervision, Negligent Retention and

Intentional Infliction of Emotional Distress due to Correction officer.

MIA POWELL LILEY

DISTRICT OF COLUMBIA, ss:

I, _Susana Suarez_ a Notary Public in and for the District of

Columbia, do hereby certify that MIA POWELL LILEY , whose name is signed to

the foregoing affidavit, bearing the date of the  5  day of June, 2007, personally

appeared before me and executed the said release, and acknowledged the same to be

her act and deed.

Given under my hand and official seal this  5  day of June, 2007.

NOTARY PUBLIC

My Commission Expires: _____ SUSANA SUAREZ
                                    NOTARY PUBLIC OF COLUMBIA
                                    My Commission Expires
                                    August 14, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAVERNA SIMMS,

                Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et. al.,*        Case No. 06-02178 (RCL)

                Defendants.

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On December 21, 2006, Plaintiff filed suit, alleging that she was sexually harassed and subjected to a hostile work environment at the D.C. Jail.  (*See* Complaint, *et. seq.*).

2.      Specifically, the plaintiff alleges that a DOC employee, Harcourt Masi, sexually harassed her and created, among other things, a hostile work environment. (*Id.*).

3.      On May 4, 2007, plaintiff filed her Amended Complaint alleging violations of 42 U.S.C. §1983, §1988, and the Fifth and Eighth Amendments of the U.S. Constitution.  (*See* Amended Complaint, *et. seq.*).

4.      On June 4, 2007, the defendants moved for summary judgment, and on July 24, 2007, the plaintiff moved for leave to file a Second Amended Complaint.

5.      On March 31, 2008, this Court entered an Order granting the plaintiff's motion to amend her complaint and denying the defendant's motion for summary judgment.

6.      The plaintiff's Second Amended Complaint contains the same causes of action as her first Amended Complaint and adds a cause of action under Title VII.  (See Second Amended Complaint, *et. seq.*).

7.      In the Second Amended Complaint, plaintiff alleges that she "was at all times relevant herein, was an employee and part owner and/or incorporator of the Center for Correctional Health and Policy Studies ("CCHPS")." (*Id.*, at ¶¶ 3, 24, and 26.).

8.    Plaintiff began working with CCHPS on or about 2001. (*Id.*, at ¶24.). Plaintiff has named CCHPS as a defendant in this lawsuit. (*Id.*).

9.    Plaintiff also states later in her Second Amended Complaint that CCHPS employed her and owed a duty of care to her and all its employees to "ensure their health, safety and a work environment free of sexual harassment and hostility and discrimination." (*Id.*, at ¶ 5.).

10.    As to the District of Columbia and DOC, plaintiff alleges that she was an "employee, agent, and/or contractor, "who provided medical and mental health services to DOC." (*Id.*, at ¶ 3.).

11.    Plaintiff further alleges that the District of Columbia and DOC are responsible for "ensuring the health, safety and a work environment free of sexual harassment and hostility and discrimination for all its employees and contractors." (*Id.*, at ¶ 4.).

12.    As the Mental Health Director for CCHPS, plaintiff was not a District employee. (See Affidavit of Henry Lesansky, attached hereto as Exh. A)

13.    CCHPS employees performed all the medical attention for inmates and were not supervised by DOC supervisors. (Exh. A)

14.    The plaintiff was not paid wages or salary by the DOC. (Exh. A)  The DOC did not extend annual leave to the plaintiff, provide her with retirement benefits or pay her social security taxes. (Exh. A)

15.    CCHPS performed its work at the DOC as an independent contractor and it was neither CCHPS or DOC's intent that CCHPS employees were DOC employees. (Exh. A)

16.    Plaintiff's Second Amended Complaint alleges that Corporal Harcourt Masi began making unwelcome comments to her when she started at DOC in 1997, and continued to

make unwelcome comments until September 30, 2006.  (See Second Amended Complaint at ¶20).

17.     Plaintiff specifically alleges that, during late December 2003, Masi touched her arm on two occasions. (Id., at ¶¶30-31).

18.     Plaintiff alleges that, following this second incident, she complained and was advised that the incidents had to be reported to the Office of the Special Investigator ("OSI"). (Id., at ¶31)

19.     Plaintiff filed her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on May 12, 2006.  (See EEOC Charge, attached hereto as Exh. D.).

20.     Plaintiff alleges sexual harassment, hostile work environment and retaliation starting in October 2001.  (Id.).

21.     In her Charge of Discrimination, plaintiff states that she began working with CCHPS in October 2001.  (Id.).

22.     The EEOC issued plaintiff her Right to Sue Letter on May 17, 2007.  (See EEOC Letter, attached hereto as Exh. E.).

23.     Plaintiff alleges that she complied with D.C. Code §12-309 by sending letters to the District on March 18, 2005, May 28, 2005 and August 10, 2006.  (Second Amended Complaint, at ¶ 6.).

24.     However, the Office of Risk Management has no record of any Notice of Claim Letters from plaintiff or her attorney.  (See Affidavit of Mia Powell Liley, attached hereto as Exh. F.).

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_/s/ Nicole Lynch_____
NICOLE LYNCH [471953]
Section Chief
General Litigation Section II

___/s/Alex Karpinski_____
ALEX KARPINSKI [1]
(Michigan Bar No. P58770)
 Assistant Attorney General
441 4th St., NW, 6th Floor South
Washington, DC 20001
(202) 724-6642
Fax No. (202) 727-3625
alex.karpinski@dc.gov

---

[1] Pursuant to the Local Rules of the United States District Court for the District of Columbia, Mr. Karpinski has registered with the Clerk's office as a Government Attorney and is appearing pursuant to LCvR 83.2.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LAVERNA SIMMS,

                              Plaintiff,

            v.

DISTRICT OF COLUMBIA, *et. al.*            Case No. 06-02178 (RCL)

                  Defendants.

## <u>ORDER</u>

Upon consideration of the defendants Motion to Dismiss, or in the alternative for

Summary Judgment, the Memorandum of Points and Authorities attached in support thereof, any

opposition thereto, and the entire record herein, it is on this _____ day of _____, 2008,

that the Court hereby:

ORDERS that the Motion for Summary Judgment is GRANTED; and it further,

ORDERS that the plaintiff's case against defendants is hereby DISMISSED, with

prejudice.


                              _____
                              JUDGE ROYCE C. LAMBERTH
                              U.S. District Court for the District of Columbia