IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAVERNA SIMMS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA ET.AL. ) | Case No. 1:06CV02178 |
| ) | |
| ) | Judge Royce C. Lamberth |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S OPPOSITION TO MOTION
TO SET ASIDE ORDER OF DEFAULT**

COMES NOW the Plaintiff LaVerna Simms by and through the undersigned Counsel and hereby opposes the Defendant the Center for Correctional Health and Policy Studies' (CCHPS) April 17, 2008, motion to set aside the entry of default j in this matter that was entered against it approximately 11 months ago on or about May 18, 2007.

In support of her opposition to CCHPS' motion to vacate the entry of default against it , she refers the court to the accompanying memorandum of law and supporting affidavits.

**I.   FACTUAL BACKGROUND**

The defendant CCHPS is a corporation that entered a contract with the defendant the District of Columbia in approximately 2000 and the terms of that

1

contract endured until September 30, 2006. The parties' contract required CCHPS to provide various medical services to inmates imprisoned at various District of Columbia jails. Plaintiff Simms was one of the incorporators of CCHPS. She was also a member of CCHPS' Board of Directors. During the period of 2004-2006 she became Secretary and Treasurer until early 2006. See Aff Simms After approximately April of 2006 Gwendolyn Sinclair became CCHPS' Secretary. Although Simms was no longer CHHPS' Secretary or Treasurer in April 2006, she continued to act in the role as Treasurer as her name was never removed from the banking documents and papers for CHHPS.

  As a CCHPS board member Simms reviewed any and all insurance policies. See Aff. Simms As Secretary Simms duties and responsibilities were and included reviewing and evaluating all of CCHPS' insurance policies, and as Treasurer she had the authority to sign checks paying for any and all of CCHPS' insurance premiums to its insurance policies. She also had oversight over CCHPS' Chief Financial Officer James Cobb from 2004-2006. She had knowledge of the substantive contents CCHPS' financial accounts. See Aff. Simms She specifically observed that CHHPS had several hundred thousand dollars in its BB & T Bank account at the time CCHPS ended its contract with the Department of Corrections (DOC) on September 30, 2006. See Aff Simms Plaintiff observed and was involved with the payment of the insurance premiums for CCHPS and CCHPS' Commercial General Liability Insurance (CGL) Policy. She observed that CCHPS' CGL policy was paid up until December 31, 2006 and its Directors and

Officers policy was paid up in full until March 31, 2007. See Aff Simms CCHPS' Board of Directors and Officers paid these insurance policies specifically because they wanted to make sure that they were in full force even after the corporation closed and because the directors and officers did not want to be held personally responsible or liable for any claims.

According to Simms it was the policy and practice of CCHPS to forward all lawsuits to their insurance company once it was served with a lawsuit. Simms' own personal observations as to CCHPS' financial condition in September 30, 2006 was that the company was solvent. See Aff. Simms  Ms. Simms is also aware that Zurich Insurance was one of CCHPS' insured and that Zurich was responsible for defending CCHPS on her claim. See Simms Affidavit.

The record shows in this matter that Simms filed her complaint against CCHPS in December 2006. CCHPS was served with Simms Complaint through its Resident agent CT Corporation on April 20, 2007. Once CCHPS failed to respond this Court entered Default against CCHPS on or about May 18, 2007. CCHPS was then served with Simms Motion Entry of Default Judgment on or about July 2007. It has been nine months since CCHPS has been served with an impending motion for an entry of default judgment and CCHPS and its insured has failed to respond to Simms' motion for entry of default and motion for entry of judgment. See Aff Counsel

After entry of default against CCHPS, on October 16, 2007, Simms through her undersigned Counsel contacted CCHPS' insured and learned through CCHPS'

3

insurance agent Mr. Potter that Simms case had been assigned a claims number and that her claim had been forwarded to its insured Zurich Insurance Company

During the period of October 2007 through December 2007, Simms through her counsel contacted CCHPS' insured concerning Simms' claims and in fact made a claim under CCHPS' policy. See Aff. Counsel  On January 4, 2008, CCHPS through its insured Zurich contacted Simms through its current counsel Anthony Towns to engage in settlement negotiations. See Aff. Counsel  Simms responded on January 8, 2008 as requested by CCHPS through its insured Zurich with a Demand Letter for settlement. See Aff. Counsel  Negotiations ceased. On April 17, 2008, CCHPS now comes in this court almost one year later and seeks to vacate the May 18, 2007, entry of default and to avoid entry of judgment, under the guise that it was insolvent and now its insurance company has given it money to defend this action-which is false. See Aff Simms

This Court's records show that CCHPS has been defending at least three lawsuits since up and until July 2007. See Aff . Counsel.

CCHPS' lack of candor and honesty to this Court is reprehensible Its lack of explanation of any meritorious defense, supporting affidavits or any supporting documents attached with its motion to vacate is not accidental but purposeful because:

    a.    CCHPS was not insolvent at the time its contract with the DOC ended on or about September 30, 2006. Ex. 1, Simms Aff.

4

  b. CCHPS had more than several hundred thousand dollars in its BB & T account in October 2006. Ex. 1, Simms Aff.

  c. CCHPS had notice of the lawsuit. See Court Record

  d. CCHPS continued in 2007 to defend other new and old lawsuits in 2007. See Court Record and Ex. 2-Aff. of Counsel

  e. CCHPS' insured Zurich had been notified of the Simms lawsuit in or about September 2007 through CCHPS and Simms Counsel. Ex. 2, Aff. of Counsel

  f. CCHPS insured contacted Simms through her counsel on January 4, 2008 and engaged in settlement negotiations. Ex. 2, Aff. of Counsel.

## II. LEGAL STANDARD

Plaintiff Simms recognizes that the federal courts disfavor defaults and normally when a party moves quickly or in a reasonable time frame to set aside a default entry and for god cause most courts may set aside an entry of default and allow the claims to be decided on the merits. <u>United States v. $ 55,518.05 in U.S. Currency</u>, 728 F.2d 192, 194-95 (3d Cir. 1984). Federal Rule of Civil Procedure 55(c) states that "[f]or good cause shown the court may set aside an entry of default . . . ." Fed. R. Civ. P. 55(c)

This Circuit has held that when deciding a motion to set aside or vacate an entry of default the Court must consider at least three factors when determining whether or not to set aside a default judgment pursuant to Rule 55 ( c ), which are as follows:

  (1)  whether defendant's delay was willful.

  (2)  whether defendant has a meritorious defense; and,

  (3)  whether plaintiff will be prejudiced if default is not granted

## II. ARGUMENT

The proper application of the Federal Rules of Civil Procedure is not some mere academic exercise, it is fundamental to the administration of the judicial process. In this case at bar, CCHPS a corporation was duly and properly served with both Simms' complaint. When CCHPS failed to respond or file an answer to Simms' Complaint on May 18, 2007, the court entered an order of default. CCHPS does not deny that it had notice of the entry of default. It had notice of this matter for over 11 months. See Court Record.

CCHPS also had notice of Simms' pending motion before this court to proceed on damages more than nine (9) months ago. Despite CCHPS' notice of the entry of default and pending motion for judgment, CCHPS failed and refused to do anything to remove the entry of default and instead engaged in settlement negotiations with Simms in January 2008 and after that failed, then waited for the court's ruling on the District of Columbia and DOC's motions to dismiss and in the alternative motion for summary judgment. See Affs of Simms and Counsel

In this circuit as well as other circuits it has been held that a party seeking to set aside the entry of a default must prove to the presiding court (1) that any delay was not willful and that it acted promptly, (2) that it has a meritorious

defense and (3) that setting aside the default would not prejudice the non-moving party. CCHPS has failed in its motion to show any of the above three factors.

A review of the case law on this issue and in other circuits shows that a delay as short as six weeks is not a prompt action:. Marine National Bank, 663 F. Supp 462, 466 (D. Me.), aff'd, 833 F.2d 375 (1st Cir. 1987). In another case a six week delay in filing a motion to vacate did not constitute prompt action. General Contracting $ Trading Co. v. Interpole Inc., 899 F.2d 109, 112 (lst Cir. 1990) (three and one-half –month delay); consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp., 383 F.2d 249 (4th Cir. 1967) (two and one half month delay was not considered prompt).

### A.     Eleven Month Delay Was Willful and Excessive

In this matter CCHPS calculated and waited 11 months before even filing a motion to vacate the entry of default. The 11 month delay was willful, excessive and purposeful, especially in light of the fact that CCHPS had almost a year's notice of the entry of default, it had money in the bank, it was defending other actions in this court in 2007 and it engaged in settlement negotiations with Simms in early January of 2008. More importantly CCPS' insured Zurich Insurance had notice at least as early as September 2007 of the lawsuit. CCHPS and Zurich had the responsibility to step in and obtain an attorney and file a motion immediately and have the entry of default set aside. Instead both chose to engage in settlement negotiations with Simms and only when they did not get what they wanted, as a last ditch effort they sought court intervention to set the entry of default set aside.

More importantly , CCHPS was never insolvent but had over several hundred thousand dollars in its bank account in October 2006, (b) CCHPS continued to pay income and salaries up and until December 2007, (c) CCHPS continued to hire Attorney Towns to defend it in 2007 in other matters in which it had received a default, (d) that defendant CCHPS at all times relevant was and is covered and protected under an insurance policy, (e) that CCHPS' insured has established a claim for Simms in this case, (f) that CCHPS' through its insured engaged in settlement negations in January 2008 to settle Simms' claims in this matter (g) the Plaintiff's counsel has been in contact with the insured and has made a claim with the insured, (h) CCHPS' insured was notified in or about October 2007 as to Simms' case, through its Insurance agent and (i) CCHPS' insured was notified three times by Simms' counsel of the default order, her claims and this case by letter in 2007, by voice message in 2007, by facsimile and regular mail in 2008..

At all times relevant CCHPS had the funds to defend this claims, it had an insurance policy that covers the claim, the insured has set up a claim and it has been in contact with Simms to possibly settle the matter.

If every defendant who claimed it did not have money were allowed to take its time to come into to court to defend against a claim, the administration of the judicial process would be chaotic and go up in smoke. Not having the alleged money to file a response is not good cause and CCHPS has fabricated and misrepresented its financial position to this court. It has manufactured, pretended

8

and orchestrated the allegation that its insured just gave it the money to defend this matter when it in January 2008 engaged in settlement negotiation s with Simms. See Exs. 1 and 2  Moreover, its allegation is unsupported by even an affidavit.

However, because of CCHPS' willful delay and refusal to respond to Simms' complaints which was due to its own conduct, this Court should deny its eleventh hour motion to set aside the entry of default.

### B.     Lack of Meritorious Defense

A second element this court must review and determine while considering CCHPS' motion is whether or not it has presented any meritorious defense. In this matter CCHPS has not proffered not even a scant or scintilla of a meritorious defense as to why the entry of default should be vacated. CCHPS' mere assertion by its counsel in its three page motion is not sufficient to show that it has a meritorious defense. In fact the motion is devoid of any mention of a meritorious defense, thus this court has no choice but to assume there is none. When CCHPS filed its motion it was required to provide a presentation or proffer to this court of some evidence true or false, that would permit either this court or a jury to find in favor of it as the defaulting party. United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).  CCHPS at a minimum was required to articulate and show the possibility that it may be able to vindicate itself but  yet it has failed to proffer any evidence and in fact does not address the issue at all in its motion as to having a meritorious defense. The simple fact is that CCHPS failed to spell out any

9

extenuating circumstances or facts upon which this court can rely upon to grant defendant's motion to vacate the entry of default.

Setting aside the default judgment would be pointless if CCHPS cannot show that it has a possibility of prevailing on the merits. CCHPS' sole and absolute reason for filing this motion is because it was unable to negotiate a settlement that it wanted and it figured if it could somehow prevail and out wit Simms by somehow convincing this court in setting aside the entry of default it would not have to meet her settlement demands. No exceptional circumstances exist in this matter. Lincoln Savings Bank v. Carmelita Dev. Corp., 88 F.R.D. 648, 651 (D.P.R. 1980). Apart from CCHPS' unsuccessful settlement negotiations, the defendant presents no allegation or other indication of any exceptional or extraordinary reason for its delay in responding to various notices to bring its motion 11 months ago.

Despite twice being notified by this Court to file an answer and/or even a motion to set aside the entry of default, CCHPS was defiant, willful and cavalier in its actions and defiant to this court. It was dismissive in its actions and exhibited a flagrant disregard to the judicial process.

CCHPS chose not to respond to Simms' case. It did respond in 2007 in other court matters pending in this court. See Aff. Counsel  Nor was Simms' case too costly for CCHPS to pay a lawyer to respond to Simms' complaint or set the default. Therefore, the Court must find that there are no extraordinary circumstances that would warrant the Court to grant Defendant CCHPS' Motion

to Vacate and that its failure to Answer Simms' complaint was due to its own willful conduct.

A meritorious defense is simply not merely a party alleging that it denies all allegations of the complaint. Since CCHPS has failed to meet its burden as to element two by showing it has a meritorious defense, this Court is left with no choice but to summarily deny CCHPS' motion to vacate the entry of default.

### C. Setting Aside Default Will Prejudice and Harm Plaintiff Simms Case and Claims.

Because CCHPS willfully failed to step into the case and file a response, Simms was denied the opportunity to add any additional claims against the defendant such as defamation, Title VII, sex, hostile work environment and retaliation claims as well as any other District of Columbia claims against her former employer as the statue of limitations has expired for her to bring any additional tort or human rights claims against CCHPS. Moreover, some key witnesses cannot be found or located. The evidence to prove Simms' claims against CCHPS has disappeared and/or diminished as the defendant has and was removing all incriminating documents and evidence before it closed its doors. Also there may in fact be collusion between the defendants.

## IV. CONCLUSION

Wherefore, for all the above reasons Plaintiff Simms moves this court to deny CCHPS' motion to vacate the entry of default in its entirety..

Respectfully submitted,

_____/s/_____
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 138-B
Largo, Maryland 20774
301-773-9652 (Office)
301-925-4070 (Fax)
Bar. No. 04412

Attorney for Plaintiff Laverna Simms

Dated: May 8, 2008

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 8th day of May 2008, the following Opposition to Defendant Center for Correctional Health and Policy Studies was served upon the following defendants by filing electronically in the U.S. District Court for the District of Columbia to:

Alex Karpinski, Esquire
Assistant Attorney General
441 4th Street N.W., 6th Floor South
Washington, D.C. 20001
Counsel For:
District of Columbia and
Director of District of Columbia
Department of Corrections

James Towns, Esquire
Attorney For
Center for Correctional Health and
Policies and Studies
803 Florida Avenue, N.W.
Washington, D.C. 2001

_____/s/_____
Jo Ann P. Myles

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAVERNA SIMMS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA ET.AL. )<br>)<br>)<br>Defendants. )<br>)<br>)| Case No. 1:06CV02178<br><br>Judge Royce C. Lamberth |

## **LA VERNA SIMMS**

I LA VERNA SIMMS hereby swear and affirm under the penalty of perjury that the following statements are true and correct to the best of my knowledge and belief.

1. That I am over the age of 18 years old.

2. I am competent to give testimony in the above captioned matter.

3. I have personal knowledge as to the facts and circumstances in the above captioned matter.

4. That in or about 2000, I and others incorporated the Center for Correctional Health Policy Studies (CCHPS) which is a defendant in the above captioned matter.

5. From the period of 2000 until June of 2006, I was a member of the Board of Directors of CCHPS.

6. That from the period of approximately 2004 until early 2006 I also served as Secretary and Treasurer for CCHPS.

1

7. That during the period of 2000-early 2006, I attended regular CCHPS' board meetings, reviewed CCHPS' insurance policies including but not limited to its Commercial General Liability (CGL) Policy and its Board of Directors and Officers policy.

8. As Secretary of CCHPS in 2006 I observed and participated in the payment of CCHPS' CGL policy and Board of Directors and Officers policy. CCHPS CGL policy was paid up and until December 31, 2006. CCHPS Board of Directors and Officers policy was paid up and until March 31, 2007.

9. My duties and responsibilities as Secretary was that I could accept service on any legal documents if necessary. As Treasurer I signed payroll and other kinds of checks, reviewed bank statements, financial statements and made bank deposits. I also oversaw the work and duties of CCHPS' Chief Financial Officer James Cobb as its treasurer.

10. As treasurer I observed the money balances in CCHPS' BB&T Bank account. I was also one of the persons who signed checks for CCHPS in 2005- early 2006. I was also well aware and observed CCHPS debts for the year 2006 which included debt through September 30, 2006. Based on my observations and calculations of CCHPS bank account balances and its debts through September 2006, I observed that CCHPS had several hundred thousand dollars in its B B&T Bank account after September 30, 2006. I continue to be the Trustee over the CCHPS employee annuities. I also continued to carryout some Treasurer duties after March 2006 such as depositing checks for CCHPS until September 30, 2006.

11. I further observed and experienced after September 30, 2006, CCHPS continued to pay me and all other staff for annual leave several months after it shut down in September 2006. Members of CCHPS board of directors continued to pay the Chief Financial Officer through mid 2007.

12. CCHPS Board of Directors continued to pay Mr. Anthony Towns one of the attorneys to represent them and Officers in 2006 and 2007 in several pending legal matters.

13. In October of 2007 I provided CCHPS' insurance information to my attorney. She contacted CCHPS' insurance agent Mr. Joe Potter and she was provided with information on my claim with Zurich Insurance.

14. In early January 2008, CCHPS through its insured Zurich Insurance company approached me through my attorney and discussed settling my claim in this matter. Through my attorney on or about January 8, 2008, I submitted a written settlement demand to CCHPS attorney Mr. Towns and to Zurich's legal counsel in New York.

I LA VERNA SIMMS HEREBY SWEAR AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____
LA VERNA SIMMS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAVERNA SIMMS | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA ET.AL. | ) | Case No. 1:06CV02178 |
| | ) | |
| | ) | Judge Royce C. Lamberth |
|     Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF JO ANN . MYLES

I JO ANN MYLES hereby swear and affirm under the penalty of perjury that the following statements are true and correct to the best of my knowledge and belief.

1. That I am over the age of 18 years old.

2. I am competent to give testimony in the above captioned matter.

3. I have personal knowledge as to the facts and circumstances in the above captioned matter.

4. That I am the legal representative of LaVerna Simms in the above captioned matter.

4. That on October 16, 2007, I was contacted by the Plaintiff La Verna Simms my client with information concerning the insurance company for the Center for Correctional Health Policy Studies (CCHPS) which is a defendant in the above captioned matter.

5. That on or about October 16, 2007 I contacted the CCHPS insurance agent Mr. Joe Potter located on Route 450 Annapolis Road, in Prince George's County. Maryland . He informed me the CCHPS' insurance policy number, claims number for Simms case, the Attorney for Zurich Insurance that was handling Simms claims and the attorney's phone number and fax number. Mr. Potter also stated that the claim was no longer in his office and that Simms' claims had gone forward to Zurich Insurance Company in Jamaica, New York.

6. I contacted Zurich's Counsel Sherrie Gephardt of Jamaica New York twice during the period from October 2007 to December 2007. The undersigned also sent a letter to Zurich concerning Ms. Simms' claims against CCHPS. Through the undersigned's experience and contacts with CCHPS' insured, Zurich was well aware of the entry of default against CCHPS as early as approximately September 2007.

7. Specifically, on January 4, 2008, Mr. Anthony Towns the attorney in this matter for CCHPS contacted the undersigned on behalf of CCHPS' through its insured Zurich and requested that Ms. Simms submit a Demand Letter and engage in settlement negotiations.

8. On January 8, 2008, Simms through the undersigned, sent a letter to both Mr. Anthony Towns and CCHPS' insured legal Counsel Sherrie Gephardt with a proposed settlement demand. Settlement did not materialize.

9. I conducted my own research of the District of Columbia Court Records of CCHPS and the records show that CCHPS was represented by attorneys Mr. Towns and Mr. Roth up and until at least July 2007 in the following cases. NG v. CCHPS et.al., Case

No. 07CV00389 ESH, Bryant v. CCHPS et. al., Case No. 05CV02089 and Hines v. CCHPS et. al., Case No. 05CV02187.

    10.    Based on my experience and contacts with CCHPS, its insured Zurich had the knowledge of Simms' lawsuit at least as early as September 2007, if not earlier and it had the opportunity to step in and move to set aside the Entry of Default in the above captioned matter against CCHPS.

I JO ANN MYLES HEREBY SWEAR AND AFFIRM UNDER THEPENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.



          _____/s/_____
          Jo Ann P. Myles