**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

LAVERNA SIMMS                                    )
                                                 )
                       Plaintiff,                )
                                                 )
                                                 )        Civil Action No. 1:06-CV-2178
02570
           v.                                    )        Judge Royce C. Lamberth
                                                 )
DISTRICT OF COLUMBIA                             )
GOVERNMENT ET.AL.                                )
                                                 )
                       Defendants                )
                                                 )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Plaintiff, Laverna Simms by and through her undersigned counsel, hereby

opposes Defendants the District of Columbia and the Director of the District of Columbia

Department of Corrections (DOC) Second Motion To Dismiss Or In, the Alternative

Motion For Summary Judgment. Plaintiff Simms also moves this court for discovery

pursuant to Fed. R. Civ. P. 56 (e) and (f). See Ex. 1, Affidavit of Plaintiff's Counsel

**I.      PRELIMINARY STATEMENT**

In support of Plaintiff's opposition she refers this Court to the following

accompanying points and authority and memorandum as set forth below. As a

preliminary matter the Plaintiff asserts that this Court should deny the defendants' motion

at a minimum for the following reasons:

1.      Pursuant to Fed. R. Civ. P. 56 (e) and (f) plaintiff cannot fully defend this

motion because full discovery, opposing affidavits, depositions, answers to

interrogatories, request for admissions and other supporting certified documents and papers are necessary in order to defend the motion. Plaintiff Simms has no opportunity for discovery in this matter, wherefore Plaintiff pleads that she requires further testimony and evidence in order to fully and completely respond to the defendants' motion; See Counsel Affidavit Ex. 1

2.      That Plaintiff's Title VII claim should not be dismissed as the District of Columbia as Plaintiff Simms was a District employee (Count VII) and there is a material dispute in the facts between the parties as whether or not Simms was a District of Columbia employee. Because this is a factual dispute, only a jury can decide based on the facts and circumstances as to whether or not Simms was an employee of the defendants;

3.      Plaintiff's claims are not limited to the time period and allegations in her formal 2006 Equal Employment Opportunity Commission (EEOC) completed on the Form 5 for the EEOC. Simms actually filed her own EEOC charge with the EEOC one year prior to 2006 on or about August 2005. See Exhibit 2, Attachment This 2005 Charge was far more extensive and directly included numerous claims that are in her current complaint. Simms is not foreclosed from her charges in her 2005 complaint with the EEOC. Based on the EEOC's definition of a Charge, Simms' August 2005 Charge was an EEOC charge and her May 2006 EEOC charge was a charge. The fact that the EEOC did not issue a right to sue letter for the 2005 EEOC charge file by Simms does not diminish her claims against the defendants. Federal Express Corporation v. Paul Holowecki et. al., 552 U.S. _____ (2008)

4.      Plaintiff has and does state an Eighth Amendment claim (Counts I & II).

5.     Plaintiff has and does state a Fifth Amendment claim (Counts II, III & IV);

6.     Plaintiff's Second Amended Complaint does state a claim for municipal liability under 42 U.S.C. § 1983 and the doctrine of <u>Monell v. Dept of Social Servc. Of the City of New York</u>, 436 U.S. 658, 694 (1978) (Counts I, II, III and IV);

7.     Plaintiff has filed several timely notices consistent with D.C. Code § 12-309; See Exhibits

8.     Plaintiff's claims should not be time barred and she had complied with the applicable statue of limitations (Counts I, II, III, IV, V and VI); are not time barred;

9.     Plaintiff's common law claims should not be dismissed as she properly and adequately states a claim upon which relief can be granted and this Court has subject matter jurisdiction over them (Counts V and VI) and

10.     DOC was not sued as an entity thus its status of "*non sui juris* is irrelevant. The Director of the DOC was sued in his/or official capacity, which is permitted under the law. [1]

## II.     PROCEDURAL HISTORY

On December 21, 2006, Plaintiff Simms filed this employment discrimination lawsuit against the defendants for: (1) sexual harassment, (2) retaliation, (3) for being subjected to a hostile work environment, (4) Negligent Supervision, (5) Negligent Retention, and (6) Intentional Infliction of Emotional Harm.  In her original complaint Simms alleged that many District of Columbia male employees sexually harassed her

---

[1] It is clear on the outside of the Plaintiff's Complaint that she sued the Director of the DOC in his/or her official Capacity. There is no language on the front of the complaint that shows that Simms sued the DOC as a government agency.

while she worked at the District of Columbia Department of Corrections (DOC).  She

also specifically made allegations against Correctional Officer Harcourt Masi who was

known for over a decade by the Defendants for being notorious for sexually harassing the

females who worked or were inmates in the jail.[2]

On April 20, 2007, the Defendants were served. See Docket Entry 3 and 4. On

May 4, 2007, Simms filed her First Amended Complaint. See docket entry number seven

(7).  On May 18, 2007, the District of Columbia and Director of the DOC failed to file an

Answer and so the Court Clerk properly entered Order of Defaults against these

defendants. On June 1, 2007, defendants filed a motion to set aside their Defaults. On

June 4, 2007, Defendants filed their first Motion To Dismiss and/or In the Alternative

Motion For Summary Judgment, while they were still in Default. On July 6, 2007, the

Court Granted the defendants' motion to set aside their Default Orders.

On July 24, 2007, after Plaintiff Simms received her Right To Sue Letter from the

EEOC she filed a motion for leave to file her second Amended Complaint, adding her

Title VII and Retaliation claims. See Second Amended Complaint   On March 31, 2008,

this Court Granted the Plaintiff's motion for leave to file her Second Amended

Complaint, without prejudice to the Defendants to refile their motion to dismiss and/or In

the alternative motion for summary judgment.

In Simms' Second Amended Complaint she clearly stated allegations as to all of

the claims she now pursues. See Second Amended Complaint. See Docket Entry 36

Through her complaint Simms alleges that the Defendants acted with "deliberate

---

[2] Simms has not failed to file a claim pursuant to Section 1988. The Defendants have
simply made an allegation that no claim has not been filed under Section 1988 but has not
identified any specific facts to which the Plaintiff can adequately respond to.

indifference towards her constitutional rights for § 1983. (See ¶¶ 12-15, 29-41, 47, 50-51, 61, 80-83)  The mere fact that Simms alleges that it was the Defendants own guards and/or employees that violated their policy and regulations is irrelevant as the Defendants as still liable.

Specifically, in Simms' Second Complaint she also alleges that the defendants had a policy and custom that inflicted harm upon the plaintiff that caused her injury.  42 U.S.C. § 1983. Additionally, Simms alleged that the District government's inaction and refusal, failure and/or inadequate training, supervision of its employees sufficiently constitutes "… a policy or custom," for which the municipality may be held under the § 1983.  Simms further alleged that the defendants had shown and acted in differently to her constitutional rights as a person directly under their dominion and control and domain.  See ¶¶1-83  See 42. U.S.C. § 1983  More importantly, Simms has plead  that the Defendants had a culture of routine acceptance of sexual encounters and harassment in the workplace.  See ¶¶1-83

## IIII.    FACTUAL BACKGROUND

Plaintiff LaVerna Simms, an African American female was a former employee and/or contractor, of the District of Columbia government and Department of Corrections and co-founder and employee of the Center for Correctional Health Studies Policies (CCHPS), since 2001 or earlier. From the time of her employment with Defendants Simms has repeatedly been sexually harassed by the male employees at the DOC. She specifically alleged that DOC Correctional Officers Harcourt Masi and Washington, sexually harassed her for years, namely at least a six year period on a routine and daily

basis up and until she left/terminated from the DOC on September 30, 2006. Simms

alleges that the daily harassment  was pervasive, unwanted, offensive, hostile,

humiliating and degrading and emotionally injured and damaged her. See Compl ¶¶20-51

Simms also alleges that she and other women working in the DOC jail had filed

sexual harassment complaints for more than 10 years and particularly against

Correctional Guards Masi and Washington, which the defendants were dismissive of ,

ignored and were remiss to correct, until Simms filed a formal charge in January of 2004,

through the Office of Special Inspector (OSI).

The allegations show that Simms had complained for at least six years at some

point and time to all three of the Defendants nothing was done and her complaints were

completely ignored. Her allegations show that the District and DOC had not posted or

implemented the provisions under its 2002 Consent Order in this Court to post

discrimination complaint procedures, to implement corrective measures and to train its

personnel and/or to provide them further or remedial sexual harassment training.

Simms has also alleged repeatedly that she and other females throughout her employment at the

DOC were being sexually harassed on a daily basis. She further alleged that the defendants at all times

relevant had knowledge, condoned and/or participated in the sexual harassment. Compl¶10

Specifically, Simms alleged in her Complaint that she and other female contractors and/or

employees were  routinely subjected to a pattern and practice of sexual harassment and

hostile work environment at the DCDOC and that the sexual harassment practices was

the standard operating procedure—the regular rather than the unusual practice at the

District of Columbia Department of Corrections. Compl ¶ 11

Since 1979 this Court has legally found that the DOC has maintained a sexually hostile work environment. In 2002 in the Bessey Neal Case the defendants entered into a court ordered agreement to clean up the sexual and hostile work environment in the District of Columbia Department of Corrections.

Simms alleges that the defendants failed to post notices informing employees and contractors that sexual harassment violates Title VII, to develop an effective complaint procedure, to develop appropriate sanctions for employees found to have sexually harassed female employees, and to instruct all employees about sexual harassment.

Simms was never notified, instructed or provided information about their sexual harassment and discrimination complaint procedure or policies. Defendants failed to post notices of its discrimination complaint procedures until after Simms had complained the last time and after she was sexually groped and battered in late 2003 in the workplace by Correctional Officer Harcourt Masi.

Simms on or about 1997, a licensed professional counselor, began working for the District of Columbia Receiver at the DOC. At that time Ms. Simms served as the Intake Coordinator on the evening shift at DOC.

Soon after starting work at DOC, Ms. Simms met Correctional Officer Harcourt Masi who after seeing her for the first time approached her and introduced himself to her. Immediately after introducing himself to Ms. Simms, Masi asked Ms. Simms out on a date, to which Ms. Simms replied no. Compl ¶18

Thereafter for over a period of approximately five years, on a daily basis and/or on each occasion that Officer Masi saw Ms. Simms at DCDOC, he would stand outside of her office door, stare at her while she would be interviewing inmates and evaluating

them for medical services and/or for the need of mental health care medical services. While Simms was interviewing and assessing the inmates, Officer Masi would steadfast continue to wait outside of Ms. Simms office door from 15 to 45 minutes or more and stare at her until she had completed her inmate interviews. Compl¶ 19

        Simms further alleged that after seeing her last patient, Masi still standing and staring at her outside of her door would then enter Simms' office and approach Simms and repeatedly ask her out on dates. He would repeatedly make comments about her body. He would repeatedly make comments about her shape. He would repeatedly make comments about her appearance. He would repeatedly stare at her and undress her with his eyes and he would repeatedly make comments to her by telling her what he could do for her, all of these things were not allowed in the workplace. See 2, Program Statement   Masi during a period of years from 1997 until 2003 on a daily basis and/or on each occasion that he saw Simms at the DOC he engaged in this conduct. Although, MASI was finally issued a "Stay Away" order prohibiting from being near Simms in 2005, he continued intimidating and harassing conduct towards Simms until Simms left the DOC on September 30, 2006. Compl ¶20

    When Masi engaged in this Conduct Simms would repeatedly and explicitly tell Mr. Masi that she had no interest in going out with him and for him to stop harassing her.  However, Masi never stopped the harassment and stalking of Ms. Simms which was continuous and ongoing up until the time Ms. Simms left DCDOC on September 30, 2006.  Compl¶21

Simms was so threatened by Masi's behavior that she began to wear sunglasses inside the jail and to wear a coat over her body to disguise her looks and to prevent Masi from staring at her and undressing her with his stares. Compl¶22

Simms initially in 1997 complained to co-workers about Masi's behavior and conduct because she did not know where to complain. Ex1. page 44- 45  She was not aware of any complaint procedures and was fearful of her job because at the time from at least from 1999 until 2004, Masi carried on a well known, publicized and advertised sexual relationship with the female warden Patricia Jackson-Britton, who was later promoted to Deputy Director of the DCDOC in or about 2006.  Compl ¶23

However, in or about 2001, Simms became one of the founders of the Center For Correctional Health And Policy Studies Inc. (CCHPS) Ex. 2Under  CCHPS she began working the day shift in her last position at the DCDOC as Outpatient Mental Health Director. Simms was an employee of CCHPS, a corporation that had a contract with the District of Columbia to provide mental health services for the DCDOC by managing and providing mental health services within the DOC. Compl ¶24

Although a CCHPS employee, Simms worked directly for the District of Columbia government. She had an office inside the DOC facilities and she performed her work for the Defendant District of Columbia at the DOC facilities. Ex. 3. Plaintiff's work was overseen by the District and DOC. defendants. Ex. 2 Thus because of the nature of her work and the contract that CCHPS had with the District of Columbia Government Ms. Simms was both a  CCHPS employee and/or employee for the District Government and DOC. Compl¶ 25 and Ex.3  Defendants in their own documents and by their own words characterized Simms as a contract employee.

9

During the period of 2001 until 2006 CCHPS as Plaintiff Simms employer also had a duty to protect her from the sexual harassment, stalking and assault and battery made upon her by Masi and any other male employee at DOC.

In her amended complaint Simms alleges that during the period of 2001 until 2006 she complained to authorities at CCHPS and the DOC of the harassment and assault and battery and they failed to report the incidents and/or complaints or investigate her complaints against Masi, Washington and others. Compl 27

The District and DOC showed a deliberate indifference and dismissive attitude concerning Simms' harassment and assault and battery complaints concerning Masi, Washington and others. Compl 28

The defendants had a duty to provide Simms and other females employees, contractors and workers at DOC facilities with a safe working environment free of sexual overtures, overtones, touching, and a hostile work environment. These defendants also had a duty to monitor its employees and to assure a safe working environment but failed to do so. Compl 29

Simms characterizes Officer Masi's conduct as becoming more aggressive towards her and other female employees, which culminated to Masi's fondling her in late December 2003. He accosted Ms. Simms as she was attempting to enter the ladies room and fondled, touched and/or caressed her chest and arm and then grabbed her arm bringing her body close towards him. Ex. 1 pages   Simms became so upset that she reported this first touching incident to the DOC Warden and CCHPS and nothing was done after this first incident, although the Warden said he would speak to Masi.

Then approximately a week later Masi fondles, touches and/or caresses Simms again over her chest and/or arm again and then grabbing her and bringing her close to his body. Simms again complained to DOC and CCHPS. It was not until this second incident was reported that the DOC Warden advised Simms that the incidents had to be reported to the Special Investigator. DOC and CCHPS took no action and/or failed to correct the problem in response to Simms complaints. Compl ¶¶30, 21, 34, 36-39 and 41-48

Plaintiff also during the period from 1997 until September 30, 2006 was subjected to relentless and blatant sexual harassment which she endured on a daily basis by other DOC male employees. Plaintiff was propositioned, solicited and sought after by male guards and male inmates, at the direction and/or with the knowledge of the DOC correctional officers and management. Compl ¶32

Furthermore, plaintiff alleges in her complaint that while she worked at the DOC, there existed a culture in the D.C. Jail where women were preyed upon by Correctional Officers, jail personnel and male inmates where sex, drugs, alcohol and other contraband were exchanged for perks and favors. Compl ¶44-51

Plaintiff specifically alleges that there exists a sexually charged culture that thrived at the D.C. Jail because the Director, Warden, Managers and Correctional Officers themselves were either engaging in sexual relationships with other employees and/or contractors. The few who were not so involved were too fearful of being labeled a snitch and/or violating the code of silence which existed in the Correctional Officer "fraternity." Specifically, the Warden who was married for a period from 1999 until

approximately 2003 had an openly and public sexual relationship with Correctional Officer Masi. Compl ¶23

According to the allegations in Simms amended complaint she tried to avoid the elicited and illegal behavior of Masi and other male employees and as a result her entire existence was threatened. She discovered that the Correctional System itself condoned and encouraged the conditions at the DOC and intimidated female workers and made them fear for their life or jobs if they complained. Plaintiff suffered with emotional stress and strain because she would not acquiesce to the sexual demands of male workers and because DCDOC and CCHPS refused to correct the sexual hostile environment, Ms. Simms was subjected to harsher treatment and more extreme mental pressure and emotional distress. Compl¶35

More importantly, after Simms filed her discrimination complaints and the OSI rendered a favorable decision for Simms in late 2004 and/or early 2005, she was retaliated against by the District of Columbia and the Department of Corrections. In approximately two to four months after the OSI's decision in favor of Simms, in early 2005 the Defendants, the District of Columbia and DOC told CCHPS and Simms that it was terminating CCHPS' contract and it would not allow CCHPS to bid on the up coming medical and/or mental health contract to provide services to the DC government. Prior to this decision by the DC Government and DOC, CCHPS was according to these same Defendants doing a satisfactory job. This action by defendants the District of Columbia and DOC directly impacted on Simms' livelihood in that she no longer had a job or salary of $100,000. Compl ¶ 35a

Plaintiff further alleges in her amended complaint that all of the above activities she has mentioned thus far  were covered-up at all levels.  The sexually explicit and harassing conduct by DOC, Masi and other males towards Simms and other females at the jail were ignored by the DC government, DOC's Director, Warden, managers and CCHPS at all levels and  first line supervisors. These same defendants and individuals who had the ultimate power and authority at DOC concealed sexually impermissible conduct in the workplace by Correctional Officials and employees by burying it under the rug. Compl ¶36

At the time of  Defendants' the District of Columbia and DOC's male employees' disgusting treatment  and exploitation of  Simms and other female workers, employees in the D.C. Jail, the Department of Corrections was still under a Federal Court Order to eliminate the sexual misconduct that is the very subject of this lawsuit. Notwithstanding that mandate, it is a fact that the Director, warden, and number of Correctional managers and Officers were negligent in the performance of their duties; that Correctional officers engaged in sexual misconduct with female employees and continued to condone males sexually harassing Simms and other females at the DCDOC, all without fear of disclosure or if disclosure occurred, fear of adverse consequences. Compl¶37

The Office of Special Inspector ("OSI") in completing its investigation in 2005 found approximately 15 other females who were also being sexually harassed by Masi and other males at the DCDOC during the same time period identified by Simms. The OSI found the DCDOC negligent in its duty to protect the females working at the DCDOC from sexual harassment and free from a hostile work environment.  Compl¶38

Plaintiff was subjected to sexual harassment and sexual discrimination that was both blatant and outrageous. As a result of the above described conduct of the DC

Government, the DOC Director, Warden, mid level managers, guards, CCHPS and civilians

employed at the D.C. Jail, Plaintiff has and still suffers with extreme humiliation, mental

anguish and embarrassment. Moreover, the injuries she suffered at the jail were condoned by

the District of Columbia Government and DOC's administrators, officers and managers

CCHPS who knew of what was taking place and refused to prevent or stop the indecent and

degrading and treatment she was being subject to.

Defendants showed no fear of any consequences as to their conduct whish is

supported by the indifference of the Director, Warden and other Officials of the DOC who

took no action to discover or eradicate the problem at the D.C. Jail even though the District,

CCHPS, DCDOC and their other officials had a direct duty to assure that the women

workers, employees and contractors in the D.C. Jail were not subjected to the hostile

environment in which defendants fostered and nurtured to exist. Compl  ¶ 40

At all times relevant to this action the District of Columbia and Margaret Moore

had in effect and were responsible for the policies and procedures followed by the Department

of Corrections in the actions taken relating to the plaintiff, and were further responsible for the

hiring, training, supervision, monitoring and disciplining of the various officers and DOC

personnel involved. Compl¶ 41

Although the OSI investigator in late 2004 and early 2005 found probable cause

against Officer Masi, following the investigator's findings against Masi for sexual

harassment, MASI continued to work at the DOC's Detention Facility until

approximately February 2005. Simms was subjected to retaliation by Masi and his

fellow correctional officers. Even after Masi returned to work in or about august of

2005, after his return to the DOC he continued to intimidate and harass Simms until she

was terminated by the Defendants the DC Government and DOC on September 30, 2006. Compl¶ 42

Specifically, MASI was also allowed to continue to work and enter the correction facility up until approximately February 2005. Masi was suspended for approximately six (6) months and returned to DCDC in or about August of 2005. Up and until February 2005, the defendants continued to allow MASI to work and to be assigned to the mental health post where Simms worked-well after filing her complaint. Compl¶43

MASI and/or other Correctional Officers would refuse to call the inmates that required comprehensive mental and medical assessments to Simms' work area thus jeopardizing her job and the safety of the employees and inmates.  Under the contract with the DC Government CCHPS was required within 24 hours to assess all inmates for mental health services. When MASI refused to bring inmates for mental health assessment his refusal jeopardized not only my safety but also the inmate population's safety, the medical and mental health staff, as well as jeopardizing the well being of the patients' requiring these services. Not only did his refusal and or/delay to bring inmates for mental health assessments delay inmates receiving treatment, he also placed the DOC population and employees at risk and jeopardized the CCHPS' contract with the DC Government. Compl¶ 44

In retaliation after Simms engaged in protected activities, when she entered the jail housing units where the inmates lived, Officer Masi from 2004-2005 delayed opening the doors for Ms. Simms in order that she might exit the housing units or he

15

would substantially delay opening the doors to the housing units, thus subjecting Ms. Simms to being in the presence of inmates longer than necessary thus purposely jeopardizing Simms safety and placing her in fear of her life.  When Ms. Simms complained to defendants about these incidents to the respondents her complaints went unanswered, ignored and/or resolved in an inadequate manner. Compl¶45

For example, in late 2004, Ms Simms reported to Warden Smith that Correctional Officer MASI was retaliating against her for having filed a sexual harassment complaint against him. She complained to Warden Smith about MASI being assigned to her work in my area and his repeated refusal to bring inmates to her work area to be assessed for mental and medical health services. Warden Smith's response to complaint was non-responsive and negligent at the very least. Warden Smith response to Simms' Retaliation Complaint was that "Anyone who works for DCDOC can enter the building and be assigned to work anywhere." Warden Smith's inaction and refusal to reassign MASI to another work area jeopardized the mental health and physical safety of the inmates, employees including Simms and jeopardized Simms' work and employer's contract. Compl¶ 46

Through the course of conduct described above, the defendants the District of Columbia and DOC terminated and/or interfered with her and/or CCHPS' ability to make any future contracts with the DC Government in 2006 when it refused to allow CCHPS to bid on the medical and/or mental health contract. The DC Government and DOC conspired and secretly hired another company without allowing CCHPS to bid on the current for

medical and/or mental health services. Simms lost her employment with the defendants as of September 30, 2006 in retaliation for having complained and being subjected to discrimination in the workplace. Compl ¶ 47

Masi's daily harassment of Simms during Simms tenure at DOC to include but not limited to his threatening and intimidating starring of her, his constant sexual advances even after he had a stay away order to stay at least 300 feet from Simms continued until she left on September 30, 2006. His conduct and actions caused LaVerna Simms extreme emotional distress, great anxiety, and fear. Masi and other male employees actions were un-welcomed by Simms and was humiliating. Comp¶ 48

At all times relevant to this action, Masi acted within the scope of his employment in his capacity as agent of the Department of Corrections and the District of Columbia. Compl ¶ 49

Defendants had notice and knowledge of prior instances and complaints from other females concerning similar conduct by Harcourt Masi and other Department male employees toward female employees of the Department of Corrections, both prior and subsequent to the incidents described in this complaint. Defendant failed to take adequate remedial action to prevent the reoccurrence of such conduct and its resulting harm to Simms. Comp1 ¶50

Defendants the District of Columbia, DOC and CCHPS, individually and through their agents, failed to comply with polices and procedures and this Court Consent Decree that existed and was in place at the time. The Defendants failed to provide the proper standard of care for female workers, employees and contractors at its DOC facilities. Defendants had a duty to provide Simms with a safe work environment that was not

discriminatory, or pervasively hostile towards women because of their sex. Defendants were required to promptly address and adequately resolve Simms' complaints of sexual harassment and they all ignored and failed miserably of carrying out these duties and responsibilities. Compl 51

Throughout Simms Complaint she has alleged that the defendants violated 42 U.S.C. Section 1983 as a municipality as their actions violated her Constitutional Rights and rights under the Federal law and that the defendants' custom and/or policy caused the violations that she has alleged in her Second Amended Complaint and she was injured and damaged by those same violations..

## III.   LEGAL STANDARDS

### a.   Legal Standard For 12(b)(6) Motion

The defendants have complained about the alleged failure of plaintiff to allege sufficient facts upon which constitute claims or upon which any relief can be granted. However, the standards by which courts consider a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) are well-documented and established.

This circuit, the Supreme Court of the United States and other Courts in recent discrimination cases have plainly laid to rest what a Plaintiff must do in pleading their employment discrimination case. Specifically, this Court described with great particularity the legal sufficiency of a complaint and the governing law.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. "such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the

> disputed facts and issues. It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint or 'plead law or match facts to every element of a legal theory.

Runkle v. Gonzales, 391 F. Supp. 2d 210, 220 (D.D.C. 2005) (Citations and internal punctuation omitted.)   As utilized in employment discrimination cases, it is also well-settled that a Plaintiff does not need to plead a formal prima facie case. Swiekiewicz  v. Sorema N.A., 534 U.S. 506, 515 (2002) (involving allegedly discriminatory demotion and termination); Sparrow v. United Air Lines, Inc., 216 F.3d 1111 (D.C. Cir. 2000) (involving allegedly discriminatory failure to promote and termination). Yet because "[T]he Supreme Court's holding in Swierkiewicz v. Sorema did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim," Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002), quoted in Major v. Plumbers Local Union No. 5, 370 F. Supp.2d 197, 201 (D.D.C. 2004); the Court may explore whether or not Plaintiff has alleged any set of facts that could ever state a violation of Title VII.

Moreover, a complaint should never be dismissed except "after accepting all well-plead allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears with a certainty that plaintiff cannot under any circumstance prove any set of facts supporting his/or her claim and entitling him or her to relief. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005) The Court must view the facts as alleged in the light most favorable to the plaintiff, although it need not accept legal conclusions drawn from the facts or "accept as true unwarranted inferences, unreasonable conclusions, or arguments". Eastern Shore Markets, Inc. v. J.D. Associates, Ltd. Partnership, 213 F.3d 175 (4th Cir. 2000). However,

a court may not grant a 12 (b)(6) motion based on doubt of the factual allegations listed in the complaint. <u>Wright v. MetroHealth Medical Center</u>, 58 F.3d 1130, 1138 (6th Cir.).

More importantly because this is a employment discrimination case this court must take extra measures to ensure that wrongs that have been alleged are not ceremoniously dismissed, Specifically, one sister court has held that "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. <u>Harrison v. United States Postal Serv</u>., 840 F.2d 1149 (4th Cir. 1988) (internal quotation marks omitted).

The federal rules are replete with provisions that provide a prevailing view against rejecting pleadings for allegedly failing to state a claim, although plaintiff avers that no such situation appears in her case. Rule 15(a) protects litigants who have tried and been unsuccessful in stating a claim. Pending before the Court is plaintiff's amended complaint.  This liberal rule supports the federal policy that leave to amend shall be freely given when justice so requires and that the law favors resolving cases on their merits instead of disposing of them on technicalities. <u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S.Ct. 99 (1957. This Circuit as well as other federal Circuits have held that because Simms is the non-moving party it must treat her allegations in her Second Amended Complaint-including those of mixed questions of law and fact--as true and draw all reasonable inferences in Simms' favor. Although this Court need not, accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. In deciding a 12(b)(6) motion, the court may as in this case consider

20

only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint.[3]

### b.    Legal Standard for Motion For Summary Judgment Rule 56

Summary Judgment pursuant to Rule 56 ( c ) is appropriate only when the pleadings, depositions, answers to interrogatories, production of documents, request for admissions, affidavits show no genuine issue of any material fact and that the movant is entitled to a judgment as a matter of law. The defendants in this matter have filed a premature motion for summary judgment. Premature motions for summary judgment are adequately dealt with under Rule 56 (e) and (f), which allows a summary judgment motion to be denied if the nonmoving party has not had an opportunity to make full discovery and in this case **no discovery has been had**. Ex. 1, Affidavit of Counsel  Rule 56 (e) and (f) is an alternative response in opposition to a motion for summary judgment and safeguards against the premature granting of a motion for summary judgment. Shavrnoch v. Clark Oil & Ref. Corp., 726 F.2d 291, 294 (6th Cir. 1984) and Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832-33 (10th Cir. 1986). [4]

In this case Plaintiff has not been afforded the opportunity to take depositions or any other discovery which permits her to challenge the witnesses, evidence , which

---

[3]    Because no discovery has been allowed by Plaintiff on any issues raised by the defendants, Simms continues to allege that she cannot fully and completely defendant against the Defendants motion because she has not been allowed to do discovery as permitted by the Federal Rules.  See Rule 56 (e) and (f) Moreover,  Simms disputes the defendants claims that it did not receive notice pursuant to 12-309, that she was not a DOC employee as well as all other claims made by the defendants in their respective motion.

[4]    Simms moves this court to Deny the Defendants motion and give her the opportunity to conduct discovery in the above captioned matter and every issue and fact is in dispute and to prove her claims  and defendant  against any future summary judgment motions she needs full and complete discovery.

would provide a more adequate record of the events that encompasses Ms. Simms'

claims.

## III.    ARGUMENT

### A.    PLAINTIFF SIMMS HAS A TITLE VII CLAIM AGAINST THE DISTRICT AS HER WORK WAS MANAGED AND CONTROLLED AND SUPERVISED BY DEFENDANTS' SUPERVIORS AND ATTORNEYS.

Plaintiff LaVerna Simms can sue the defendants the District and DOC as she was

an employee of the Defendants, the District and the DOC because she defendants had

ultimate and final control over her, her work and her work performance and over CCHPS.

Simms makes the claim that she was a joint employee of both CCHPS and the defendants

the District and the DOC.[5] The test for determining whether plaintiff was an employee of

the defendants  should not be determined solely under <u>Spirdies v. Reinhardt,</u> 613 F.2d

826, 831 (D.C. Cir. 1979) case as cited by the defendants in their motion. Instead the test

for joint employee has been identified under <u>Coles v. Dept of the</u> <u>Army</u>, 471 F. Supp. 2d

46; 2007 U. S. Dist Lexis 1803 (D.C. Circuit 2007).

Contrary to the Defendants allegations in its brief on page 8, Simms was <u>not</u> an

Independent Contractor of CCHPS, she was an employee of CCHPS.  See Ex. 2Affidavit

Simms   Simms was a member of CCHPS Board of Directors. She was also an officer of

CCHPS. Simms eventually became the Secretary and Treasurer of CCHPS and reviewed

all or most of CCHPS' documents. She was aware, observed and had first hand

experience and knowledge as to how CCHPS and DOC operated. See Ex. E Affidavit of

Simms According to Simms she and CCHPS' employees were also DOC's employees

and the defendants had total and complete control and final decision making power as to

---

[5] Simms was an employee of CCHPS and not a contractor of CCHPS. She was paid a salary with employee benefits by CCHPS.

who CCHPS hired, how CCHPS assessed the mental health and treatment of inmates and the assignment of housing of inmates, housing, and that DOC had complete and ultimate control over what CCHPS did, how they were trained, performed its work, and had a computer systems that were integrated with CCHPS' computer system. See Ex. 2Affidavit Simms.

### A.    Ms. Simms Employment Status-Joint Employee of DOC and CCHPS.

Defendants claim that this court lacks jurisdiction over Simms' claims because her status was not that of an employee of the DOC. However Simms status is in dispute. See Ex. 2Simms alleges that she was both a "joint Employee of both CCHPS and the DOC. n However, this Court in Coles v. Dept of the Army, 417 F. Supp.2d 46; 2007 U.S. Dist. LEXIS 1803 (D.C. Cir. 2007) has held that when the issue is whether an individual is the employee of both the agency and another employer, than the standard applied would be the joint employment test. Although, this Circuit has also applied the 11-factor test, in Spirides v. Reinhardt, 198 U.S. App. D.C. 93, 613 F.2d 826 (D.C. Cir. 1979),   when determining whether an individual is either an employee or a contractor. Simms does not just claim "joint employment", she also claims in the alternative that if she was not an employee of both CCHPS and she was a medical health contractor she would still as a medical health contractor be protected under Section 1983 and the defendants would not be able to escape liability.

In the Coles case, this Court determined when the issue is one of "joint employment' Spirides does not control but the test described in NLRB v. Browning-Ferris Industries, Inc., 691 F.2d 1117, 1123 (3d Cir. 1982) does.

is the applicable test for determining whether a plaintiff is a [**12] joint employee. See Redd, 232 F.3d at 938 (noting that "[d]espite the parties' agreement, we doubt whether the Spirides test is suited to this case" and citing *Browning-Ferris* as a "fairly standard formulation" of the joint-employment test).

In Browning-Ferris, the Third Circuit, relied upon the Supreme Court's decision in

Boire v. Greyhound Corp., 376 U.S. 473, 84 S. Ct. 894, 11 L. Ed. 2d 849 (1964). The

Court in Browning-Ferris ruled that:

> …two or more businesses are "joint employers" when "it can be shown that they share or co-determine those matters governing essential terms and conditions of employment . . . ." 691 F.2d at 1124. Whether one of the alleged joint employers "has retained for itself sufficient control [over] the terms and conditions of employment of the employees who are employed by the other [alleged joint] employer . . . 'is essentially a factual issue'" and does not turn on whether there is an independent-contractor relationship between them. *Id.* at 1123 (quoting *Boire,* 376 U.S. at 481).

### B.    DOC Controlled and Shared Decisions With CCHPS

CCHPS employees not only provided medical treatment of the DC inmates, they made an assessment as to their medical needs, they diagnosed their mental state of mind and needs, they assessed where inmates would be housed. Often times after Simms and other CCHPS assessed inmates' mental condition and treatment DOC personnel such as Lesansky and the District's attorney's would call Simms and change her diagnosis, treatment plan and housing assessment. See Ex. 2 Simms had no control or final decision making over the diagnosis, treatment or housing over DC's inmates but the defendants retained that control and many other controls unto itself. See Ex. 2

DOC employees supervised CCHPS personnel. See Ex. 2CCHPS employees' skills were not separate and distinct from the skills involved in the work of DOC

employees, who were also involved in the operation and programming and operation of the Health Services Administration for the DOC. See Ex. 2

Although CCHPS technically paid Simms and all other CCHPS employees it was only after being paid by the DOC. After Simms complained again of sexual harassment and/or retaliation in 2004 and 2005, the defendants refused to allow CCHPS, Simms' company to bid on DOC's current existing multi-million contract as required by the District law. Instead the defendants shut CCHPS down by foreclosing and preventing it from being allowed to bid on the current existing mental health services contract and from obtaining any more District contracts. See Ex. 2 As a result of Defendants' retaliatory actions Simms lost her job with all three defendants and CCHPS was forced to shut down and close its operations. The defendants refused to allow CCHPS to bid on the existing mental health contracts and gave the existing contract to a new company which had little to no experience in the mental health services filed. Ex. 2

**C.     Medical Care and Services Contractors are Treated as Employees**

Nonetheless pursuant to 42 USC Section 1983 Section 968 contractors are treated as employees especially if they are employees providing inmates medical care and services. Farrow v. West , 2003, 320 F.3d 1235, C.A. (Ala.) Simms was clearly providing medical services to the inmates thus she bring the above claims.

Because there is a material dispute as to whether or not Simms was a District and DOC employee and there has been no discovery in the matter, the Defendant's Motion to Dismiss and/or in the alternative motion for summary judgment as to Simms' Title VII claim and all other claims should be denied.

### B.  PLAINTIFF'S TITLE VII CLAIM IS NOT LIMITED TO THE TIME PERIOD AND ALLEGATIONS OF DISCRIMINATION.

Simms has filed to EEOC charges one in 2005 and one in 2006. A copy of Simms August 24, 2005 Charges is attached to her Affidavit. See Ex. 2, Attachment  Although Simms did not obtain a Right To Sue Letter on her August 24, 2005 charge, she was not prevented from filing suit. Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091, 1093, 29 FEP 1673, 1674-75 (4th Cir. 1982).

Simms is not precluded now from litigating all of her charges in both her 2005 and 2006 EEOC charges.  Simms 2005 charges although never formalized by the EEOC in their Form 5, her 2005 form was sufficient to constitute a Charge under the EEOC's definition of a Charge. Federal Express Corporation v. Paul Holowecki et. al., 552 U.S. _____ (2008)  Plaintiff alleged numerous charges in both her 2005 and 2006 Charges and she should be allowed to pursue them. The general rule and standard is that a Plaintiff is allowed to litigate those claims and all allegations that are not only contained in the charge but are reasonably expected to grow out of the charge of discrimination or within the scope of the EEOC investigation. Wherefore, Simms is permitted to pursue all claims thus far presented in her case because either her claims were specifically alleged in her 2005 and 2006 EEOC charges or they were reasonably expected to grow out of the charge of discrimination. Sanchez v. Standard Brand, Inc., 431 F.2d 455, 466, 2FEP 788 (5th Cir. 1970).

### C  ALL CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT SHOULD NOT BE DISMISSED BECAUSE THE PLAINTIFF HAS NOT FAILED TO STATE A CLAIM FOR MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983, FIFTH AND EIGHTH AMENDMENTS. (COUNTS 1, II, III, IV)

Despite Defendants contentions and argument in their brief, Plaintiff Simms has clearly

alleged sufficient facts that the District of Columbia had a pattern and policy and

"standard operating procedure" condoning, participating and ignoring sexual harassment

and discrimination in the workplace at the DOC.[6] Compl ¶ ¶ 11-14  She has sufficiently

alleged facts to sustain and meet her burden as to Counts I, II, III and IV.

> 11.     As is more fully set forth in the paragraphs which follow,
> Simms and other female contractors and employees are routinely
> subjected to a pattern and practice of sexual harassment and hostile work
> environment at the DCDOC. Together these practices reflect that
> discrimination is the standard operating procedure—the regular rather than
> the unusual practice at the District of Columbia Department of
> Corrections.

> 12.     Supervisors and co-workers throughout the DCDOC
> engage in offensive conduct of a sexual nature, including the expression of
> sexual remarks about women, unwelcome physical contact such as
> kissing, pinching and grabbing, hugging, physical touching and repeated
> pressure to engage in sexual relations with the male employees. This
> conduct is severe, pervasive and unwelcome, altering the terms and
> conditions of employment for all women at the District of Columbia
> Department of Corrections.

> 13.     Supervisors and co-workers throughout the DCDOC
> engage in offensive conduct of a sexual nature, including the expression of
> sexual remarks about women, unwelcome physical contact such as
> kissing, pinching and grabbing, hugging, physical touching and repeated
> pressure to engage in sexual relations with the male employees. This
> conduct is severe, pervasive and unwelcome, altering the terms and
> conditions of employment for all women at the District of Columbia
> Department of Corrections.

> 14.     As early as 1979 this court found that sexual harassment
> was the "standard operating procedure" at the District of Columbia
> Department of Corrections (DCDOC). On Appeal the D.C. Circuit ruled
> that being subjected to unwelcome sexual advances caused harm remedial
> under Title VII Bundy v. Jackson, 641 F.2d 934 (D.C. Cir. 1981). The
> Court of Appeals directed that, on remand, this court enter an injunction

---

[6] At Harcourt Masi's hearing the defendants moved the court for summary disposition
and stated that there was no material dispute in the facts that Masi had sexually harassed.
Simms and other women at the jail. Ex. 2, page 27.

> "enjoining the Director of DCDOC and all employees and agents of the department from: causing, encouraging, condoning, or permitting the practice of sexual harassment of female employees by male supervisors and employees within the Department …."

Simms has clearly alleged that the defendants have a policy, pattern and practice of condoning and participating in sexual harassment in the workplace and ignoring the complaints of female workers who complain about sexual harassment.  Compl ¶1-83  Simms also alleged that the defendants have a policy, pattern and practice of retaliating against those females who complain of sexual harassment and a sexually hostile work environment in the workplace. Compl¶1-83   Thus, defendants' argument that Simms has not alleged sufficient facts to support her allegations that the defendants have a policy, pattern and practice of condoning and participating in sexual harassment in the workplace is incorrect. Compl¶¶ 23, 47

Most importantly, the defendants are in violation of its own laws and two of this Court's Orders and not "internal protocol" as alleged by defendants. Specifically, the defendants are in violation of the following orders and laws: See Plaintiff's Ex. 2, DOC Program Statement Dated December 22, 2003, page 2 (only partial program from pages 1-9) filed with her response to Defs. First Motion To Dismiss

    a.    Order of the United States District Court in civil Action No. 93-2420, dated 6/28/99

    b.    31 DCR 56, "Equal Employment Opportunity Rules Governing Complaints of Discrimination of Columbia Government, "dated 1/6/84.

    c.    Mayor's Order 79-89, "Sexual Harassment", and dated 5/24/79: and the Order of the United States District Court in Civil Action No. 77-1359.

      d.     DC Human Rights Act of 1977, as amended, DC Code section 2.1401.01 et seq., (Act).

      Thus, defendants allegations that Simms' are allegedly are insufficient to sustain her claims is in of itself a feeble argument because the record is clear that her claims are fully and completely substantiated and convincing and she rests her claims on the DC's own laws, Mayor's Orders, DOC's policies, the D.C. Human Rights Act of 1977 and the federal laws.  Simms makes no claims that the defendants "deviated from internal protocol" and defendants had no internal protocol. Clearly stated and or it can be inferred that based on Simms' allegations in her Second Amended Complaint that defendants openly and willingly, defied this Court's Orders and they substantially breached the Consent Agreement in the Bessey Neal case and there is nothing "tenuous" about either. At a minimum the defendants should be held in outright contempt of the two United States District Court Orders that are still in place against defendants, the latest was dated in 2002.

      Simms testified at the OEA hearing that during the years of 1997-1999 she complained to both her administrator and her peers about Masi sexually harassing her. See Plaintiff's Ex.12, to Simms response to Defs. First Motion To Dismiss, pages 76-77 During the period of 1997-1999 Simms was an employee of the defendants and she worked for the trustee. Simms also admitted that she had follow-up conversations with her administrator who told Simms she had spoken to Masi about his behavior, but Mais' sexually harassing behavior never stopped. See Ex.12, to Simms' response to Defs. First Motion To Dismiss,  page 78

Specifically, Simms for approximately three years reported sexual harassment to CCHPS, it was not until 2003, when Correctional Officer Harcourt Masi sexually battered and assaulted Simms twice by fondling her arm, shoulder and chest that she by-passed CHHPS who had never responded to their complaints and complained directly to the DOC Warden .   Simms testified at the OEA hearing in 2007, that in 2003 on an occasion she was attempting to enter the ladies bathroom Masi saw her, stood up from his seat and stopped her from entering the bathroom by fondling her arm, shoulder and chest. According to Simms she "lost it.". She began yelling at Masi and told him emphatically to never touch her again. See Ex.1, to Simms' response to Defs. First Motion To Dismiss, page 53,  Simms testified that when Masi touched her sexually and inappropriately , she had had it and that it was the last draw. See Ex.1 to Simms' response to Defs. First Motion To Dismiss, Page 54.  Simms immediately complained to DOC Warden Larry Corbett. See Ex.1, to Simms' response to Defs. First Motion To Dismiss, page 54

When Simms spoke to Warden Corbett the first time about being battered by Masi, DOC Warden Corbett assured in 2003 he was going to take care of the problem and talk to Officer Masi. See Ex.1, to Simms response to Defs. First Motion To Dismiss, page 54 Corbett told Simms not to file a complaint initially and to wait until he talked to Masi. See Ex.1, to Simms' response to Defs. First Motion To Dismiss, page 54 A week went by and Masi sexually fondled Simms again. See Ex.1, to Simms' response to Defs. First Motion To Dismiss, pages 54 and 55.  Warden Corbett told Simms who to file a complaint with only after the second incident with Masi. See Ex.1, to Simms response to Defs. First Motion To Dismiss, page 55 Simms learned about the Special Inspector(SI) for the first time in late 2003 and/or early 2004. See Ex.1, to Simms' response to Defs.

First Motion To Dismiss, page 55 Simms spoke to Carolyn Lerner the SI and the investigator Janet Goldstein in 2003-2004. Ex. 1, page 56.

Nonetheless, Simms can bring her constitutional and due process claims  under the theory of "state endangerment". <u>Butera v. District of Columbia</u>, 235 F.3d 637, 651 (D.C. Cir. 2001) In the <u>Butera</u> case the Court held that "an individual can assert a substantive due process right protection by the District of Columbia from third party violence when District of Columbia officials affirmatively act to increase or create danger that ultimately results in the persons' harm," Simms in her complaint alleged that the defendants' own officials including a female warden who was later promoted to assistant director engaged in, condoned and participated in the sexual harassment at the DOC and nothing was done about when females complained.  Compl ¶ 23, 34   In other words defendants' own officials caused the sexual harassment and placed Simms and other women in danger, thus she can bring her constitutional and . Compl ¶ 34

Additionally, Simms never alleged, testified or stated in her complained that the defendants promptly investigated her complaints in 2003. Defendants have mischaracterized Simms complaint. To the contrary Simms alleged that it was not until she was fondled the second time that Warden Corbett mentioned to Simms here to complain to the SI. Corbett failed to do anything the first time it was reported to him. Compl ¶

Moreover, there were more than sufficient facts that were alleged by Simms and sufficient inferences can be made that the defendants clearly had a policy and practice to allow sexual harassment to go on in the workplace at DOC, that is was negligent in training and supervising its employees and that Simms can bring constitutional and 42

U.S.C. § 1983 claims. Therefore this Court should not dismiss any of Simms'

Constitutional claims.

**D.      PLAINTIFF SIMMS DID COMPLY WITH D.C. CODE § 12-309.**

> **Simms Cleary Complied with D.C. Code Sec 12-309**
> **Plaintiff Complied with the D.C. Code 12-309. Defendants Have**
> **Provided Perjured Testimony and Affidavits Before This Court.**

Defendants have also committed perjury before this court my making false claims

before this court that allegedly the D.C. government had no notice of Simms' District of

Columbia claims. Simms is not required to provide notice of her federal claims.

However, the record is replete with evidence that at all times relevant the D.C.

government had proper notice under D.C. Code 12-309 of her state and federal claims.

See Exs.1-5 Attached to Plaintiff's Opposition To Defendants Motion To Set Aside

Order of Default.

Specifically, the record shows the following:

On March 18, 2005, Mayor Anthony Williams was served with Notice of Claims

in a letter from Counsel and the 500 page binder of the OSI's investigation. See Ex. 1 See

Attached to Plaintiff's Opposition To Defendants Motion To Set Aside Order of Default.

The Court should note that documents sent  weighed over 5.0 lbs. The Fed Ex  receipt

shows that a Ms. T. Braxton in the Mayor's Office signed for the notice. See Ex. 1.

Attached to Plaintiff's Opposition To Defendants Motion To Set Aside Order of Default.

Braxton signed a statement showing that she had authority to accept mail for the mayor.

On May 26, 2005, Robert J. Spagnoletti, the Attorney General for the District of

Columbia was served with a second notice of claims. See Ex. 2 Attached to Plaintiff's

Opposition To Defendants Motion To Set Aside Order of Default.  In the letter to

Spagnoletti, the undersigned counsel identifies the log in number for the March 17, 2005

notice sent to the Mayor, namely IQ#439127.

On August 9, 2006, the defendants received notice of Simms' continuing claims

against them. See Ex. 2Attached to Plaintiff's Opposition To Defendants Motion To Set

Aside Order of Default. The D.C. government signed for the third Notice of Claims letter

which was sent by certified mail.

On August 9, 2006, the undersigned sent the same letter and notice to the D.C.

government that she sent on August 8, 2006. the D.C. government's Office of Risk

Management signed for that letter on August 10, 2006. See Ex. 4 Attached to Plaintiff's

Opposition To Defendants Motion To Set Aside Order of Default.

On September 25, 2006, the EEO Officer Mr. Staten fro the DOC received a letter

from the undersigned once again complaining of Correctional Officer Harcourt Masi

intimidating and threatening Ms. Simms. Ex. 5 to Plaintiff's first Opposition to

Defendants Motion To Dismiss  The letter also evidences that the D.C. government and

the DOC had subpoenaed Ms. Simms in the OEA appeal that Masi had taken against the

government. Ms. Simms was the defendants' key witness.  Simms did not voluntarily

testify in that matter, which was heard in or about February of 2007.

**E.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE APPLICABLE
       STATUE OT LIMITATIONS.**

Contrary to defendants assertions and argument, Simms' 42 U.S.C. § 1983 and

claims of violations of the Fifth Amendment of the U.S. Constitution and common law

claims are not barred by any statue of limitations. Simms has repeatedly alleged

throughout her complaint that she was discriminated against up and until she was fired

from the DOC on September 30, 2006. Simms claims she was an employee of Defendants. Simms' was stalked during the period of 2006 by Masi up and until the very day she left. Compl ¶ 27  Although there was a Cease and Desist Order issued against Masi to stay away from Simms he refused to do so. Compl ¶ 20  The Undersigned Counsel had to write a letter to the defendants after Simms once again reported Masi's conduct to the defendants. Her complaints were ignored and only one the undersigned Counsel wrote a letter did the defendants belatedly attempted to do something about it. Just as important Simms was denied the right to contract with the defendants and she was an employee of the defendants beyond 2001, in fact she was considered a contract employee. She was considered as a hybrid meaning both a contractor and employee. The fact that Simms was working for the Receiver when the DC government was in receivership from 1997 until 2001 and again when she became a contract employee in 2001 does not bar her from bringing her claims under 42 U.S.C. Sec 1983 or Title VII.

Particularly,  Simms was at all times relevant covered and protected under 42 USC Section 1983 and Title VII against the defendants from 1997 until the present. Simms worked for the Receiver from 1997 until 2001. She was not part of the Bessey Neal Class Action and although she complained to her Administrator from 1997 until 2001 nothing was done about her sexual harassment complaints. She was never advised of where and when to complain prior to making her final complaint against Masi in late 2003. Simms only learned of a complaint procedure of the defendants after she had complained to the defendants Warden twice about Masi fondling and touching her sexually and in an inappropriate manner.

Nonetheless pursuant to 42 USC Section 1983 Section 968 contractors are treated as employees especially if they are employees providing inmates medical care and services. Farrow v. West, 320 F.3d 1235, C.A. (Ala. 2003 ) Simms was clearly providing medical services to the inmates thus she bring the above claims.

**F.    PLAINTIFF'S COMMON LAW CLAIMS AGAINST THE DISTRICT SHOULD NOT BE DISMISSED FOR FAILURE TO STATE A CLAIM AND SUBJECT MATTER JURISDICTION.**

If this Court finds that Simms had both federal and/or Constitutional claims against the Defendants, then it may exercise supplemental jurisdiction over the common law claims alleged by Simms. Moreover, if this court finds that Simms has no federal or constitutional claims, it should not dismiss Simms' state law common law claims because this court still has jurisdiction over any claim brought between parties that are diverse and the amount in controversy is over $75,000. See 28 U.S.C. § 1332   This Court has supplemental jurisdiction over District of Columbia law claims pursuant to 28 USC § 1367. This Court can also exercise supplemental jurisdiction over the Plaintiff Simms' state law claims arising under D.C. Code Ann. §§ 32-1101 (6), 32-1103 (a)(1)and (2).

Simms avers that this Court still has jurisdiction over her common law state law claims pursuant to The United States Constitution, Article III, § 2 which gives the U.S. Congress the power to permit federal courts to hear diversity cases through legislation authorizing such jurisdiction. The provision was included because the framers of the Constitution were concerned that, where a case was brought in one state involving parties from both that state and another, the state court might be biased towards the party from its own state. Congress first exercised that power and granted federal trial district courts diversity jurisdiction in the Judiciary Act of 1789. Diversity jurisdiction is presently

codified at 28 U.S.C. § 1332.  Thus this Court should not dismiss any state common law claims.

**G.    THE PLAINTIFF DID NOT SUE THE DEPARTMENT OF CORRECTIONS (DOC). PLAINTIFF SUED THE DIRECTOR OF DOC. SINCE SIMMS DID NOT SUE THE DOC THE FACT THAT THE DOC IS *NON SUI JURIS* IS IRRELEVANT AND IMATERIAL**

**The DC Law Allows Suit To Be Brought Against An Official In His/Her Official Capacity**

It is correct that the Department of Corrections as a government agency cannot be sued in its own right. <u>Hinton v. Metro, Police Dep</u>t, 726 F. Supp. 875, 875 (D.D.C. 1989) ( court held that a suit may not be brought only against the police department)  In <u>Robertson v. D.C. Bd. Of Higher Ed</u>., 359 A.2d 28, 31 n4 (D.C. 1976) the court held that the board members could not be sued.

However, in this case before the court Plaintiff Simms has not sued the DOC, she has sued the Director of the DOC in his/her Official Capacity. Simms can bring a case against the Director of DOC in his/her Official Capacity.  42 U.S.C. § 1983 and <u>Daskalea v. District of Columbia</u>, 227 F.3d 443 (D.C. Cir. 2000) Wherefore Simms' claims against the Director of the DOC should not be dismissed.

**IV.    CONCLUSION**

Wherefore for all the above reasons the defendants motion to dismiss and/or in the alternative motion for summary judgment should be denied in its entirety. Plaintiff request that she be allowed to conduct full and complete discovery and for any other relief that this Court deems proper and just.

Respectfully submitted,

_____/s/_____
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 138-B
Largo, Maryland 20774
301-773-9652 (Office)
301-925-4070 (Fax)
Bar. No. 04412

Attorney for Plaintiff Laverna Simms

**Dated: June 13, 2008**

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 9th day of June 2007, the following Opposition to Defendants' Motion To Dismiss and/or In the Alternative Motion For Summary Judgment was served upon the following defendants by electronic filing in the U.S. District Court for the District of Columbia to:

Alex Karpinski, Esquire
Assistant Attorney General
441 4th Street N.W., 6th Floor South
Washington, D.C. 20001
Counsel For:
District of Columbia and
Director of District of Columbia
Department of Corrections

James Towns, Esquire
Attorney For
Center for Correctional Health and
Policies and Studies
803 Florida Avenue, N.W.
Washington, D.C. 2001

_____/s/_____
Jo Ann P. Myles

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

LAVERNA SIMMS                                 )
                                              )
                    Plaintiff,                )
                                              )
                                              )        Civil Action No. 1:06-CV-2178
02570
        v.                                    )        Judge Royce C. Lamberth
                                              )
DISTRICT OF COLUMBIA                          )
GOVERNMENT ET.AL.                             )
                                              )
                    Defendants                )
                                              )
_____)

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS**

1.      In Plaintiff's Second Amended Complaint, she alleges that during the

2000 through 2006 period and earlier she was harassed by numerous District of Columbia

male employees and the municipality's inaction, including its failure to train or supervise

its employees adequately, constitutes a "policy or custom", for which the municipality

may be held liable under §1983 due to its indifference to Simms' constitutional rights. 42

U.S.C.A. § 1983.

2.      Plaintiff Simms as the Mental Health Director for CCHPS was a District

of Columbia employee. See Simms Aff. Ex. 2

3.      The District and DOC controlled and managed all employees who were

hired and terminated under CCHPS. See Ex. 2

4.      The District controlled all CCHPS employees and evaluated and

supervised their work. Ex. 2

5.      Simms was required to be trained by DOC on all its policies and

procedures in order to work for the agency. Ex. 2

      6      Simms and other CCHPS employees met daily, weekly, monthly and annual with DOC personnel in DOC's meetings. Ex. 2

      7.      It was DOC's intent and demand that CCHPS' employees become and be DOC employees. Ex. 2

      8.      CCHPS had its offices inside the DOC facilities and all equipment was provided by DOC. Ex. 2

      9.      CCHPS personnel operated and performed their jobs inside the DOC facilities. Ex. 2

      10.      CCHPS personnel were required to know and obey all of DOC's rules, regulations and policies. Ex. 2

      11.      CCHPS personnel were disciplined by the DOC employees.

      12.      DC and DOC were the final decisionmakers as to the decisions made by CCHPS' employees. Ex. 2

      13.      DOC would routinely override Simms and other CCHPS employees' decisions.  Ex. 2

      14.      DOC gave Simms and other CCHPS employees' directives and instructions as to what work would be performed and how the work would be performed.

      15.      DOC and CCHPS' computer systems were integrated and intertwined and controlled by DOC. Ex. 2

Respectfully submitted,


_____/s/_____
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 138-B
Largo, Maryland 20774
301-773-9652 (Office)
301-925-4070 (Fax)
Bar. No. 04412

Attorney for Plaintiff Laverna Simms

**Dated: June 13, 2008**

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 9th day of June 2008, the following Statement of Disputed Facts To Opposition to Defendants' Motion To Dismiss and/or In the Alternative Motion For Summary Judgment was served upon the following defendants by electronic filing in the U.S. District Court for the District of Columbia to:

Alex Karpinski, Esquire
Assistant Attorney General
441 4th Street N.W., 6th Floor South
Washington, D.C. 20001
Counsel For:
District of Columbia and
Director of Department of Corrections

James Towns, Esquire
Center for Correctional Health and
Policies and Studies
803 Florida Avenue, N.W.
Washington, D.C. 2001

_____/s/_____
Jo Ann P. Myles

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

_____

LAVERNA SIMMS,                          *

     Plaintiff,                          *

     v.                                  *          Civil Action No. 06CV02178

                                                Judge Royce C. Lamberth

DISTRICT OF COLUMBIA ET.AL.              *

     Defendants.                         *

_____*

**AFFIDAVIT OF COUNSEL JO ANN P. MYLES
IN SUPPORT OF OPPOSTION TO DISMISS AND
IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

    I Jo Ann P. Myles hereby swear and affirm under the penalty of perjury that the following statements are true and correct to the best of my knowledge and belief.

    1.    That I am over 18 years of age and competent to provide testimony in the above captioned matter. I am the attorney for Plaintiff Laverna Simms in this matter.

    2.    I have personal knowledge as to the facts and circumstances in this matter as it relates to the necessary discovery and evidence needed to fully defend Plaintiff Simms against the defendants' pending motion before this Court.

    3.    That in order to fully and completely defend defendants' pending motion to dismiss and/or in the alternative motion for summary judgment it is an absolute necessity for Simms to be able to conduct full and complete discovery, to include but not limited to serving upon the defendants interrogatories, production of documents, taking

depositions, subpoenaing documents, inspecting the workplace and interviewing potential witnesses.

4.    At a minimum, I need information/discovery concerning: (1)  prior complaints that have been made about sexual harassment in the workplace, (2) the actions taken by defendants as to sexual harassment complaints, (3) information concerning the affair and sexual activities of the Warden and other officials employed by defendants, (4) information on the defendants' supervision and control over plaintiff, (5) information concerning the defendants depriving the plaintiff of her ability to make a contract with defendants, (6) information concerning the compliance and on-compliance of the defendants of the courts two existing orders and consent agreement and (6) details of the

5.    I am requesting that the Court allow Simms to make and complete full discovery and to amend her complaint according to the discovery results otherwise Simms will be prejudiced and harmed.

I JO ANN P. MYLES HEREBY SWEAR AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____/s/_____
Jo Ann P. Myles

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAVERNA SIMMS ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | |
| ) | |
| DISTRICT OF COLUMBIA ET.AL. ) | Case No. 1:06CV02178 |
| ) | |
| ) | Judge Royce C. Lamberth |
|     Defendants. ) | |
| ) | |

**DR. LA VERNA SIMMS**

I LA VERNA SIMMS do hereby swear and affirm under the penalty of perjury that the following statements are true and correct to the best of my knowledge and belief.

1.     That I am over the age of 18 years old.

2.     I am competent to give testimony in the above captioned matter.

3.     I have personal knowledge as to the facts and circumstances in the above captioned matter.

4.     The highest level of education I have achieved is a Doctorate in Psychology. I also am a nurse by trade. I obtained my Doctorate in 2005 from Walden University.

5.     That in or about 2000, I and others incorporated the Center for Correctional Health Policy Studies (hereafter, CCHPS) which is a defendant in the above captioned matter.

1

6. From the period of 2000 until June of 2006, I was a member of the Board of Directors of CCHPS. I was an employee of CCHPS until September 30, 2006. From 2000 through September 30, 2006 CCHPS had only one contract, and that was with the Department of Corrections through the District of Columbia. After I complained in 2003 through 2006 about discrimination and retaliation, CCHPS was denied the right to bid on their contract and/or to have their contract renewed by the District and Department of Corrections (DOC). Prior to my filing that 2003 and 2004 complaints, DOC had given CCHPS every indication that CCHPS' contract either would be renewed or that they would be allowed to bid on the mental health contract. Instead, the District and DOC sole sourced the contract negating and violating the District of Columbia contracting laws. The multi-million dollar contract was awarded without the required bid process, adding an additional $10,000,000.00 to the contract plus $3,000,000.00 transitional funding to a company that had no prior experience or expertise in the specialized area of Corrections Medical and Mental health treatment. In fact the new contractor hired many of CCHPS' personnel to operate the DOC's mental health and services contract.

7. That from the period of approximately 2004 until early 2006 I also served as Secretary and Treasurer for CCHPS.

8. That during the period of 2000 through 2006, I experienced and observed the hiring practices and policies of CCHPS and the defendants, the District and the Department of Corrections (DOC).

9. Specifically, no individual could be hired by CCHPS by simply going through its hiring procedures. The DC Government agency, the Department of Corrections controlled CCHPS' hiring process as all potential hirees had to be cleared

through the DOC prior to reporting to duty for CCHPS.  All potential hirees had to pass a DOC background check which made the process of Center for Correctional Health & Policy's process null and void, as a potential employee may have been suitable for hire under CCHPS procedures, but not by DOC's standards. Thus CCHPS' procedures were not utilized to hire CCHPS' employees who would be working for the DOC.

10.     Once a hiree was cleared through DOC's standards they had to go through DOC's training as well as their schedule.  If no DOC training was scheduled CCHPS could not bring aboard new hires until such DOC training was scheduled.  During 2000 through 2006, CCHPS and DOC had weekly Upper Management meetings which included the Medical Director, Health Services Administrator and the Upper Management team of DOC.  There were monthly Quality Improvement meetings with the DOC Health Services Administrator, Warden, Deputy Warden(s), and all CCHPS Managers from CCHPS.  During DOC training it was verbalized to myself and other hirees that sexual harassment was handled by the DOC and that all persons working for and in  the DOC's facilities were required to know and adhere to all policies and procedures including those on sexual harassment or be terminated.

12.     Concerning DOC's control over CCHPS, I recall an incident where a CCHPS employee was terminated by the DOC by banning her from the DOC facilities where she performed her work. Specifically, there was an incident wherein an inmate assaulted a female Mental Health Clinician/CCHPS employee.  The employee was never interviewed by DOC, however, the inmate and officers who witnessed part of the incident were.  The DOC banned the CCHPS employee permanently from the building.  The employee hired an attorney and CCHPS had to continue to pay the banned employee

3

although the inmate admitted that he assaulted the CCHPS employee.  There was also an

incident wherein CCHPS hired a Health Services Administrator who was later escorted

out of the building by DOC officers although this same employee had worked at Lorton

through the DOC for years.

13.    I was also familiar with the CCHPS and DOC contract for medical and

health services. According to the CCHPS and DOC Contract all services had to be

provided according to DOC's policies/DOC's Program Statements.  A partial list of these

standards include: Medical Management 6000.1B, Key Control  5320.1A, Tool Control,

5022.1B, Suicide Prevention Policy 6014.6A (which was written by writer and

implemented by DOC), Psychiatric Evaluation, 6014.6A (updated by writer),

Drug/Alcohol Testing (MEDAT) Mandatory Employee, 6050.4A, Record Retention,

2000.2, Health Information Privacy, HIPAA, 1300.a, Technical Reference Manual

(Health Privacy Information Operations), 1300.3, Environmental Safety and Sanitation,

2920.4, Accountability for Inmates, 5010.2B, Contraband Control, 5010.3B, and

Information Security 2420.2.

14.    During the time I worked as an employee with CCHPS I met Mr. Henry

Lesansky and several attorneys from the DOC Corporation Counsel, which was later,

named the Attorney General or General Counsel's Office.

15.    Many times Mr. Lesansky and I disagreed on clinical treatment and

housing placement of DC inmates based on my clinical expertise or that of professional

clinicians to include psychiatrists.  Mr. Lesansky, the Wardens, or General Counsel

would make decisions for housing or change placements.  Thus, as the Mental Health

Director I did not have the final decsionmaker authority over the clinical assessment,

4

treatment, diagnosis or placement of inmates for the DOC, although I was head of the Department that made those decisions.

16.    Many times I was called by both DOC, the Warden, the General Counsel office ordering me to change an assessment, diagnosis, treatment or housing assignment and when I refused they made the changes. My decisions were changed at will by the DOC Representative and DC Attorney.

17.    Moreover, the DOC had auditing authority over CCHPS processes. The DOC Upper Management representatives, conducted audits and made demands on mental health and medical treatment without advisement of a CCHPS medical representative.

18.    The DOC and the CCHPS computer systems were merged and/or Logician Computer software systems were integrated. All work performed by myself and other CCHPS employees was inputted into the DOC/CCHPS Intranet system. DOC at all times monitored, evaluated and monitored the work of CCHPS.

19.    DOC maintained and continued control over CCHPS personnel and especially its medical services personnel. Particularly during the meetings I had with DOC, the DOC managers discussed with me and other CCHPS managers improvements that were needed or necessary in performing my work. I also met monthly with the DOC's Health Services Administrator where he/or she would perform a quality assurance review over my work performance and offer suggestions for improvement. They reviewed my work at a minimum for timeliness, quality, and appropriateness of diagnosis, treatment and placement of inmates.  There was also an incident in late 2006 wherein DOC had lost all of the employees Security Clearance forms.  Mr. Lesansky

indicated if my staff and I refused to sign another we would be banned from the building, thus terminated.

20.    I recall on a number of occasions that Lesansky and the DOC General Counsel's Office giving me directives to write a letter supporting my clinical assessment of a patient. On other occasions I was instructed to complete a psychological assessment and provide results by the end of the business day or within 24 hours. For example I recall when Lesansky reassigned an inmate I had diagnosed as not requiring further clinical intervention or medication. Mr. Lesansky reassigned him to the mental health unit when it was my judgment that this client was malingering) and had a history of malingering). My decision was based on the clinical impression from the assessment with this patient. I was told by Mr. Lesansky that "I work for him" which essentially DOC was my employer.

I also performed trainings through directives of DOC Upper Management to include DOC trainings of their staff. There was a period wherein DOC had not performed Suicide Risk Trainings on their staff per court order. I was ordered to perform these trainings weekly so that all of there staff could be trained placing DOC within compliance of a court order.

21.    As previously stated, I observed DOC terminate CCHPS employees by denying them access to the DOC facilities and offices where CCHPS employees performed their work. CCHPS had offices in DOC's facilities. We performed our work in DOC's facilities. If a CCHPS employee that was required to work in the DOC faculties was denied access by DOC they were automatically and effectively terminated by DOC because they could not do the work for DOC or CCHPS.

22.     I made two charges with the EEOC; the first was in August 2005 (see

attachment) which they held for over 180 days.  The second was made in May 2006.  Due

to backlog my case was forwarded out of state.

I LA VERNA SIMMS HEREBY SWEAR AND AFFIRM UNDER THE PENALTY OF
PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO
THE BEST OF MY KNOWLEDGE AND BELIEF.

6/13/08

_____
        LA VERNA SIMMS

## CHARGE INFORMATION FORMATION FORM   EEOC
## (WASHINGTON DC OFFICE)

1801 L Street N. W., Suite 100

Washington DC, 20507

**Pages 1 through 8**

**Date: August 24, 2005**

**This charge is being brought to include but is not limited to the Federal laws, Title VI, Title VII, 42 USC §1982, §1985 and §1986, Whistleblower Act, and the District of Columbia Discrimination and Employment Laws**

1.    **State Your Name And  Address:**  LaVerna Simms, P.O. Box 4085, Annapolis, Maryland 21403-6085

**Home Phone**: 202- 528-0164

Work:  202-673-8489

Place of Work: Washington, D.C.

Race: African American

Sex: Female

**Respondents Information : (There are Seven (7) Respondents)**

**Respondents and The Address of Worksite of Respondents Are As Follows:**

(A)    *District of Columbia Central Detention Facility*, 1901 D Street S.E. Washington, D.C. 20003

(B*)    D.C. Department of Corrections*,  1901, D. Street, SE, 1st Floor, Washington, D.C. 20003

( c )  *Mayor Anthony Williams, D.C. Government*, John A. Wilson Building, 1350

1

Pennsylvania Avenue N.W., Washington, D.C. 20004

( D)  *Patricia Jackson-Britton, Deputy Director, District of Columbia Department of Corrections,* Gimke Building,  1923 Vermont Ave NW. Washington, D.C. 20001

( E )  *Odie Washington, Director, Department of Corrections*, Central Detention Center, Grimke Building, 1923 Vermont Ave., NW, Washington, D.C. 2001

(F)   *Center for Correctional Health Policy Studies, Inc. ( CCHPS),*   1717 K Street NW, Suite 600, Washington, D.C. 20036

(G)    *Estelle Hunter, Health Services Administrator, CCHPS,* 1717 K Street NW, Suite 600, Washington, 20036

(H)    *Harcourt MASI*, DOC, Central Detention Facility, 1901 D Street S.E. Washington, D.C. 20003

 (I)   *CPL Kenneth Washington*, DOC, Central Detention Facility, 1901 D Street S.E. Washington, D.C. 20003

(J)    *Steve Smith*, Warden, DOC, Central Detention Facility, 1901 D Street S.E. Washington, D.C. 20003

**Number of Employees**: Worksites of Respondents have approximately more than 200 Employees employed.

 **Type of Business**: Correctional Facility, DC Government  and Contractors for Medical and Mental Health Services

 **5. Are You Employed by the employer that harmed you**? Yes

I began my employment with CCHPS in 2000. CCHPS is a private not for profit organization with a government contract with the DC Government to

2

perform medical and mental health services for the DC Government's correctional facilities. CCHPS' provides services inside the DC Government's Department of Correctional facilities namely, the Correctional Treatment Facility (CTF) and the Central Detention Facility (DOC). I communicate on a regular basis with the Correctional administrators for the DC Government in order to perform my work. Medical services are overseen according to CCHPS' contract with the DC Government. I am in the position of Acting Director of Mental Health Services, managing mental health services to both of the District of Columbia government's correctional facilities.

6.    **Explain as briefly as possible what happened, who did it, where it happened, etc. specify how you were discriminated against.**

In or about 2000 I was hired by the Center for Correctional Health and Policy Studies (CCHPS) to provide mental health services inside of the DC Department of Corrections (DOC) and specifically at its Central Detention Facility located in South East of the District of Columbia.

This complainant was assigned and currently works inside of the District of Columbia Government's Department of Correction's Central Detention Facility in Southeast DC. Prior to that position I was the Director of the Outpatient Mental Health Services. My duties included but were not limited to entering the housing units, interviewing and assessing the mental health needs of the inmates, meeting, coordinating and communicating with DOC correctional staff (which includes

3

correctional officers, case managers, administrators and administrative personnel) and supervising outpatient mental health staff.

In or about early 2001 I was harassed by a number of male employees at the DC Department of Corrections Central Detention Facility. Specifically I was harassed at least 2-3 times a week for over a period of three (3) years by correctional officer Harcourt MASI. I was also harassed by CPL Kenneth Washington since the time I began to work at the Central Detention Facility.

Since my employment at the Central Detention Facility, I have been sexually harassed on approximately on a daily basis by some male DOC employees making inappropriate sexual remarks, comments, innuendos and/or sensual touching. I also reported sexual harassment early on and my superiors did nothing. The numerous incidents of sexual harassment were also reported to CCHPS' Health Services Administrator, Estelle Hunter in 2001 and from thereon for a period of two (2) years until 2003 and nothing was done. In December 2003, I reported the continuous sexual harassment again to the DC Department of Corrections' Special Investigator Carolyn Warner. My claim was investigated and the nine (9) months comprehensive analysis found there to be probable cause that sexual harassment by CPL Harcourt MASI.

However, following the investigator's findings against MASI for sexual harassment, MASI continued to work at the DOC's Detention Facility and I was subjected to retaliation by him and his fellow correctional officers. Specifically,

4

MASI was also allowed to continue to work and enter the correction facility up until approximately February 2005. The Department of Corrections continued to allow MASI to work and to be assigned to the mental health post where I worked-well after my complaint was filed.  MASI would also refuse to call the inmates that required comprehensive mental and medical assessments to my work area. Under the contract with the DC Government CCHPS was required within 24 hours to assess all inmates for mental health services. When MASI refused to bring inmates for mental health assessment his refusal jeopardized not only my safety but also the inmate population's safety, the medical and mental health staff, as well as jeopardizing the well being of the patients' requiring these services. Not only did his refusal to bring inmates for mental health assessments delay inmates receiving treatment, he also placed the DOC population and employees at risk and jeopardized the CCHPS' contract with the DC Government.

In retaliation, when I entered the jail housing units where the inmates lived, correctional officers delayed opening the doors to me in order to exit the housing units or they would substantially delay opening the doors to the housing units, thus subjecting me to being in the presence of inmates longer than necessary thus purposely jeopardizing my safety and placing me in fear of my life.  When I complained about these incidents to the respondents my complaints went unanswered and/or ignored.

For example, in late 2004, I reported to Warden Smith that Correctional

5

Officer MASI was retaliating against me for having filed a sexual harassment complaint against him. I complained to Warden Smith about MASI assigned to my work in my area and his repeated refusal to bring inmates to my work area to be assessed for mental and medical health services. Warden Smith's response to complaint was non-responsive and negligent at the very least. Warden Smith response to my Retaliation Complaint was that "Anyone who works for DOC can enter the building and be assigned to work anywhere." Warden Smith's inaction and refusal to reassign MASI jeopardized the mental health and physical safety of the inmates, employees including myself and jeopardized my work and employer's contract.

7.    **Explain why you believe these events occurred?**

The events occurred because the respondents have a pattern, practice and a standard operating procedure of allowing females to be sexually harassed and retaliated against in the workplace, which violates the terms and conditions of my employment

8.    **Basis of Complaint: which of the following best describes why you believe you were discriminated against?**

**Sex:**  Female

**Race**:  African American

**Reprisal/ Retaliation**: Retaliated against after filing complaint and after the

favorable findings of the special investigator.

**9.     What is the Employer's Policy in regard! to what happened to You ?**

The Respondents has a policy of ZERO tolerance for sexual

harassment, discrimination and retaliation in the workplace. However, the

respondents' historically condones sexual harassment in the workplace.

Their practices is to sweep the sexual harassment complaints under the rug

and ignore the complaints and incidents. The respondents' practice is to

either blame the victim, ignore the sexual harassment complaints and/or to

retaliate against the victim.

**10.     Please list below any persons (witnesses' fellow employees'
supervisors, or others who may have additional information to
support or clarify your complaint, Explain what information each can
provide.**

There were 11 witnesses that corroborated the sexual harassment (see

Inspector General's report).

**11.     What reason do you think the respondents will give as to why you
were treated in this manner.**

The respondents will probably state that they were not aware of my complaints

or that allegedly I failed to complain. They will also state that allegedly the harassers

were disciplined and that they found no evidence of retaliation.

**12.     What else do you think *is* necessary for us to know about this**

7

**company or your situation?**

The Respondent is currently under a United States District Court

Order after settling a CLASS ACTION Sex Discrimination and

Harassment lawsuit prohibiting the Respondents from engaging,

condoning or permitting sexual harassment in the workplace. However,

numerous complaints of sexual harassment still are being filed because

pervasive and systemic sexual harassment still thrives at the DOC and

its Central Detention Facility.

**13.     This matter can be settled, what would you request as a
settlement?**

Monetary damages for discrimination and emotional stress and strain,

pain and suffering and punitive damages.


### ATTESTATION TO THE ABOVE CHARGE:

I  LAVERNA SIMMS HEREBY SWEAR AND AFFIRM UNDER THE
PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE
CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____/S/_____

### LAVERNA SIMMS

8

# EXHIBIT 1

FedEx Express                    U.S. Mail: PO Box 727
Customer Support Trace           Memphis, TN 38194-4643
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116                Telephone: 901-369-3600

05/07/2005

Dear Customer:

Here is the proof of delivery for the shipment with tracking number **850484312333**. Our records reflect the
following information.

Delivery Information:

**Signed for by:** T.BRAXTON

**Delivery Date:** Mar 17, 2005 12:45

Shipping Information:

**Tracking number:** 850484312333          **Ship Date:** Mar 16, 2005
                                            **Weight:** 5.0 lbs.

If you are the shipper, recipient, or third-party payor for this shipment and require additional
Signature Proof of Delivery information, please log-in using your My FedEx login ID.
**Recipient:**                              **Shipper:**
US                                          LAR US

Thank you for choosing FedEx Express. We look forward to working with you in the future.

FedEx Worldwide Customer Service
1-800-Go-FedEx®

Search

Track Shipments
Detailed Results

| Tracking number | 850484312333 | Delivered to | Receptionist/Front Desk |
| Signed for by | T.BRAXTON | Service type | Priority Box |
| Ship date | Mar 16, 2005 | Weight | 5.0 lbs. |
| Delivery date | Mar 17, 2005 12:45 PM | | |
| Status | Delivered | | |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| Mar 17, 2005 | 12:45 PM | **Delivered** | | |
| | 12:37 PM | Delivery exception | WASHINGTON, DC | Customer not available or business closed |
| | 9:50 AM | Delivery exception | WASHINGTON, DC | Recipient location security delay. Delivery will be reattempted. |
| | 8:05 AM | On FedEx vehicle for delivery | WASHINGTON, DC | |
| | 7:21 AM | At local FedEx facility | WASHINGTON, DC | |
| | 5:58 AM | At dest sort facility | DULLES, VA | |
| Mar 16, 2005 | 8:41 PM | Left origin | CROFTON, MD | |
| | 6:56 PM | Picked up | CROFTON, MD | |

Reduce future mistak

FedEx has

and

Signature proof　　　Track more shipments

Email your detailed tracking results (optional)

Enter your email, submit up to three email addresses (separated by commas), add your message (optional), and click **Send email**.

From

To

Add a message to this email.

Send email

This site is protected by copyright and trademark laws under US and International law. All rights reserved. © 1995-2005 FedEx

Law Offices of
# JO ANN P. MYLES

Office 301-773-9652

1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774

Fax 301-925-4070

## CONFIDENTIAL SETTLEMENT NEGOTIATIONS

**Federal Express**
#850484312333

March 16, 2005

Honorable Mayor Anthony A. Williams
Office of the Mayor
C/O Cheryl Hobbs-Newman
Office of the Secretary
District of Columbia Government
John A. Wilson Building
1350 Pennsylvania Avenue N.W.
Washington, D.C. 20004

### Re: Sexual Harassment Complaint of Contractor LaVerna Simms
### Simms v. District of Columbia and DCDC

Dear Mayor Williams:

Please be advised that the undersigned legal Counsel, Jo Ann P. Myles, Law Office of Jo Ann P. Myles and Anne J.A. Gbenjo, The Gbenjo Law Group represent LaVerna Simms. On behalf of Ms. Simms we are giving the District of Columbia notice that Ms. Simms has a Federal Claim, pursuant to 42 U.S.C. Sec. 1981, 1983 and other federal laws protecting government contractors being subjected to sexual harassment for six years by male employees employed by the District of Columbia, District of Columbia Department of Corrections ("DCDC"). In order to resolve this matter prior to filing a lawsuit in court and informing the Honorable Judge Royce Lamberth that DCDC has violated its consent agreement in the class action matter of Bessey Neal et.al., the undersigned Counsel are demanding $4.5 million dollars on behalf of Ms. Simms to resolve this matter and attorney fees.

### Special Inspector of the District of Columbia
### Department of Corrections' Findings

In 1999 the District of Columbia and DCDC were court ordered in the Class Action matter of *Bessye Neal, et.al. v. Director D.C. Department of Corrections, et. al.* Civil Action 93-2420 (RCL) to establish a Special Inspector office to investigate all

Page 2
Mayor Anthony A. Williams
Simms v. D.C. et. al.
March 16, 2005

sexual harassment complaints at the District of Columbia Department of Corrections. On
or about July 2004, the Special Inspector (SI) after a six-month ling detailed
investigation of Ms. Simms sexual harassment complaint determined that she was being
sexually harassed *daily*. I have attached the approximately 500-page OSI investigation for
your review. Based on the evidence investigator Janet Goldstein uncovered, Special
inspector Carolyn N. Lerner made a factual finding that Ms. LaVerna Simms was in fact
sexually harassed *daily* for a period of six years, while she worked as a contractor for the
District of Columbia Department of Corrections. See July 8, 2004 letter from Lerner.
Ms. Simms is currently the Director of Outpatient Mental Health of the Department of
Corrections. See Page 2 of SI investigation. There were approximately fifteen witnesses
that were interviewed and they corroborated Ms. Simms allegations.

Although the SI's findings were favorable to Ms. Simms, the SI has no authority
to monetarily settle or award Ms. Simms damages as to her Federal sexual harassment
claims. Also, after the SI's findings some the following events took place:

- The corporal who victimized and sexually harassed Ms. Simms for six
  years was kept in his job. He had a sexual relationship with the female
  Warden;

- Following complaints about the corporal DCDC management continued to
  assign this corporal to areas supervised by Ms. Simms;

- Verbal attacks and derogatory remarks were made by this corporal's
  fellow male employees who were also of Nigerian decent;

- The Corporal began using his personal relationship with the female
  warden in order to retaliate against Ms. Simms and

- The only disciplinary action taken against this corporal was a four-month
  suspension from work and the female Warden was rewarded with a
  promotion to the position of Deputy Director of the Department of
  Corrections (DOC).

Because, the SI did not have the perpetrator and victimizer removed from the
DCDC Ms. Simms no longer feels safe or secure working in at the Department of
Corrections and is now forced to leave her position, which provides to her an annual

Page 3
Mayor Anthony A. Williams
<u>Simms v. D.C. et. al.</u>
March 16, 2005


salary of over $100,000, and other benefits, which have a financial value as one of the founders/owners of the Center Correctional Health and Policy Studies ("CCHP").[1] The record shows that Simms complained throughout the six (6) years that she was sexually harassed and nothing was done until the beginning of 2004.

Ms. Simms is a licensed professional counselor who began working for the receiver at the DCDC in 1997. Simms is an employee of CCHP, a corporation that contracts with the DCDC to operate health services within the DCDC Simms also is one of the twelve self-described "owner-operators" of CCHPS. Simms claims include but are not limited to allegations that MASI, a male guard and D.C. Government employee at DCDC "made overtures and comments on a daily basis for the next six to nine months following their initial meeting.[2] During the past six years, Masi sexually harasses her by repeatedly making unwanted overtures towards her. Masi's overtures allegedly included asking Simms out. Making comments on her appearance and body, seeking Simms out at work and social events, telephoning her, photographing her and grabbing her on her arm.

Additionally, Ms. Simms repeatedly complained through CCHPS and finally in December 2003 she filed a formal complaint with the Office of the Special Inspector, District of Columbia Department of Corrections, 1730 M Street, N.W. Suite 412, Washington, D.C. 20036. Investigator Janet Goldstein started and completed her investigation in June 21, 2004. Carolyn N. Lerner, Special Inspector. Probable Cause was found by Carolyn N. Lerner and Ms. Simms allegations were corroborated by 15 women employees at the DCDC (see enclosed three ring binder with the 36 page investigation and approximately 500 page investigation conducted by the Office of the Special Inspector, District of Columbia Department of Corrections. All testimony was taken under oath and

---

[1]     Ms. Simms at a minimum will be losing her health benefits, pension, 401k and matching funds, vacation, disability insurance, life insurance and sick leave. Ms. Simms is over the age of 45 and it will not be easy for her to obtain employment in the workplace after she leaves CCHP.

[2]     Ms. Simms was also harassed by other male employees at the DCDC, other than just Corporal Masi. Currently the OSI is investigating another male employee who also harassed Ms. Simms at the DCDC, which was brought ay another female staff member (employee) at the DCDC.

Page 4
Mayor Anthony A. Williams
Simms v. D.C. et. al.
March 16, 2005

### Mediation

In order to resolve Ms. Simms' claims short of filing her Federal claims in the Untied States District Court of the District of Columbia, we are proposing that the parties and their counsel amicably sit down and mediate this matter. If you are interested in mediation, then I propose that you have your Corporation Counsel contact the undersigned counsel within the next 30 days to advise us as to whether or not you are interested in resolving this matter outside of the courtroom.

If you have any questions please do not hesitate to contact the undersigned. Thank you for your prompt attention to t this matter.

Very Truly Yours,

Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774
301-773-9652 (office )
301-925-4070 (fax)

**Lead Counsel**

Anne J.A. Gbenjo
The Gbenjo Law Group
8449 W. Bellfort Avenue
Suite 100
Houston, Texas 77071
713-771-4775
713-771-4784 (fax)

Co-Counsel

**Enclosure** (Three Ring Binder-500 page SI Report)

cc: Ms. LaVerna Simms

# EXHIBIT 2

Law Offices of
## JO ANN P. MYLES
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774

Office 301-773-9652

Fax 301-925-4070

**FED EX**
844391677983

May 26, 2005

Robert J. Spagnoletti
Attorney General for the
District of Columbia
John A Wilson Building
1350 Pennsylvania Avenue N.W.
Suite 409
Washington, D.C. 20004

Re: La Verna Simms v. DC and DCDOC
IQ#439127

Dear Mr. Spagnoletti:

Please be advised that the undersigned counsel, Jo Ann P. Myles and Anne Gbenjo represent Ms. Laverna Simms. On March 16, 2005, we forwarded to your office a letter of intent to file a sexual harassment lawsuit and many other claims against the District of Columbia and the DC Department of Corrections (DOC). Your log in number of the letter and 500 page investigative report was received by Mayor Williams' Office of the Secretary on March 17, 2005 and that office logged the matter in as IQ#439127.

In our March 16, 2005, letter we requested mediation of Ms. Simms' complaints and claims. Prior to our letter, Ms. Simms continued to be retaliated against by the DOC. Moreover, DOC negligently retained her sexual harassers, who were more than just Mr. Masi. Let this letter also serve as notice that the undersigned are contemplating another sexual harassment CLASS ACTION LAWSUIT against the District of Columbia and DOC.

I would appreciate a response to our initial letter dated March 16, 2005. Thank you for your prompt attention to this matter.

Very Truly Yours,

Jo Ann P. Myles

cc: Ann Gbenjo, Esquire

# EXHIBIT 3

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $4.05 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $8.30 |

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, June 2002                See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☐ Agent
☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0004 8148 3745

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

---

HAMPTON PARK FINANCE UNIT
CAPITOL HEIGHTS, Maryland
207919998
1050050791 -0095
08/08/2006    (301)499-7304    08:04:12 PM

Sales Receipt

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| WASHINGTON DC 20001 | | | $4.05 |
| Priority Mail | | | |
| 1.60 oz. | | | |
| Return Rcpt (Green Card) | | | $1.85 |
| Certified | | | $2.40 |
| Label #: | 7006010000048148 3745 | | |
| Issue PVI: | | | $8.30 |

Total:                                    $8.30

Paid by:
Visa                                      $8.30
  Account #:        XXXXXXXXXXXX7451
  Approval #:       032605
  Transaction #:    897
23 902892280

Bill#: 1000502119208
Clerk: 01

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.
Customer Copy

 **UNITED STATES**
**POSTAL SERVICE**®

Home | Help

Track & Confirm

# Track & Confirm

### Search Results

Label/Receipt Number: **7006 0100 0004 8148 3745**
Status: **Delivered**

Your item was delivered at 5:17 pm on August 09, 2006 in
WASHINGTON, DC 20001.

Track & Confirm

Enter Label/Receipt Number.

*Additional Details >*     *Return to USPS.com Home >*

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.     *Go >*

 POSTAL INSPECTORS     site map   contact us   government services   jobs   **National & Premier Accounts**
Preserving the Trust          Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

 **UNITED STATES**
**POSTAL SERVICE**

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: **7006 0100 0004 8148 3745**
Detailed Results:

- **Delivered, August 09, 2006, 5:17 pm, WASHINGTON, DC 20001**
- **Arrival at Unit, August 09, 2006, 11:51 am, WASHINGTON, DC 20001**
- **Acceptance, August 08, 2006, 8:02 pm, CAPITOL HEIGHTS, MD 20791**

Track & Confirm

Enter Label/Receipt Number.

*< Back*                          ***Return to USPS.com Home >***

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.     ***Go >***

 POSTAL INSPECTORS     site map   contact us   government services   jobs   **National & Premier Accounts**
Preserving the Trust       Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

Law Offices of
# JO ANN P. MYLES

Office 301-773-9652

1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774

Fax 301-925-4070

## PRIORITY MAIL/
## COURIER/
## REGULAR MAIL

August 8, 2006

Mayor Anthony Williams
Office of Risk Management
District of Columbia Government
Attn: Claims
441 Fourth Street N.W.,Suite 800 South
Washington, D.C. 20001

### Re: Sexual Harassment Complaint of LaVerna Simms
### Notice of Intent To File Claims Against (Section 12-309, DC Official Code)
### The District of Columbia Government

### <u>Simms v. District of Columbia</u>

Dear Mayor Williams:

Please be advised that the undersigned legal Counsel, Jo Ann P. Myles, Law Office of Jo Ann P. Myles and Anne J.A. Banjo, The Banjo Law Group represent LaVerna Simms. On behalf of Ms. Simms we are giving the District of Columbia notice that Ms. Simms has a number of state and federal claims she plans to file against the District of Columbia pertaining to her being subjected to sexual harassment and retaliation in her employment for six years by male employees employed by the District of Columbia, District of Columbia Department of Corrections ("DCDC") and most recently in March 2006 for retaliation.

### Special Inspector of the District of Columbia
### Department of Corrections' Findings

In 1999 the District of Columbia and DCDC were court ordered in the Class Action matter of *Bessye Neal, et.al. v. Director D.C. Department of Corrections, et. al.* Civil Action 93-2420 (RCL) to establish a Special Inspector office to investigate all

Page 2
Mayor Anthony A. Williams
Simms v. D.C. et. al.
August 8, 2006


sexual harassment complaints at the District of Columbia Department of Corrections. On
or about July 1, 2004, the Special Inspector (SI) after a six-month long detailed
investigation of Ms. Simms' sexual harassment complaint determined that she was being
sexually harassed **daily**. You, the District of Columbia's Offices of Risk Management
and the Attorney General have a copy of the approximately 500-page OSI investigation,
which I sent to you last year in 2005. Based on the evidence investigator Janet Goldstein
uncovered, Special inspector Carolyn N. Lerner made a factual finding that Ms. LaVerna
Simms was in fact sexually harassed **daily** for a period of six years, while she worked as
a contractor/employee for the District of Columbia Department of Corrections. More
importantly, Ms. Simms has been subjected to retaliatory conduct by the District of
Columbia Government since she has filed her complaints and she continues to be
retaliated against including but not limited to the fact that the District of Columbia
government has terminated Ms. Simms employment as of September 30, 2006.

Although the SI's findings were favorable to Ms. Simms, the SI has no authority
to monetarily settle or award Ms. Simms damages as to her Federal sexual harassment
claims. Also, after the SI's findings some the following events took place:

- The corporal who victimized and sexually harassed Ms. Simms for six
  years was kept in his job. He had a sexual relationship with the female
  Warden;

- Following complaints about the corporal DCDC management continued to
  assign this corporal to areas supervised by Ms. Simms;

- Verbal attacks and derogatory remarks were made by this corporal's
  fellow male employees who were also of Nigerian decent;

- The Corporal began using his personal relationship with the female
  warden in order to retaliate against Ms. Simms and

- The only disciplinary action taken against this corporal was a four-month
  suspension from work and the female Warden was rewarded with a
  promotion to the position of Deputy Director of the Department of
  Corrections (DC).

Page 3
Mayor Anthony A. Williams
Simms v. D.C. et. al.
August 8, 2006

The events and incidents took place at the District of Columbia Department of Corrections during the past six years of Ms. Simms employment. Ms. Simms has been injured and has suffered damages as the results of the District of Columbia's conduct including but not limited to physical and emotional assault and battery, fear, humiliation, embarrassment, degradation and emotional stress and strain. She was retaliated against by the District of Columbia government when she was terminated from her employment effective September 30, 2006. Ms. Simms' salary is over $100,000, she had health and other benefits, which have a financial value as one of the founders/owners of the Center Correctional Health and Policy Studies ("CCHP").[1] The record shows that Simms complained throughout the six (6) years that she was sexually harassed and nothing was done until the beginning of 2004.

Ms. Simms is a licensed professional counselor who began working for the receiver at the DCDC in 1997. Simms is an employee of CCHP, a corporation that contracts with the DCDC to operate health services within the DCDC Simms also is one of the twelve self-described "owner-operators" of CCHPS. Simms claims include but are not limited to allegations that Masi, a male guard and D.C. Government employee at DCDC "made overtures and comments on a daily basis for the next six to nine months following their initial meeting.[2] During the past six years, Masi sexually harasses her by repeatedly making unwanted overtures towards her. Masi's overtures included but were not limited to Masi's repeated demands to Simms for dates and sex. Masi repeatedly made comments to Ms. Simms about her appearance and body and he repeatedly sought Simms out at work and social events, telephoning her, photographing her and grabbing her on her arm.

Additionally, Ms. Simms repeatedly complained through CCHPS and the DCDC and about being sexually harassed and in December 2003 she filed a formal complaint with the Office of the Special Inspector, District of Columbia Department of Corrections, 1730 M Street, N.W. Suite 412, Washington, D.C. 20036. Investigator Janet Goldstein started and completed her investigation in June 21, 2004. Carolyn N. Lerner, Special Inspector. Probable Cause was found by Carolyn N. Lerner and Ms. Simms allegations were corroborated by 15 women employees at the DCDC ( In March of 2005, I

---

[1]      Ms. Simms at a minimum will be losing her health benefits, pension, 401k and matching funds, vacation, disability insurance, life insurance and sick leave. Ms. Simms is over the age of 45 and it will not be easy for her to obtain employment in the workplace after she leaves the DOC.

[2]      Ms. Simms was also harassed by other male employees at the DCDOC, other than just Corporal Masi.

Page 4
Mayor Anthony A. Williams
<u>Simms v. D.C. et. al.</u>
August 8, 2006

previously forwarded to you a three ring binder with the 36 page investigation summary and approximately 500 page testimony, exhibits etc. gathered as a result of the investigation conducted by the Office of the Special Inspector, District of Columbia Department of Corrections). All testimony was taken under oath.

If you have any questions please do not hesitate to contact the undersigned. Thank you for your prompt attention to t this matter.

Very Truly Yours,

Jo Ann P. Myles                                         Anne J.A. Gbenjo
Law Office of Jo Ann P. Myles                          The Gbenjo Law Group
1300 Mercantile Lane                                   8449 W. Bellfort Avenue
Suite 139-S                                            Suite 100
Largo, Maryland 20774                                  Houston, Texas 77071
301-773-9652 (office )                                 713-771-4775
301-925-4070 (fax)                                     713-771-4784 (fax)

Lead Counsel                                           Co-Counsel

cc: Mayor Williams and District of Columbia Office of Risk Management
    Ms. LaVerna Simms

**EXHIBIT 4**

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | 4.05 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 8.30 |

Postmark Here    AUG 09 2006    MD-USPS-20791

Sent To: Mayor Anthony Williams

Street, Apt. No.; or PO Box No.

City, State, ZIP+4: 441 Fourth St. NW
Washington D.C. 20001

7006 0100 0004 8148 3752

PS Form 3800, June 2002    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mayor Anthony Williams
Office of Public Mayor
Office of Columbia Bar
Columbia Suite 600
441 Fourth Street NW
Washington D.C. 20001

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

2. Article Number (Transfer from service label)
7006 0100 0004 8148 3752

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
8-10-06

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

---

```
        HAMPTON PARK FINANCE UNIT
          CAPITOL HEIGHTS, Maryland
                 207919998
            1050050/91  -0092
08/09/2006       (301)499-7304        07:58:18 PM

                    Sales Receipt
Product             Sale  Unit         Final
Description         Qty   Price        Price

WASHINGTON DC 20001                    $4.05
 Priority Mail
 1.60 oz.
 Return Rcpt (Green Card)              $1.85
 Certified                             $2.40
 Label #:        70060100000481483752
                                     ========
 Issue PVI:                            $8.30


Total:                                 $8.30

Paid by:
Visa                                   $8.30
  Account #:       XXXXXXXXXXXXX7451
  Approval #:      359938
  Transaction #:   689
 23 902892280

Bill#: 1000802047232
Clerk: 01

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.
         Customer Copy
```



Home | Help

**Track & Confirm**

# Track & Confirm

## Search Results

Label/Receipt Number: 7006 0100 0004 8148 3752
**Status: Delivered**

Your item was delivered at 5:25 pm on August 10, 2006 in
WASHINGTON, DC 20001.

Track & Confirm

Enter Label/Receipt Number.

**Additional Details >**     **Return to USPS.com Home >**

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.     **Go >**

---

POSTAL INSPECTORS     site map   contact us   government services   jobs   National & Premier Accounts
Preserving the Trust          Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy



UNITED STATES
POSTAL SERVICE

Home | Help

**Track & Confirm**

## Track & Confirm

### Search Results

Label/Receipt Number: **7006 0100 0004 8148 3752**
Detailed Results:

- **Delivered, August 10, 2006, 5:25 pm, WASHINGTON, DC 20001**
- **Arrival at Unit, August 10, 2006, 12:42 pm, WASHINGTON, DC 20001**
- **Acceptance, August 09, 2006, 7:56 pm, CAPITOL HEIGHTS, MD 20791**

**< Back**                            **Return to USPS.com Home >**

Track & Confirm

Enter Label/Receipt Number.



**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   **Go >**

POSTAL INSPECTORS     site map   contact us   government services   jobs   National & Premier Accounts
Preserving the Trust            Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use   Privacy Policy

Law Offices of
## JO ANN P. MYLES
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774

Office 301-773-9652

Fax 301-925-4070

**PRIORITY MAIL/**
**COURIER/**
**REGULAR MAIL**

August 8, 2006

Mayor Anthony Williams
Office of Risk Management
District of Columbia Government
Attn: Claims
441 Fourth Street N.W.,Suite 800 South
Washington, D.C. 20001

### Re: Sexual Harassment Complaint of LaVerna Simms
### Notice of Intent To File Claims Against (Section 12-309, DC Official Code)
### The District of Columbia Government

### Simms v. District of Columbia

Dear Mayor Williams:

Please be advised that the undersigned legal Counsel, Jo Ann P. Myles, Law Office of Jo Ann P. Myles and Anne J.A. Banjo, The Banjo Law Group represent LaVerna Simms. On behalf of Ms. Simms we are giving the District of Columbia notice that Ms. Simms has a number of state and federal claims she plans to file against the District of Columbia pertaining to her being subjected to sexual harassment and retaliation in her employment for six years by male employees employed by the District of Columbia, District of Columbia Department of Corrections ("DCDC") and most recently in March 2006 for retaliation.

### Special Inspector of the District of Columbia
### Department of Corrections' Findings

In 1999 the District of Columbia and DCDC were court ordered in the Class Action matter of *Bessye Neal, et.al. v. Director D.C. Department of Corrections, et. al.* Civil Action 93-2420 (RCL) to establish a Special Inspector office to investigate all

Page 2
Mayor Anthony A. Williams
<u>Simms v. D.C. et. al.</u>
August 8, 2006

sexual harassment complaints at the District of Columbia Department of Corrections. On or about July 1, 2004, the Special Inspector (SI) after a six-month long detailed investigation of Ms. Simms' sexual harassment complaint determined that she was being sexually harassed **daily**. You, the District of Columbia's Offices of Risk Management and the Attorney General have a copy of the approximately 500-page OSI investigation, which I sent to you last year in 2005. Based on the evidence investigator Janet Goldstein uncovered, Special inspector Carolyn N. Lerner made a factual finding that Ms. LaVerna Simms was in fact sexually harassed **daily** for a period of six years, while she worked as a contractor/employee for the District of Columbia Department of Corrections. More importantly, Ms. Simms has been subjected to retaliatory conduct by the District of Columbia Government since she has filed her complaints and she continues to be retaliated against including but not limited to the fact that the District of Columbia government has terminated Ms. Simms employment as of September 30, 2006.

Although the SI's findings were favorable to Ms. Simms, the SI has no authority to monetarily settle or award Ms. Simms damages as to her Federal sexual harassment claims. Also, after the SI's findings some the following events took place:

- The corporal who victimized and sexually harassed Ms. Simms for six years was kept in his job. He had a sexual relationship with the female Warden;

- Following complaints about the corporal DCDC management continued to assign this corporal to areas supervised by Ms. Simms;

- Verbal attacks and derogatory remarks were made by this corporal's fellow male employees who were also of Nigerian decent;

- The Corporal began using his personal relationship with the female warden in order to retaliate against Ms. Simms and

- The only disciplinary action taken against this corporal was a four-month suspension from work and the female Warden was rewarded with a promotion to the position of Deputy Director of the Department of Corrections (DC).

Page 3
Mayor Anthony A. Williams
Simms v. D.C. et. al.
August 8, 2006

The events and incidents took place at the District of Columbia Department of
Corrections during the past six years of Ms. Simms employment. Ms. Simms has been
injured and has suffered damages as the results of the District of Columbia's conduct
including but not limited to physical and emotional assault and battery, fear, humiliation,
embarrassment, degradation and emotional stress and strain. She was retaliated against by
the District of Columbia government when she was terminated from her employment
effective September 30, 2006. Ms. Simms' salary is over $100,000, she had health and
other benefits, which have a financial value as one of the founders/owners of the Center
Correctional Health and Policy Studies ("CCHP").[1] The record shows that Simms
complained throughout the six (6) years that she was sexually harassed and nothing was
done until the beginning of 2004.

Ms. Simms is a licensed professional counselor who began working for the
receiver at the DCDC in 1997. Simms is an employee of CCHP, a corporation that
contracts with the DCDC to operate health services within the DCDC Simms also is one
of the twelve self-described "owner-operators" of CCHPS. Simms claims include but are
not limited to allegations that Masi, a male guard and D.C. Government employee at
DCDC "made overtures and comments on a daily basis for the next six to nine months
following their initial meeting.[2] During the past six years, Masi sexually harasses her by
repeatedly making unwanted overtures towards her. Masi's overtures included but were
not limited to Masi's repeated demands to Simms for dates and sex. Masi repeatedly
made comments to Ms. Simms about her appearance and body and he repeatedly sought
Simms out at work and social events, telephoning her, photographing her and grabbing
her on her arm.

Additionally, Ms. Simms repeatedly complained through CCHPS and the DCDC
and about being sexually harassed and in December 2003 she filed a formal complaint
with the Office of the Special Inspector, District of Columbia Department of Corrections,
1730 M Street, N.W. Suite 412, Washington, D.C. 20036. Investigator Janet Goldstein
started and completed her investigation in June 21, 2004. Carolyn N. Lerner, Special
Inspector. Probable Cause was found by Carolyn N. Lerner and Ms. Simms allegations
were corroborated by 15 women employees at the DCDC ( In March of 2005, I

---

[1]     Ms. Simms at a minimum will be losing her health benefits, pension, 401k and
matching funds, vacation, disability insurance, life insurance and sick leave. Ms. Simms
is over the age of 45 and it will not be easy for her to obtain employment in the
workplace after she leaves the DOC.

[2]     Ms. Simms was also harassed by other male employees at the DCDOC, other than
just Corporal Masi.

Page 4
Mayor Anthony A. Williams
<u>Simms v. D.C. et. al.</u>
August 8, 2006

previously forwarded to you a three ring binder with the 36 page investigation summary and approximately 500 page testimony, exhibits etc. gathered as a result of the investigation conducted by the Office of the Special Inspector, District of Columbia Department of Corrections). All testimony was taken under oath.

If you have any questions please do not hesitate to contact the undersigned. Thank you for your prompt attention to t this matter.

Very Truly Yours,

Jo Ann P. Myles
Law Office of Jo Ann P. Myles
1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774
301-773-9652 (office )
301-925-4070 (fax)

Lead Counsel

Anne J.A. Gbenjo
The Gbenjo Law Group
8449 W. Bellfort Avenue
Suite 100
Houston, Texas 77071
713-771-4775
713-771-4784 (fax)

Co-Counsel

cc: Mayor Williams and District of Columbia Office of Risk Management
    Ms. LaVerna Simms

**EXHIBIT 5**

Law Offices of

# JO ANN P. MYLES

Office 301-773-9652

1300 Mercantile Lane
Suite 139-S
Largo, Maryland 20774

Fax 301-925-4070

September 25, 2006

**VIA FACSIMILE/MAIL**
202-673-2252

Mr. Fred Staten, Jr.
EEOC Officer
1923 Vermont Avenue N.W.
Suite NLL-10
Washington, D.C. 2001

Re:     **Harcourt Masi v. D.C. Department of Corrections**
        **OEA Matter No: 1601-0045-05**

Dear Mr. Staten:

This letter is a follow up to our last two conversations concerning the rescheduling of the hearing for Mr. Masi and the status of any investigation by your department into the concerns I raised in August 2006 on behalf of Ms. Simms that Mr. Masi was violating the "Stay Away Order".

Specifically, I advised you last week on September 19, 2006, that October 31 or November 1, 2006, were dates that I and Ms. Simms were available for Mr. Masi's hearing. Additionally, as a follow-up to our conversation in mid to late August 2006, I advised you that Ms. Simms was still being intimidated and threatened by Mr. Masi at work. I advised you that when Ms. Simms would arrive to the office, leave for lunch or leave work Mr. Masi would be standing near the entrance or exit where Ms. Simms would be entering or exiting. Mr. Masi would then stare Ms. Simms down and intimidate her with his stance, presence and stares. She explained to me that there was "Stay Away Order" in place and that Mr. Masi was in violation of the Stay Away Order. Although, this is Ms. Simms last week at the Department of Corrections she wants to ensured that Mr. Masi stays away from her during her last week at work. She has also advised me that since you and I last spoke in August 2006, Mr. Masi still stands near the entrance and exit that she must enter and/or exit and stares her down and intimidates her.

Page 2
Mr. Fred Staten, Jr.
<u>OEA Matter No: 1601-0045-05</u>
September 25, 2006

I would like to assure Ms. Simms that Mr. Masi will not harm her, intimidate her or threaten her in any way during her last week at work. I would appreciate any assistance that you office can give in this matter to ensure that Ms. Simms is in a safe environment.

Thank you for your prompt attention to this matter. I f you have any questions please contact me at 301-773-9652.

Very Truly Yours,

Jo Ann P. Myles

cc: Ms. LaVerna Simms