**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAVERNA SIMMS,<br>            Plaintiff,<br>    v.<br>DISTRICT OF COLUMBIA, *et. al.,*<br><br>            Defendants. | Case No. 06-02178 (RCL) |

**DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The defendant District of Columbia ("the District"), through undersigned counsel, states as follows in reply to plaintiff's opposition to the defendant's motion to dismiss plaintiff's second amended complaint or, in the alternative, for summary judgment.

**I.    THE ISSUES WITHIN THE DEFENDANT'S MOTION DO NOT REQUIRE DISCOVERY.**

Plaintiff opposes the District's motion with an affidavit submitted pursuant to Fed. R. Civ. P. 56(f) and argues that she cannot oppose the District's motion without discovery. In the affidavit, plaintiff's counsel states that, at a minimum, she requires discovery concerning:

(1) prior complaints that have been made about sexual harassment in the workplace; and

(2) the actions taken by defendants as to sexual harassment complaints; and

(3) information concerning the affair and sexual activities of the Warden and other officials employed by defendants; and

(4) information on the defendant's supervision and control over plaintiff; and

(5) information concerning the defendants depriving the plaintiff of her ability to make a contract with defendants; and

(6) information concerning the compliance and non-compliance of the defendants of the court's two existing orders and consent agreement.

First, with the exception of the issue regarding whether she was an employee or an independent contractor, the District's motion is based on plaintiff's complaint and allegations alone and brought pursuant to Fed. R. Civ. P. 12(b)(6).  As such, discovery is not necessary to the resolution of the District's motion on these issues as it is not premised on facts, but on plaintiff's allegations.

Second, a plaintiff opposing a motion for summary judgment cannot simply argue that it needs more discovery -- instead, the plaintiff must file a Rule 56(f) affidavit or a motion that indicates to the district court "what material facts it hopes to uncover" by the additional discovery requested. It is not an abuse of discretion for the district court to deny the discovery request when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir. 1999).  It is also not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity." *Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir. 1989).

The District respectfully suggests that we have such a situation at hand.  None of the discovery plaintiff purports to be necessary to oppose the District's motion is necessary as most of the District's motion is based on plaintiff's complaint.  With regard to the issue of whether the plaintiff was a District employee or independent contractor, plaintiff's Fed. R. Civ. P. 56(f) affidavit fails to provide any details or specificity as to what deposition or type of document request is necessary to resolve this issue.  Instead, the affidavit simply makes the conclusory statement that discovery concerning the District's "supervision and control" over the plaintiff is necessary.  As the other issues about which the plaintiff asserts discovery is necessary have no bearing on the

District's Fed. R. Civ. P. 12(b)(6) motion, and the plaintiff has failed to specify what specific discovery is necessary to establish what disputed fact, the District respectfully requests that plaintiff's request for discovery prior to a ruling be denied.

## II.     PLAINTIFF WAS NOT A JOINT EMPLOYEE OF CCHPS AND THE DISTRICT.

### (a) The "Joint Employee" Test of *Coles v. Dept. of the Army*, 471 F.Supp. 2d 46 (D.C. Circuit 2007), Does Not Apply To This Case.

In her opposition, plaintiff argues that the test for determining whether she was the defendants' employee is not the test cited by defendants, found in the opinion *Spirdies v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979), but, rather, is a test for whether or not she was a "joint employee" of the defendant and the Center for Correctional Health Policies Studies ("CCHPS"). In support of this argument, plaintiff cites to the opinion *Coles v. Dept. of the Army*, 471 F.Supp.2d 46 (D.C. Circuit 2007). However, scrutiny of the facts of the *Coles* matter finds that it does not apply to the instant case.

*Coles* involved a receptionist who sued the federal government for alleged sexual harassment. *Id*. at 48-49. The receptionist worked for the Army as a temporary employee through Kelly Services. *Id*. Although the receptionist was paid by Kelly Services, the Army directed Kelly Services to hire the receptionist, supervised the receptionist on a daily basis and had authority to terminate her employment. *Id*. at 51.

Here, however, the plaintiff was an employee of CCHPS. The District did not direct CCHPS concerning its hiring of employees, supervise CCPS' daily work or possess authority to terminate CCHPS employees. (See Affidavit of Henry Lesansky, attached to Defendant's Motion as Exhibit A) While plaintiff has filed an opposing affidavit with her opposition, it provides only that CCHPS employees had to be screened by the District prior to commencing work, that the

3

District had discretion to agree or disagree with CCHPS assessments and that CCHPS employees were effectively "terminated" by the District when banned from Corrections facilities. Assuming these assertions to be true, they still do not establish that the District hired or fired CCHPS employees, or that the District supervised or directed their work. As CCHPS was an independent contractor working for the District, the District would have authority to screen CCHPS personnel prior to their beginning work and authority to refuse them access to District facilities if the need arose. However, this does not alter the basic fact that the CCHPS employees could only be hired, directed and terminated by CCHPS itself. Finally, though the District had authority to agree or disagree with CCHPS assessment of patients, and to determine their housing options or transfer without regard to CCHPS' recommendation, this does not establish that the District was directing and/or supervising CCHPS' day to day work.

    **(b) The *Farrow v. West* Opinion Cited By Plaintiff Does Not Establish An Employment Relationship.**

Plaintiff also cites to the opinion *Farrow v. West*, 320 F.3d 1235 (2003), for the proposition that medical care and services contractors within prisons and correctional departments are "treated as employees." However, analysis of the *Farrow* opinion finds that it simply overturns a trial court's grant of summary judgment of a prisoner's constitutional claim arising from medical care provided by such a contractor. *Id*. at 1238. The *Farrow* opinion does not support plaintiff's argument as it does not address the issues involved in the instant case and merely provides that a prisoner may maintain constitutional claims for medical care received in a prison.

**III.    PLAINTIFF'S CLAIMS ARE LIMITED TO THOSE MADE IN HER 2006 EEOC CHARGE.**

Plaintiff cites to the opinion *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir. 1982), for the proposition that she may proceed with charges made in her 2005 EEOC complaint

4

though she never received a Right To Sue Letter with regard to those charges. (See Plaintiff's Opposition, p. 26) *Perdue*, however, does not support her argument. In *Perdue*, the plaintiff never received a Right To Sue Letter because the parties reached a settlement agreement while the EEOC investigation was pending. *Id*. at 1091-1092. When the defendant in *Perdue* failed to honor the agreement, and plaintiff sought a Right To Sue Letter, the plaintiff was unable to obtain one due to the prior settlement. *Id*. Therefore, plaintiff's lawsuit was permitted to proceed in court as it was timely filed following receipt of correspondence from the EEOC explaining why no Right To Sue Letter could be issued. *Id*. There are no such facts involved in the instant case. The only claims properly before this Court are those the plaintiff made in her 2006 EEOC charge.

Additionally, the plaintiff's cite to the *Federal Express Corporation v. Paul Holowecki*, 128 S.Ct. 1147 (2008) opinion is similarly inapt. That case involved a claim under the Age Discrimination in Employment Act ("ADEA") as opposed to a Title VII claim. Unlike Title VII, the ADEA does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court. Compare 29 U.S.C. § 626(d)-(e) with 42 U.S.C. § 2000e-5(e)-(f); *Hodge v. New York Coll. of Podiatric Med.*, 157 F.3d 164 at 168 (2d Cir. 1998) ("Whereas Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court . . . . ADEA plaintiffs need only wait 60 days after filing the EEOC charge."); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1057 (2d Cir. 1990). Given that the Federal Express opinion involved a different type of employment claim, with different procedural requisites from those applicable to the instant claim, the opinion is simply not controlling.

## IV. ALL CONSTITUTIONAL CLAIMS AGAINST THE DISTRICT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

### (a) Plaintiff Has Not Alleged A Municipal Policy or Custom That Caused The Alleged Constitutional Violation At Issue.

A § 1983 complaint must allege an established municipal policy or custom that caused the constitutional violation at issue. *Dorman v. District of Columbia*, 888 F.2d 159, 162 (D.C. Cir. 1989); *Dant v. District of Columbia*, 829 F.2d 69, 77 (D.C. Cir. 1987). A complaint that does not allege such a policy or custom fails to allege a necessary element of liability under § 1983 and must be dismissed. *Dant*, 829 F.2d at 76.

In this case, the plaintiff alleges that the District violated her Eighth Amendment and Fifth Amendment rights under the U.S. Constitution, but she has failed to show the particular policy or custom that is violative of the Constitution. In considering whether a plaintiff has stated a claim for municipal liability, the district court must conduct a two-step inquiry. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). First, the court must determine whether the complaint states a claim for a predicate constitutional violation. *Id*. Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation. *Id.*; *Monell*, 436 U.S. at 694. Each inquiry is separate and serves different purposes. *Collins*, 503 U.S. at 124; *see also Farmer v. Brennan*, 511 U.S. 825, 840-42, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994); *City of Canton v. Harris*, 489 U.S. 378, 388 n.8, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).

Under the first prong, plaintiff has failed to state a predicate claim of deliberate indifference by the Department of Corrections to plaintiff's sexual harassment claims in violation of her Fifth and Eighth Amendment rights. See *Estelle v. Gamble*, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). To show deliberate indifference, plaintiff had to allege that officials had subjective

6

knowledge of the sexual harassment and recklessly disregarded the excessive risk to her well being or safety from that risk. *Farmer*, 511 U.S. at 837. In order to establish this predicate violation, neither District of Columbia policy makers nor employees need be implicated. All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm. *See Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003).

Under the second prong, the plaintiff's complaint must allege that a policy or custom of the District of Columbia caused the constitutional violation alleged under the first prong. *See Monell*, 436 U.S. at 694; *Harris*, 489 U.S. at 389. The court must determine whether the plaintiff has alleged an "affirmative link," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985)**,** such that a municipal policy was the "moving force" behind the constitutional violation, *Harris*, 489 U.S. at 389 (quotation omitted).

Here, plaintiff has failed to state the predicate constitutional violation, and she has failed to allege any link whatsoever between her claims of sexual harassment, and a municipal policy that was the "moving force" behind the violation. While plaintiff makes vague, generic allegations concerning "offensive conduct of a sexual nature" throughout the District's Department of Corrections, her only allegation of harassment involves correctional officer Harcourt Masi. The District of Columbia cannot be held liable for the actions of the employee. Regardless of how egregious the conduct alleged in the Amended Complaint, the actions are still the product of one man acting alone and the plaintiff's allegations are not sufficient to establish a policy or custom of the District of Columbia.

Plaintiff has failed to show that there were any decision makers/state officials involved in the alleged sexual harassment, and the plaintiff has failed to identify any policy or custom of the

District that is unconstitutional. Based on the foregoing, plaintiff has failed to allege a predicate constitutional violation, and her Fifth and Eighth Amendment claims brought pursuant to 42 U.S.C. Section 1983 must be denied.

### (b) Plaintiff's Constitutional Claims Cannot Proceed Under A Theory of "State Endangerment."

Plaintiff also argues that she "can bring her constitutional and due process claims under the theory of 'state endangerment," and cites to *Butera v. D.C.*, 235 F.3d 637, 651 (D.C. Cir. 2001), as support for her argument. As a general matter, the District notes that a State's failure to protect an individual from private violence, even in the face of a known danger, "does not constitute a violation of the Due Process Clause." *Butera*, 235 F.3d at 647; citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989); *see also Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991). The District contends that plaintiff's allegations, read in a light most favorable to plaintiff, do not support a deviation from this standard.

To assert a substantive due process violation based upon the state endangerment theory, a plaintiff must show that the District of Columbia's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Butera*, 235 F.3d at 651; citing *County of Sacramento v. Lewis,* 523 U.S. 845-846, 847 n.8. The *Butera* court noted, "this stringent requirement exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law." *Id.*; citing *Sacramento*, 523 U.S. at 845-46, 848-49; *Daniels v. Williams*, 474 U.S. 327, 331, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *Wolff v. McDonnell*, 418 U.S. 539, 558, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); *see also Paul v. Davis*, 424 U.S. 693, 701, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976).

Based on *Butera*, plaintiff Simms must show "behavior at the other end of the culpability spectrum…," or official action at a "conscience-shocking level." *See Butera*, 235 F.3d

8

at 651; citing *County of Sacramento v. Lewis,* 523 U.S. 833, 849.  A key component of a state endangerment action is "affirmative conduct by the State to increase or create the danger that results in harm to the individual.  No constitutional liability exists where the State actors 'had no hand in creating a danger but [simply] stood by and did nothing….'"  *Butera*, 235 F.3d at 650.

In the case at bar, plaintiff's Second Amended Complaint fails to allege any "affirmative action" by State officials, or conduct that shocks the conscience.  Based on *Butera*, plaintiff's Second Amended Complaint must be dismissed.

V. **PLAINTIFF'S 12-309 NOTICES ARE NOT TIMELY AS TO CLAIMS MADE CONCERNING CONDUCT PRE-DATING SEPTEMBER 18, 2004.**

The District has no record of having received 12-309 notices from the plaintiff.  (See Affidavit of Mia Powell Liley, attached as Exhibit D to Defendant's Motion)  However, to the extent the plaintiff has produced copies of such letters, along with mail receipts, and attached them to her opposition, the District will work to verify whether or not these letters were received and withdraw this argument should record of such letters be uncovered.

Nonetheless, D.C. Code Section 12-309 requires that notice of claims be made within six months of the alleged injury and, here, the earliest such letter the plaintiff attached to her opposition is dated March 18, 2005.  Therefore, the plaintiff failed to provide appropriate notice as to any conduct pre-dating September 18, 2004.  Assuming the District did receive such letters, then, any common law claim concerning conduct pre-dating September 18, 2004 would nonetheless be untimely due to the lack of the requisite 12-309 notice.

VI. **PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Plaintiff's arguments to the contrary, her claims are barred by the applicable statute of limitations.  In her opposition, plaintiff argues that her constitutional and common law claims are

9

not barred because she complained of discrimination until her position ended in 2006. However, plaintiff then states that she made her "final complaint against Masi in late 2003." Based on plaintiff's own admission, she has failed to satisfy the applicable statute of limitations. The District argues that plaintiff's claims brought under the theories of negligence, deprivation of civil rights under 42 U.S.C. 1983, and violations of the Fifth and Eighth Amendments of the U.S. Constitution, are time-barred under § 12-301(8).

### VII. THE DIRECTOR OF THE DEPARTMENT OF CORRECTIONS CANNOT BE SUED IN HIS OFFICIAL CAPACITY.

Lastly, the plaintiff asserts that she is not suing the Department of Corrections but, rather, the Director of the Department of Corrections, in his official capacity. While the plaintiff's complaint does not appear to state any claim against the Director of the Department, even if it did, such a claim may not be maintained.

It is well settled that a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. United States*, 491 U.S. 58, 71 (1989), citing *Brandon v. Holt*, 468 U.S. 464 (1985). Therefore, "there is no longer a need to bring official capacity actions against local government officials, for…local government units can be sued directly…" *Kentucky v. Graham*, 473 U.S. 159, 165-168 (1985). See *Robinson v. District of Columbia*, 2005 U.S. Dist. LEXIS 3556 (D.D.C. 2005) (Mayor Williams dismissed from suit when named only in his official capacity).

The plaintiff's claim against the Director of the Department of Corrections must be dismissed. First, plaintiff's complaint makes no such claim. Second, to the extent the plaintiff argues that the Director is being sued in his official capacity, no such claim could be maintained.

Dated: June 30, 2008

                        Respectfully Submitted,

                        PETER J. NICKLES
                        Interim Attorney General for the
                        District of Columbia

                        GEORGE C. VALENTINE
                        Deputy Attorney General
                        Civil Litigation Division

                        _____/s/_____
                        TONI MICHELLE JACKSON (453765)
                        Chief, General Litigation § III

                        _____/s/_____
                        ALEX KARPINSKI[1]
                        (Michigan Bar No. P58770)
                        Assistant Attorney General
                        441 Fourth Street, N.W., 6th Floor South
                        Washington, D.C. 20001
                        E-mail: alex.karpinski@dc.gov

---

[1] Pursuant to the Local Rules of the United States District Court for the District of Columbia, Mr. Karpinski has registered with the Clerk's office as a Government Attorney and is appearing pursuant to LCvR 83.2.