UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAVERNA SIMMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-2178 (RCL) |
| DISTRICT OF COLUMBIA GOVERNMENT, *et al.* | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Now before the Court comes defendants' motion [34] to dismiss, or in the alternative, for summary judgment. Upon consideration of the motion, plaintiff's opposition, the entire record herein, and applicable law, the Court will GRANT defendants' motion to dismiss without prejudice with respect to the Fifth and Eighth Amendment claims and GRANT defendants' motion for summary judgment with respect to the Title VII claim.

**I.     BACKGROUND**

On December 21, 2006, plaintiff Laverna Simms filed suit in this Court alleging that she and other female contractors and employees were routinely subject to a pattern of sexual harassment at the District of Columbia Department of Corrections ("DOC"). (Second Am. Compl. ¶ 11.) Plaintiff's suit names three defendants: the District of Columbia, the Director of the DOC, and the Center for Correctional Health and Policy Studies ("CCHPS"). Although plaintiff's precise employment history is in dispute, plaintiff alleges that she "was at all times relevant herein, [ ] an employee and part owner and/or incorporator of [CCHPS] and employee,

agent, and/or contractor for the defendants the District of Columbia Government and the District of Columbia [DOC]." (*Id.* ¶ 3.)

Plaintiff began working at the DOC as an intake coordinator in 1997. (*Id.* ¶ 17.) In 2001, she became one of the incorporators of CCHPS, a corporation that contracted with the DOC to provide mental health services to inmates. (*Id.* ¶ 24.) Plaintiff maintains that although she was a contractor, she also worked directly for the District of Columbia and DOC as an employee because of the nature of her work and CCHPS's contract. (*Id.* ¶ 25.) CCHPS employees performed all of the medical attention for inmates at the DOC but were not supervised by DOC. (Defs. Statement of Undisputed Material Facts ¶ 13.) Plaintiff was not paid wages or a salary by DOC, nor did DOC extend annual leave to plaintiff. (*Id.* ¶ 14.) In addition, plaintiff was not provided retirement benefits and DOC did not pay her social security taxes. (*Id.*) Although DOC screened employees of CCHPS when they began work at DOC, the DOC did not have the authority to terminate CCHPS employees. (Defs. Opp'n at 3-4.) Further, as CCHPS is an independent contractor, DOC alleges that it was not the intent of either CCHPS or DOC that CCHPS employees would become DOC employees. (Defs. Statement of Undisputed Material Facts ¶ 15.)

Soon after starting work at DOC, plaintiff met Correction Officer Harcourt Masi ("Masi") who approached her and asked her on a date the first time he saw her. (Second Am. Compl. ¶ 18.) After rejecting Masi's request for a date, for the next five years on a daily basis Masi would stand outside plaintiff's door and stare at her while she interviewed inmates. (*Id.* ¶ 19.) In addition, Masi continued to ask plaintiff out on dates and make comments about her body. (*Id.* ¶ 20.) Plaintiff characterized Masi's conduct as becoming more aggressive towards her and other

female employees, which eventually resulted in Masi's fondling her in late December 2003 when he "touched and/or carressed her chest and arm and then grabbed her arm." (*Id.* ¶ 30.) This occurred again several weeks later. (*Id.* ¶ 31.) According to plaintiff, while she worked at the DOC there existed a culture in the D.C. jail where women were preyed upon by Correction Officers and male inmates. (*Id.* ¶ 33.)

Plaintiff filed discrimination complaints with the Office of Special Inspector, which investigated her claims of sexual discrimination. (*Id.* ¶ 35.) As a result of this, plaintiff alleges that Masi retaliated against plaintiff in 2004-05 by waiting in opening the door for plaintiff in order to delay her exit from housing units which subjected her to standing in the presence of inmates longer than necessary. (*Id.* ¶ 45.) Plaintiff asserts that this jeopardized her safety and that complaints about these actions were ignored or resolved in an inadequate manner. (*Id.*)

## II.     ANALYSIS

### A.     Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff need only provide a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. In resolving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must ascertain whether the challenged complaint adequately states a claim on which relief may be granted. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In an employment discrimination case, the plaintiff need not set forth the elements of a prima facie case at the initial pleading stage. *See Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1113-14 (D.C. Cir. 2000). The Court will not grant a motion to dismiss for failure to state a claim "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  In addition, as to the other claims, the court must construe all allegations therein and draw all reasonable inferences in the plaintiff's favor as well.  *Scheuer*, 416 U.S. at 236.  While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level" and to "nudge[] [] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007).  The court may, in its discretion consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(b); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

B.     **Title VII Employment Status**

To sue under Title VII, a plaintiff must be an employee—"an individual employed by an employer."  42 U.S.C. § 2000e(f) (2006).  In order to clarify this definition, the Supreme Court has noted that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine."  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (citations omitted).  To determine whether an individual is an employee or an independent contractor, a court must look to a variety of factors to assess the "economic realities" of the relationship.  *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979).  There are at least twelve factors that a Court must analyze in this analysis, the most important of which is the extent of the right to control the "means and manner" of the worker's performance.  *See id.* at 831–32.

Additional matters a court must consider include, among others, (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *See id.*

In the D.C. Circuit, however, it is unclear whether the *Spirides* test applies when a plaintiff claims to be a joint employee. *See Redd v. Summers*, 232 F.3d 933, 937-38 (D.C. Cir. 2000) ("This court has never invoked *Spirides* to resolve an issue of joint employment . . . .") Further, the D.C. Circuit has noted that a fairly common joint employment test looks at whether "one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 938 (quoting *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)).  Because the issue was not argued by the parties, the D.C. Circuit noted that it would "not try to resolve which test is applicable or indeed whether there is a material difference between the two . . . ." In an attempt to interpret the holding of *Redd*, Judge Rosemary M. Collyer "read between the lines" of the D.C. Circuit and determined that *Spirides* does not apply to issues of joint employment. *See Coles v. Harvey*, 471 F. Supp. 2d 46, 50 (D.D.C. 2007).

Plaintiff asserts that under the guidance of *Redd* and *Coles*, she was a joint employee and can therefore pursue a claim under Title VII. This Court, however, declines to determine which test is proper because the Court finds that plaintiff was not an employee under either test.

      i.      <u>Spirides Analysis</u>

Viewing the facts in a light most favorable and drawing all reasonable inferences in plaintiff's favor, the Court concludes that plaintiff could not be considered an employee under the *Spirides* analysis. First, the DOC had little ability to control the "means and manner" by which the plaintiff worked. The plaintiff's duties, to provide health services, were distinct from the duties of other DOC employees and therefore the DOC exercised little control over plaintiff's employment. Further, the plaintiff was an independent contractor with CCHPS that contracted with DOC to provide health services. DOC did not employ CCHPS personnel and CCHPS personnel worked under their own supervision. To this end, DOC did not pay plaintiff, afford her leave, or pay her social security taxes. As an independent contractor, moreover, DOC did not have to the authority to terminate CCHPS employees. Rather, plaintiff's "termination" was due to DOC's decision not to renew the contract with CCHPS. Finally, CCHPS services were not an integral part of the business of DOC. Instead, DOC decided to contract with CCHPS to allow health service experts to come into the DOC and provide needed services. As a result, plaintiff cannot possibly be considered an employee under the *Spirides* analysis.

      ii.      <u>Browning-Ferris Joint Employment Test</u>

Viewing the facts in a light most favorable to the plaintiff and drawing all reasonable inferences in plaintiff's favor, the Court also concludes that plaintiff could not be considered an employee under the *Browning-Ferris* joint employment test. This inquiry examines whether one

employer, while contracting with an independent company, retains for itself sufficient control of the terms and conditions of employment of the employees who are also employees of the other employer.  In *Coles*, the court was presented with a situation where a person was employed by Walter Reed Army Medical Center through Kelly Services, in which the Army directed Kelly Services to hire the employee, supervised the employee on a daily basis, and had authority to terminate her employment. *See* 471 F. Supp. 2d at 50-51.

Plaintiff's claim that she was an joint employee must fail because DOC did not retain sufficient control over the terms and conditions of plaintiff's employment.  DOC did not direct the hiring of plaintiff, did not supervise her work on a daily basis, and it did not have the authority to terminate plaintiff.  Unlike the receptionist in *Coles*, plaintiff provided a specialized service for the DOC and apart from being present in the same building, worked independently from other DOC employees.  Although DOC had the ability to pre-screen CCHPS employees, this does not amount to "sufficient control of the terms and conditions of employment" because once the employee is hired, DOC lacks the authority to fire the employee.  Accordingly, under either the *Spirides* analysis or the *Browning-Ferris* joint employment test, plaintiff was an independent contractor and thus not an "employee" for Title VII purposes.  Therefore, the Court finds that the Title VII claims against the District of Columbia and DOC must be dismissed.

      **C.**      **Eighth Amendment Claim**

Plaintiff alleges that her right to be free from cruel and unusual punishment has been violated by the actions of the District of Columbia and DOC.  Specifically, plaintiff asserts: "Defendants' failure to prevent and remedy the racial discrimination, sexual abuse and sexual harassment that Plaintiff was subjected to constituted cruel and unusual punishment in violation

of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983." (Second Am. Compl. ¶ 61.) Even when viewing the facts in a light most favorable to plaintiff, the Court concludes that this claim must be dismissed.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Amendment proscribes "all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive." *Atkins v. Virginia*, 536 U.S. 304, 311 n.7 (2002). The Eighth Amendment's protection against excessive or cruel and unusual punishments flows from the basic "precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367 (1910).

Plaintiff's claim that defendants' failure to remedy the sexual discrimination at the workplace amounted to cruel and unusual punishment simply cannot succeed. The Eighth Amendment has historically been applied to punishment of inmates and has never extended to workplace sexual discrimination claims. Accordingly, the Court shall dismiss plaintiff's Eighth Amendment claim against the District and DOC.

    **D.**    **Due Process and Equal Protection Claims**

Plaintiff also asserts that the actions of the District of Columbia and DOC violated her rights to due process and equal protection under the Fifth Amendment. Plaintiff asserts: "Defendant's failure to prevent and remedy the racial discrimination, sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff violated the Plaintiffs right to due process of law [and equal protection] as guaranteed by the Fifth Amendment . . . ." (Second Am.

Compl. ¶ 63.)   Again, viewing the facts in a light most favorable to plaintiff, the Court concludes that this claim must be dismissed.

The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law."  Freedom from imprisonment and from government custody lies at the heart of the liberty the due process clause protects.  *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  However, "[t]he Due process Clause does not impose an independent federal obligation upon municipalities to provide certain minimum levels of safety and security in the workplace."  *Collins v. City of Harker Heights*, 503 U.S. 115, 130 (1992).

For purposes of equal protection, the Supreme Court has "made clear that 'proof of [] discriminatory intent or purpose is required' to show a violation of the Equal Protection Clause." *City of Cuyahogo Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003).   The purpose of the Equal Protection Clause is to protect against intentional and arbitrary discrimination, "whether by express terms of a statute or by its improper execution through a duly constituted agent."  *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 353 (1918).

Plaintiff's allegation that her due process rights were violated when Masi purposefully stalled in letting her out of the room where the inmates were located cannot succeed as a matter of law.  As *Collins* makes clear, the due process clause does not impose independent requirements to ensure minimum levels of safety and security.  Further, under the facts alleged, plaintiff will not be able to succeed on the grounds that her rights under the Equal Protection Clause have been violated.  Had the plaintiff alleged that DOC restricted her ability to perform her duties on account of her sex, she may have stated an equal protection claim.  *See United*

*States v. Virginia*, 518 U.S. 515 (1996) (holding that a Virginia military college policy excluding women from the school violated the Equal Protection Clause).  However, plaintiff did not do so and has not made any viable claim that her rights under the Equal Protection Clause have been violated.  Accordingly, the Court shall dismiss plaintiff's Fifth Amendment claims against the District of Columbia and DOC.

### E.  Section 1983 Claim Against the District

Plaintiff also asserts that the defendants are liable under § 1983 for having a policy or practice that allowed sexual harassment in the workplace which violated her constitutional rights.  Again, viewing the facts in a light most favorable to plaintiff, the Court concludes that this claim must be dismissed.

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978)).  Municipal liability only arises when the execution of the government's policy or custom inflicts a constitutional injury.  *See id.*; *see also Dant v. District of Columbia*, 829 F.2d 69, 77 (D.C. Cir. 1987).  The § 1983 analysis is a two step inquiry.  First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985)).  Second, if the complaint states a predicate constitutional violation, the court must determine whether the complaint states that a custom or policy of the municipality caused the violation.  *Collins*, 503 U.S. at 120; *Monell*, 436 U.S. at 694.

Plaintiff's § 1983 claim must be dismissed because it fails the first step of the inquiry, claiming a predicate constitutional violation. As noted above, both the Fifth and Eighth Amendment claims must be dismissed because they fail to state a claim upon which relief can be granted. Accordingly, because the municipality's policies or custom have not inflicted a constitutional injury, plaintiff cannot prevail under § 1983. Because relief cannot be obtained under § 1983, plaintiff's § 1983 claim against the District of Columbia and DOC must be dismissed.

### F.   Remaining Common Law Claims against the District and DOC

Plaintiff also claims that the District of Columbia and DOC are liable for the common law torts of intentional infliction of emotional distress and negligent supervision (Counts V and VI). As this Court has dismissed the claims arising under federal law, the court declines to address these issues.[1] Instead, all claims against the District of Columbia and DOC shall be dismissed without prejudice.

## III.   CONCLUSION

Upon full consideration of the motion, defendants' opposition, the entire record herein, and applicable law, for the reasons set forth above, defendants' motion to dismiss the Fifth and Eighth Amendment claims will be GRANTED; defendants' motion to dismiss the § 1983 claim will be GRANTED; defendants' motion for summary judgment with respect to the Title VII claim will be GRANTED, and said claims will be dismissed.

A separate order shall issue this date.

---

[1] Although plaintiff argues in her reply that diversity jurisdiction exists even if the federal claims are dismissed, the second amended complaint does not allege diversity jurisdiction nor is it evident from the complaint that diversity jurisdiction exists. (Second Am. Compl.)

Signed by Royce C. Lamberth, Chief Judge, November 26, 2008.