UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAVERNA SIMMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 06-2178 (RCL) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Laverna Simms, the plaintiff in this civil lawsuit, brings this action against the Center for Correctional Health and Policy Studies, asserting various constitutional, statutory and common law violations in connection with the defendant's alleged failure to prevent and remedy sexual discrimination, sexual abuse and sexual harassment while Simms was an employee. Currently before the Court are defendant's motion [Dkt. 73] to dismiss, or in the alternative, motion [Dkt. 74] for summary judgment. Upon consideration of the motions, plaintiff's opposition, defendant's reply, plaintiff's surreply, the entire record herein, and the applicable law, the Court will GRANT defendant's motion to dismiss without prejudice with respect to the Fifth and Eighth Amendment claims, the § 1983 claim, and the common law claims. The Court will DENY defendant's motion to dismiss with respect to the Title VII claim.

### I. BACKGROUND

On December 21, 2006, plaintiff Laverna Simms filed suit in this Court alleging that she and other female employees were routinely subject to a pattern of sexual harassment at the District of Columbia Department of Corrections ("DOC"). (Third Am. Compl. ¶ 11.) Simms

1

began working for the District of Columbia Department of Corrections (DOC) in 1997 as a professional counselor. (*Id.* at ¶ 19.) Soon after starting work at the DOC, Simms met Correctional Officer Harcourt Masi, whom she claims sexually propositioned and harassed her throughout her employment at DOC. (*Id.* at ¶ 20-21.) Specifically, Simms alleges that Masi would ask Simms out on dates, make comments about her physical appearance, stand and stare at Simms while she was working with clients and fondled her and other female employees. (*Id*. at ¶ 32-33)

In 2001, Simms became one of the incorporators and an employee of the Center for Correctional Health and Policy Studies (CCHPS), the named defendant in the current suit, which provides mental health services for the DOC on a contract basis. (*Id*. at ¶ 26.) Simms claims that from 2001 until her departure in 2006, she repeatedly reported the sexual harassment to authorities at CCHPS.

In January 2004, Simms filed a sexual discrimination and harassment complaint with the Office of the Special Inspector ("OSI"). (*Id*. at ¶ 6.) OSI conducted an investigation and found probable cause that Masi sexually harassed Simms. *Id.* The investigation concluded in 2005 and found DOC negligent in its failure to provide a non-hostile work environment for Ms. Simms and approximately 15 other women. (*Id.* at ¶41.) Also as a result of the investigation, Masi was suspended from approximately February 2005 – August 2005. In August 2005, Simms filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination, sexual harassment, a hostile work environment and retaliation against CCHPS. (*Id*. at ¶ 7.) While more than 180 days past from the filing of the charge, the EEOC failed to provide plaintiff with authorization to pursue her action in District Court as required by law. *Id.* The instant suit was filed in December 2006, alleging various claims against

CCHPS, the District of Columbia, and the District of Columbia Department of Corrections. All claims against the District of Columbia and the District of Columbia Department of Corrections were dismissed in 2008.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff need only provide a short and plain statement of the claim that will give the defendant fair notice of that the plaintiff's claim and the grounds upon which it rests. In resolving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must ascertain whether the challenged complaint adequately states a claim on which relief may be granted. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In evaluating the motion, the court must treat the complaint's factual allegations as true and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

However, Rule 12(b) states that, if, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the evidence, when viewed in a light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute. *Celotex*, 477 U.S. at 323. The moving party is then entitled to summary judgment if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's claim, and on which that party will bear the burden of proof at trial. *Id.* at 322. At the summary judgment stage, the court may not make credibility determinations, as that is the function of a jury. *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005).

   a. **Eighth Amendment Claim**

Plaintiff asserts that the actions of CCHPS violated her right to be free from cruel and unusual punishment under the Eighth Amendment. Specifically, plaintiff asserts that CCHPS' "failure to prevent and remedy the sexual discrimination, sexual abuse and sexual harassment that Plaintiff was subjected to constituted cruel and unusual punishment in violation of the

Eighth Amendment to the United States Constitution . . . ." (Third Am. Compl. ¶ 64.) Even when viewing the facts in a light most favorable to the plaintiff, the Court concludes that this claim must fail.

The Eighth Amendment prohibits "excessive sanctions." It provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The prohibition of cruel and unusual punishments circumscribes the criminal process in three ways. *Ingraham v. Wright*, 430 U.S. 651, 667 (1977). First, it limits the kinds of punishment that can be imposed on those convicted of crimes. Second, it proscribes punishment grossly disproportionate to the severity of the crime. And third, it imposes substantive limits on what can be made criminal and punished as such. *Id.*

Plaintiff's claim that CCHPS' failure to remedy the sexual discrimination at her workplace amounted to cruel and unusual punishment cannot succeed. The Eighth Amendment was "designed to protect those convicted of crimes," *Ingraham*, 430 U.S. at 663, not to extend to workplace sexual discrimination claims. The U.S. Supreme Court has repeatedly explained that the Eighth Amendment's protection against excessive or cruel and unusual punishments flows from the basic "precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367 (1910); *see also Kennedy v. Louisiana*, 128 S.Ct. 2641, 2649 (2008); *Roper v. Simmons*, 543 U.S. 551, 560 (2005); *Atkins v. Virginia*, 536 U.S. 304, 311 (2002). Plaintiff has alleged in the Third Complaint that she was an employee of CCHPS at the D.C. Jail, not an inmate subject to a criminal prosecution or punishment. Accordingly, the Court shall dismiss plaintiff's Eighth Amendment claim against CCHPS.

### b. Fifth Amendment Claim

Plaintiff also asserts that the actions of CCHPS violated her rights to due process and equal protection under the Fifth Amendment. Specifically, plaintiff asserts that "CCHPS' failure to respond, address, investigate Simms' complaints of sexual harassment and to prevent and remedy the sexual discrimination, sexual abuse, sexual harassment and invasion of the personal privacy of the Plaintiff violated the Plaintiffs [sic] right to due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution . . . ." (Third Am. Compl. ¶ 65.) Further, plaintiff asserts that the "policy or custom at CCHPS and at the DOC to condone sexual harassment in the workplace . . . deprived the Plaintiff of her constitutional right to bodily privacy and also deprived her of a liberty interest without due process of law in violation of the Fifth Amendment." (Third Am. Compl. ¶ 66.)

The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving a person "of life, liberty, or property, without due process of law." U.S. CONT. amend. V; *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Freedom from imprisonment and from government custody lies at the heart of the liberty interest the due process clause protects. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (in addition to procedural safeguards, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions . . .").

In order to trigger the Due Process Clause of the Fourteenth Amendment, or a comparable federal action to invoke the Fifth Amendment, there must be a "state action." *See* Lawrence H. Tribe, American Constitutional Law 663-65, 1688-90 (2d ed. 1988) (explaining that the Constitution imposes procedural due process on "state action" of the federal government

through the Fifth Amendment and state government action through the Fourteenth Amendment). In other words, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) (The Fifth Amendment itself erects no shield against merely private conduct, no matter how discriminatory or wrongful).

While throughout the years the Supreme Court has "articulated a number of different factors or tests in different contexts" for determining when a private party's acts should be attributed to the state, *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982), the Court has more recently described these factors or tests as "a host of facts" that can indicate "the fairness of such an attribution," *Brentwood Acad. v. Tenn Sec. Sch. Athl. Ass'n*, 531 U.S. 288, 295-96 (2001). These include situations where a private actor is subjected to the "coercive power" of the state or "significant encouragement, either overt or covert" by the state; when it is controlled by an agency of the State; when a private actor is "entwined with governmental policies or when government is entwined in its management or control;" or when a "private actor has been delegated a public function by the State." *Id.*; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). In order to determine whether a private party's acts should be attributed to the state, courts must begin by "identifying the specific conduct of which [the] plaintiff complains," *Am. Mfrs. Mut. Ins. So. v. Sullivan*, 526 U.S. 40, 51 (1999), because "the defendant must not merely be a state actor in some general capacity, but rather must be a state actor when performing the specific acts alleged in the complaint," *Bates v. Nw. Human Servs., Inc.*, 583 F.Supp.2d 138, 145 (D.D.C. 2008) (citing *Brentwood*, 531 U.S. at 295).

In the instant case, CCHPS is a private actor rather than a government actor. There is nothing to suggest, besides unfounded speculation, that CCHPS was subjected to the coercive power of the state, significantly encouraged by the state, controlled by the state, or entwined with governmental policies. CCHPS was a contractor hired by the state to work within the D.C. Jail. Finally, for purposes of equal protection, the Supreme Court has "made clear that proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahogo Falls v. Buckeye Cmty. Hope Fund*, 538 U.S. 188, 194 (2003). Plaintiff has failed to allege any facts that would support such a contention. Accordingly, a Fifth Amendment due process and equal protection claim cannot lie against CCHPS.

### c. Section 1983 Claim

In order to state a claim for relief in an action brought under 42 U.S.C. § 1983, plaintiff must establish that she was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Similar to the state action required of due process claims, "the under-color-or-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). In other words, § 1983 authorizes redress for violations of federal constitutional and statutory rights, it is not itself a source of substantive rights, but rather is a remedy for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. *See Gonzaga University v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States. One cannot go into court and claim a 'violation of § 1983'-for § 1983 by itself does not protect anyone against

anything."); *Blackman v. District of Columbia*, 456 F.3d 167, 177 (D.C. Cir. 2006) ("Section 1983 is not the source of substantive rights but rather "a method for vindicating federal rights elsewhere conferred.").

Plaintiff's § 1983 claim must be dismissed because it fails to claim a predicate constitutional violation. As noted above, both the Eighth and Fifth Amendment claims must be dismissed because they fail to state a claim upon which relief can be granted. Accordingly, because plaintiff has no claim upon which to establish a § 1983 claim. Additionally, even if plaintiff's § 1983 claim was based on a constitutional or statutory violation, similar to plaintiff's Fifth Amendment claim, plaintiff has failed to allege state action.

   d. **Common Law Claims**

      i. **Negligent Supervision**

The cause of action for negligent supervision is derived from the standard negligence tort and recognizes that an employer owes specific duties to third person based on the conduct of its employees. *Griffin v. Acacia Life Ins.*, 925 A.2d 564, 575 (D.C. 2007). To establish a cause of action for negligent supervision, a plaintiff must show that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Phelan v. City of Mt. Rainer*, 805 A.2d 930, 937 (D.C. 2002) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)). In other words, an employer "dealing with the public is bound to sue reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee." *Fleming v. Bronfin*, 80 A.2d 915, 917 (D.C. 1951). Here, there is no alleged "supervision" in the negligent supervision claim. Masi was not employed by the defendant. Therefore, it is impossible for

defendant to have "failed to adequately supervise the employee." *See Phelan*, 805 A.2d at 937. For that reason, plaintiff's negligent supervision claim must fail.

Even if CCHPS has control over Masi, plaintiff's claim would still fail because a common law claim for negligent supervision may be predicated only on common law causes of action or duties other imposed by the common law. *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575-76 (D.C. 2007). While plaintiff in this case also originally presented a claim of Intentional Infliction of Emotional Distress, which can be predicated on statutory violations, the mere allegation of intentional infliction of emotional distress is not sufficient to maintain a negligent supervision claim absent conduct independently tortious under the common law. *Fred A. Smith Management Co. v. Cerpe*, 957 A.2d 907, 916 (D.C. 2008); *see also Young v. Covington & Burling*, 2010 WL 337998 (D.D.C. Jan. 28, 2010).

### ii. Negligent misrepresentation

In order to assert a claim in the District of Columbia for negligent misrepresentation, a plaintiff must successfully plead that "(1) the defendants made a false statement or omission of a fact; (2) the statement was a violation of a duty to exercise reasonable care; (3) the false statement or omission involved a material issue; (4) the plaintiffs reasonably relied to their detriment on the false information; and (5) the defendants' challenged conduct proximately caused injury to the plaintiffs." *Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 336 n.17 (D.D.C. 2005) (citing *Burlington Ins. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 48 (D.D.C. 2004)); *see also Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999).

Similar to the requirements for pleading fraud claims, "failure to meet the pleading requirements of Rule 9(b) may also be fatal to plaintiffs' claims of negligent misrepresentation." *Shields v. Wash. Bancorporation*, 1992 WL 88004, at *9 (D.D.C. Apr. 7, 1992); *Nelson v.*

*Nationwide Mortgage Corp.*, 659 F.Supp. 611, 618 (D.D.C. 1987). This is because Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992); *see also Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs."). The circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. *Kowal*, 16 F.3d at 1279 n.3.

In the instant case, plaintiff presents no facts other than general statements as to the who, what, where, and when of the statements allegedly made by CCHPS. In her complaint, plaintiff asserts that from 2001 until September 30, 2006, plaintiff complained about the sexual harassment and CCHPS "informed Simms for the entire time she worked for the company that it was reporting, investigating and going to resolve her complaints of sexual harassment." (Third Am. Compl. ¶ 94.) The Court concludes that this statement is insufficiently particular in as to matters such as time, place, and content of the representations. *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *see also In re United States Office*

*Prods. Co. Sec. Litig.*, 251 F.S upp. 2d 58, 74 (D.D.C. 2003) ("[N]egligent misrepresentation claims must adequately allege *all* of the required elements"). Therefore, because the plaintiffs fail to adequately plead the elements necessary to establish a claim of negligent representation, the defendant's motion to dismiss this claim is granted.

### iii. Negligence

In the District of Columbia, to maintain a cause of action under a theory of negligence, the plaintiff must show that there was "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009). The existence of a legal duty being an essential element of a negligence claim under District of Columbia law, the plaintiffs "must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability." *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (quoting *Kelton v. District of Columbia*, 413 A.2d 919, 922 n.5 (D.C. 1980)). And a complaint alleging negligence may not rest on mere "conclusory assertions" as to the existence of any element of the claim, including duty. *White*, 442 A.2d at 162. Thus, the "plaintiff must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff." *Id.*

While plaintiff asserts that defendant had a duty to "report, investigate and resolve her sexual harassment complaints and to make sure she was working in a safe and non-hostile work environment," Third Am. Compl. ¶ 79, plaintiff has failed to assert, absent allegations of negligent supervision and misrepresentation, any facts to support a breach of that duty. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544 (2007)). In ruling on a motion to dismiss, the Court need not accept legal conclusions cast as factual allegations, *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C.Cir. 2004), or "inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### e. Title VII Claim

Title VII of the Civil Rights Act of 1964, as amended, provides that "[i]t shall be unlawful employment practice for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e *et seq.* In order to state a claim under Title VII, a plaintiff must aver that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).

In order to file suit under Title VII, an employee must first file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), the agency that interprets and enforces Title VII. *See* 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1) (describing administrative procedures that precede the filing of a Title VII claim in district court). Thereafter, the EEOC initiates an investigation, and may attempt to bring about a conciliation between the charging party and the respondent. In general, if after 180 days from the time the charge was filed it remains unresolved, or if the agency dismisses the charge, the EEOC is required to issue a notice informing the charging party and the respondent of the charging party's right to sue in district court. Specifically, section 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1), provides that, once administrative remedies are exhausted, a "civil action may be brought against a respondent

named in the charge." Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action in district court. 42 U.S.C. § 2000e-5(f)(1). The purpose of the administrative filings requirement is to encourage informal resolution of discrimination claims. 29 C.F.R. § 1601.12.

Plaintiff has demonstrated that she need not obtain a right to sue letter from the EEOC because the EEOC failed to act on her complaint within the required 180 days. *See Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 12 (D.D.C. 2008); *cf. Wilson v. Peña,* 79 F.3d 154, 167-68 (D.C. Cir. 1996) (concluding that a Title VII claimant was entitled to file suit to challenge the correctness of an agency's computation of a backpay award once the EEOC failed to act on the claimant's petition for enforcement within 180 days). Plaintiff filed an administrative charge with the EEOC on August 24, 2005. After the EEOC failed to act on the charge as it pertains to CCHPS after the 180 day time limit, plaintiff was permitted to go forward with her suit.

This determination is in accord with other courts that have considered the dilemma of an over-burdened agency's failure to follow its own regulations. For example, in *Walker v. UPS*, the Tenth Circuit found that a plaintiff's Title VII claim cannot be dismissed "because of EEOC's administrative oversight." 240 F.3d 1268, 1272-73 (10th Cir. 2001). In that case, the court stated that the plaintiff "took every step required to exhaust her administrative remedies." The plaintiff filed a charge with the EEOC and after waiting the statutorily required time frame, filed suit. The Tenth Circuit stated that the plaintiff's "right to sue is conditioned only on her taking all steps necessary for administrative exhaustion, not on EEOC's performance of its administrative duties." *Id.* (citing *Jefferson v. Peerless Pumps Hydrodynamic, Div. of FMC Corp.*, 456 F.2d

1359, 1361 (9th Cir.1972)). As another court put it: "it is patently evident that it would be . . . unfair to deny an individual plaintiff the opportunity to litigate a claim of discrimination because of the EEOC's administrative foibles, particularly in the absence of an express congressional mandate requiring that result." *Springer v. Partners in Care*, 17 F. Supp. 2d 133, 141 (E.D.N.Y. 1998). *See also EEOC v. I-Sector*, 2003 WL 29939 at *6 (N.D. Tex. Jan 2, 2003) ("Because the responsibility for giving notice rests with the EEOC, a notoriously over-burdened agency, courts are reluctant to deny judicial redress to a plaintiff because the EEOC failed to act with the requisite diligence or within the allotted time.")

### III. CONCLUSION

Upon full consideration of the motion, plaintiff's opposition, defendant's reply, plaintiff's surreply, the entire record herein and applicable law, for the reasons set forth above, defendant's motion to dismiss the Fifth and Eighth Amendment claims will be GRANTED; defendant's motion to dismiss the § 1983 claim will be GRANTED; and defendant's motion to dismiss the common law claims will be GRANTED. Defendant's motion to dismiss the Title VII claim will be DENIED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on March 30, 2010.